UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|  |  |  |
|---|---|---|
|  | : | MDL Docket No. 1:09-md-2050 |
| IN RE: Bill of Lading Transmission and | : |  |
| Processing System Patent Litigation. | : |  |
| _____ | : |  |
|  | : | Case No. 1:09-cv-818 |
| THIS DOCUMENT APPLIES TO: | : | Case No. 2:08-cv-862 (D. Utah) |
|  | : | Case No. L:09-cv-530 |
| R&L Carriers, Inc., | : | Case No. 1:09-cv-190 |
|  | : | Case No. 1:09-cv-532 |
| Plaintiff, | : | Case No. 1:09-cv-179 |
|  | : | Case No. 09-cv-144 (D. Minn.) |
| v. | : | Case No. 1:09-cv-177 |
|  | : | Case No. 1:09-cv-178 |
| Affiliated Computer Services, Inc., DriverTech | : | Case No. 1:09-cv-445 |
| LLC, EBE Technologies Corp., Enterprise | : |  |
| Information Solutions, Intermec Technologies | : |  |
| Corp., Microdea, Inc., PeopleNet | : |  |
| Communications Corp., Pegasus Transtech | : |  |
| Corp., Profit Tools, Inc., and Qualcomm, Inc., | : |  |
|  |  |  |
| Defendants. |  |  |

**ORDER**

The above listed Defendants have moved to dismiss, or for judgment on the pleadings on R&L's claims for patent infringement against these Defendants. Qualcomm filed its motion on December 1, 2009 (Doc. 68), and the other nine Defendants filed a joint motion on December 30. (Doc. 87) R&L filed a joint response in opposition to all of these motions. (Doc. 101) The Court had the benefit of extensive oral argument presented on February 2, 2010, and has considered the motions and exhibits provided by all parties.

<u>The Complaints.</u> R&L filed complaints against eight of the Defendants (Affiliated

Computer Services, EBE Technologies, Enterprise Information Solutions, Intermec Technologies, Microdea, Pegasus Transtech, Profit Tools, and Qualcomm). DriverTech and PeopleNet initiated actions against R&L in Utah and Minnesota, respectively, seeking a judgment that R&L's '078 patent is invalid. R&L filed counterclaims for infringement in those two actions.

R&L's '078 patent in issue has one independent claim:

1. A method for transferring shipping documentation data for a package from a transporting vehicle to a remote processing center:

>placing a package on the transporting vehicle;
>
>using a portable document scanner to scan an image of the documentation data for the package, said image including shipping details of the package;
>
>providing a portable image processor capable of wirelessly transferring the image from the transporting vehicle;
>
>wirelessly sending the image to a remote processing center;
>
>receiving the image at said remote processing center; and
>
>prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare a loading manifest which includes said package for further transport of the package on another transporting vehicle.

Generally, R&L's complaint or counterclaim against each of the moving Defendants describes certain products or services Defendants offer, descriptions largely taken from Defendants' websites, trade publications, and other public information. For example, the complaint against Affiliated Computer Services alleges that ACS offers the TripPak SERVICES product line (which includes TripPak Mobile Scanning, both separately and bundled as part of the TripPak Capture Anywhere product and service) "to trucking customers to scan their paperwork from

'virtually anywhere, including: in-cab scanning...' ". R&L cites an ACS press release touting ACS' partnership with PeopleNet Communications "to provide new mobile in-cab scanning solutions for fleets and drivers on the PeopleNet BLU Platform." (ACS Complaint ¶12)

Another example is R&L's complaint against Pegasus TransTech, alleging that Pegasus "... markets a software application known as TRANSFLO Now! ... Pegasus TransTech advertises that this software enables drivers to scan delivery documents from inside their cab and to send those documents directly to the corporate office within minutes." (Pegasus Complaint ¶12) The same type of product descriptions, which vary in the level of detail about the accused products, are alleged in each of the complaints at issue. (Exhibit A to Doc. 101, R&L's opposition brief, outlines the product allegations against each of the moving Defendants.)

Following several paragraphs of these product descriptions (and, in some cases, allegations about R&L's cease and desist letters to some Defendants), R&L alleges upon information and belief that each Defendant "knowingly sells and offers to sell" its products to customers, who use them in a manner that infringes on R&L's '078 method patent. R&L alleges this conduct is contributory infringement in violation of 35 U.S.C. §271(c). (See, e.g., ACS Complaint at ¶ 19.) R&L also alleges, upon information and belief, that each Defendant is knowingly encouraging and intending their customers to use Defendants' products in a manner that infringes on R&L's patent, and are therefore actively inducing infringement in violation of 35 U.S.C. §271(b).

Overview of the Pending Motions. All of the moving Defendants seek dismissal of R&L's infringement claims under Rule 12(b)(6) or Rule 12(c). All Defendants contend that liability for indirect infringement cannot be imposed unless some entity is directly infringing the

patent, a proposition which R&L does not dispute.  Defendants argue that R&L's complaints and counterclaims (1) do not allege direct infringement against the Defendants and fail to plausibly allege that any entity is directly infringing, and (2) fail to adequately allege the required elements of either active inducement to infringe or contributory infringement, under 35 U.S.C. §§271(b) and (c).  Defendants also argue that the method of the '078 patent requires performance by more than one entity, and that R&L has not adequately pled joint infringement.

R&L readily admits that it is not alleging that any of the moving Defendants directly infringe the patent, and for that reason contends that Defendants' arguments concerning joint infringement are irrelevant.  R&L disputes the assertion that the patent requires more than one entity to perform all steps of the patent; R&L performs all of those steps itself and believes that Defendants' trucking customers also perform each and every step.  For that reason, R&L's complaints do not allege a "mastermind" or any degree of control exercised over others by these Defendants.  R&L argues that each of the Defendants have sold, or offered to sell, the accused products and services that allow others to directly infringe R&L's patent.  Those others, R&L believes, are Defendants' trucking company customers, most of whom are unknown to R&L at this point.  R&L contends that its allegations of inducement to infringe and contributory infringement are sufficient to withstand challenge under Rule 12, notwithstanding R&L's present lack of knowledge of the actual identities of the direct infringers for most of the moving Defendants.

R&L notes that it has filed complaints against two alleged direct infringers, Interstate Distributor, a customer of DriverTech, and Berry & Smith Trucking, which is allegedly using PeopleNet and Microdea products to directly infringe the patents.

Standard of Review.

A motion for judgment on the pleadings pursuant to Rule 12(c) is analyzed under the same standards applicable to motions under Rule 12(b)(6). For purposes of these motions, the Court accepts the well-pleaded factual allegations of the complaint. A claim will survive if those allegations are "... enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. Jones v. City of Cincinnati, 521 F.3d 555, 559 (6th Cir. 2008), citing Bell Atlantic Corp. v. Twombly, 550 U.S.544 (2007). Twombly essentially retired the permissive "no-set-of-facts" pleading standard under Rule 8, as set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Court found that literal application of that standard impermissibly permits wholly conclusory claims to survive Rule 12 challenges.

Two years later, the Supreme Court reaffirmed and clarified Twombly. In Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), the Court clearly held that a complaint will survive a Rule 12 challenge only if its well-pleaded factual allegations are sufficient to state a claim for relief that is plausible on its face. Facial plausibility requires pleading facts that permit a reasonable inference that the defendant is liable for the alleged misconduct. If a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. at 1949, quoting Twombly, 550 U.S. at 556-557. The Court also rejected any suggestion that this heightened pleading standard should apply only when the court is not closely supervising the discovery process. If a complaint fails the plausibility test under Rule 8, a plaintiff is not entitled to any discovery.

The Sixth Circuit applied Iqbal in Tam Travel, Inc. v. Delta Airlines, Inc., 583 F.3d 896 (6th Cir. 2009), to affirm the dismissal of an antitrust complaint alleging a conspiracy among air

carriers to reduce and eliminate travel agent commissions. The Sixth Circuit held that the complaint's allegations of defendants' substantially identical reductions in commission rates paid did not plausibly allege the existence of an illegal antitrust conspiracy, in large part because conscious parallel behavior is not unlawful. The court rejected plaintiffs' arguments that their allegations about frequent meetings between responsible airline executives at critical times plausibly suggested the existence of unlawful collusion, and that discovery could be expected to establish a conspiracy. The court specifically noted that after Twombly and Iqbal, factual allegations that are "merely consistent with" the existence of a claim are not enough. The district courts must assess the plausibility of a plaintiff's claims "... **before** parties are forced to engage in protracted litigation and bear excessive discovery costs." Id. at 909 (emphasis in original).

See also, Hensley Mfg. v. ProPride, Inc., 579 F.3d 603 (6th Cir. 2009), affirming dismissal of a trademark infringement complaint after Iqbal, because the allegations failed to plausibly suggest that defendant's use was likely to cause confusion, which is an essential element of Lanham Act liability.

**DISCUSSION**

Initially, the Court agrees that the issue of whether the method of the patent requires one or more actors is not properly determined in a Rule 12 context, but is a question for claim construction. The Court will therefore not address Defendants' arguments concerning multiple-party performance and joint infringement, as they are premature.

Liability for Induced Infringement.

The Federal Circuit has held that inducement to infringe under 35 U.S.C. §271(b)

-6-

requires plaintiff to show "... that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements. The requirement that the alleged infringer knew or should have known his actions would induce actual infringement necessarily includes the requirement that he or she knew of the patent." DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1304 (Fed. Cir. 2006) (en banc in relevant part) (internal quotations and citations omitted). The Court reaffirmed several earlier cases holding that "...mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven." Id. at 1305 (internal citations and quotations omitted).

To prove such specific intent, a plaintiff must come forward with evidence of "active steps ... taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, [or] show an affirmative intent that the product be used to infringe ...". Such evidence "overcomes the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use." Id. Circumstantial evidence of the requisite specific intent may suffice, but an infringement plaintiff must allege an affirmative intent to cause someone else to directly infringe the patent.

Defendants argue that R&L's complaints fail to plausibly allege the requisite specific intent, and fail to allege that Defendants had any actual knowledge of R&L's patent. R&L responds that Defendants' own advertising and product descriptions are a sufficient basis to plausibly suggest that required level of intent. As an example, at oral argument R&L referred to PeopleNet's product descriptions; R&L contends that PeopleNet's advertising effectively "told its customers" that PeopleNet's g3 onboard computing system, combined with Microdea's

scanner, could infringe R&L's patent. The Court notes that R&L's complaint against PeopleNet actually alleges that the g3 is marketed as a self-contained system that pairs with a scanning device that captures "bill of lading form information, cargo bar code information or other [information] through an in-cab tethered option." PeopleNet promotes its products as enabling "in-cab scanning and in-cab receipt and delivery of scanned or imaged documents [which] increases velocity of billing information to the back office." (PeopleNet Complaint, ¶¶ 11 and 12)

Similarly, R&L's complaint against Microdea alleges, upon information and belief, that Microdea sells "IN CAB SCANNING" (a small document scanner that can be mounted in-cab) to its trucking customers,. According to R&L, this scanner "integrates" with PeopleNet's g3 to perform a process that infringes on the '078 patent, by permitting the scanning of source documents which are then uploaded to the corporate office to expedite the billing process. (Microdea Complaint, ¶¶12-14)

When these allegations are measured against the elements of active inducement discussed above, the Court must conclude they are insufficient under Twombly and Iqbal to **plausibly** state a claim that PeopleNet or Microdea, or any of the other moving Defendants, are specifically intending to induce others (their customers or potential customers) to infringe R&L's patent. In Microdea's case, the sale and offer for sale of a scanner that can be mounted in-cab and "permits" a driver to scan documents to a corporate office does not plausibly support the allegation that Microdea is specifically intending its scanner to be used by anyone in performing all the steps of R&L's method patent. Similarly, Microdea's provision of "fully integrated, technological solutions" to trucking companies is not enough to plausibly allege a specific intent

to induce infringement by those companies.  The ACS complaint alleges that ACS products permit in-cab scanning, and that ACS partners with PeopleNet to provide "mobile in-cab scanning solutions."  An offer to sell or the sale of a product such as a scanner, or customized software or a truck-mounted computer,  is in the Court's view not enough to establish a plausible claim of specific intent by these Defendants to induce infringement of the multi-step patent process by any other entity.

This conclusion is bolstered by the Sixth Circuit's decision in Tam Travel, where the plaintiffs specifically alleged that defendants' executives, who were "responsible for setting commission levels . . . met frequently during the period of cuts and caps," which "afforded these persons the opportunity to . . . conspire" and "communicate with one another for the purpose of . . . implementing . . . their common plan  . . .".  The court held those allegations pled "only an opportunity to conspire, which does not necessarily support an inference of illegal agreement." Tam Travel, 583 F.3d at 905.   Here, R&L's factual allegations that, for example, ACS advertises and sells a product that permits in-cab scanning, or that Profit Tools' "complete in-cab scanning tool for drivers" permits scanning and sending documents in real-time, are accepted. But R&L's legal conclusions from those facts - that Defendants' touting of their products' capabilities and sale of the products amounts to a specific intent to induce infringement - is simply not plausibly supported by those factual allegations.

Liability for Contributory Infringement.

The elements of contributory infringement under 35 U.S.C. §271(c) are defined in that statute:

> Whoever offers to sell or sells within the United States or imports

> into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

To establish liability under this section, R&L must allege that each Defendant sold or offered to sell a product used to practice R&L's patent; that the product is a **material** part of that patented process; that each Defendant **knew** its product to be especially made or adapted for use to infringe the patent; and that the products are **not** staple articles suitable for substantial noninfringing uses.

Defendants argue that R&L's complaints do not allege all of these elements. R&L responds that its complaints are more than adequate to state a plausible claim that each accused product performs or is capable of performing a material part of the method patent, and that Defendants' knowledge of that fact is demonstrated by their own product descriptions and advertising. R&L argues that it need not specifically allege the lack of substantial noninfringing use, because the proper issue is whether the product performs a material part of the patent. If it can (for instance, if a Defendant's product is "a portable image processor capable of wirelessly transferring the image from the transporting vehicle"), that is enough.

As with R&L's position with respect to inducing infringement, the Court disagrees with R&L's position. Contributory infringement liability generally ensures that a product's maker does not escape all infringement liability because the product itself is incorporated into another product that does infringe. In <u>Ricoh Co., Ltd. v. Quanta Computers Inc.</u>, 550 F.3d 1325, 1337 (Fed. Cir. 2007), the court observed that the statute "... incorporates the core notion that one who

sells a component especially designed for use in a patented invention may be liable as a contributory infringer, provided that the component is not a staple article of commerce suitable for substantial noninfringing use." At a minimum, therefore, R&L must allege that Defendants' products are "especially designed" to be used by others to infringe, **and** that those products lack substantial noninfringing uses.

R&L's complaints against each of these Defendants fail to include these crucial allegations. Each of the accused products (scanners, computers, software and software applications, hand held bar code scanners, etc.) are described as having certain technological capabilities and functions such as in-cab scanning. But the complaints do not allege that any Defendant especially designed their product for infringing use by others, or any facts demonstrating Defendants' knowledge of such use. And the product descriptions R&L provides in each complaint plausibly suggest the existence of substantial noninfringing uses. Contrary to R&L's argument, the affirmative allegation of the absence of such noninfringing uses is a key element of contributory infringement.

During oral argument, R&L maintained that its complaints adequately alleged indirect infringement under the "offer to sell" provisions of 35 U.S.C. §§ 271(b) and (c) because R&L alleges that Defendants have marketed their products with the intent that they be used to infringe the '078 Patent. Therefore, according to R&L, because liability for indirect infringement may be established by an "offer to sell," it need not identify a specific direct infringer in the complaint and, indeed, it need not even plead that an infringing sale took place.

The Federal Circuit has on two occasions specifically declined to address whether a method patent, such as the '078 Patent, can be infringed pursuant to the "offer to sell" clause.

See Ricoh Co. v. Quanta Computer, 550 F.3d at 1334-35; NTP, Inc. v. Research In Motion, Ltd., 418 F.3d 1282, 1320-21 (Fed. Cir. 2005). Logically, however, a method patent cannot be indirectly infringed by a mere offer to sell a product with which to perform a step of the method.

As noted above, the parties agree that in order to prevail on a claim of either contributory infringement or inducing infringement, the plaintiff must prove that direct infringement of the patent has occurred. Lucent Technologies, Inc. v. Gateway, Inc., 580 F.3d 1301, 1320 (Fed. Cir. 2009); ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd., 501 F.3d 1307, 1312 (Fed. Cir. 2007). It is also well-established that a method patent has not been infringed until someone actually performs each step of the method. Ricoh, 550 F.3d at 1333; see also Joy Technologies, Inc. v. Flakt, Inc., 6 F.3d 770, 775 (Fed. Cir. 1993)("A method claim is *directly* infringed only by one practicing the patented method.")(emphasis in original). Thus, in Ricoh, the defendant was not liable for direct infringement of a method patent, even though it sold software containing instructions to perform the patented process, because the software did not actually perform the process. Id. at 1334-35.

Reconciling the requirements to prove indirect infringement generally with the specific requirements to prove direct infringement of a method patent, it seems evident that "offer to sell" liability cannot be imposed on an alleged indirect infringer of a method patent - offering to sell the method is not performing the method. Consider these two scenarios. First, Company A offers to sell Company B a component that can only be used to perform a step of the patented method, i.e. there are no substantial non-infringing uses of the component. Company B declines to purchase the component. Since Company B did not purchase the component, and the component was not used to perform the process, no direct infringement took place. Therefore,

Company A cannot be held liable for contributory infringement. Second, Company A sells a component with substantial non-infringing uses, but specifically markets the component to Company B on the basis that it can be used to infringe the patented process. Company B declines to purchase the component. Again, because no sale took place, and the component was not used to perform the process, no direct infringement took place. Therefore, Company A cannot be liable for inducing infringement, even though it intended in this instance for the component to be used in an infringing manner.

Accordingly, although there are apparently divergent views on this issue among the district courts, (see, e.g., Finnsugar Bioproducts v. Raytheon Engineers & Constructors, 1998 U.S. Dist. LEXIS 15965 (N.D. Il., September 30, 1998), cited by R&L), this Court is persuaded that "offer to sell" liability does not apply to claims of infringement of a method patent. The Court concludes that in **this** case, in order to state claims for indirect infringement, R&L's complaints must plead specific facts plausibly establishing that direct infringement of the '078 Patent has occurred, i.e., that a third party has actually performed each step of the patented method. Consequently, R&L's complaints and counterclaims do not state a claim for indirect infringement under an "offer to sell" theory of liability.

Also at oral argument, R&L disagreed with the Court's statement that Twombly and Iqbal heightened the pleading standards applicable to indirect infringement. R&L cites several cases that have denied motions to dismiss infringement complaints that are no more specific than are R&L's, and argues that Twombly and Iqbal did not overrule such cases, particularly Fuji Machine Mfg. Co. v. Hover-Davis, Inc., 936 F.Supp. 93 (W.D. N.Y. 1996). There, the district court found sufficient plaintiff's indirect infringement claims, which alleged upon information

and belief that the defendant sold products which were used by "others" in apparatus and methods covered by the plaintiff's patents. Whether or not it can be said that Twombly "overruled" a legion of earlier cases applying the "no-set-of-facts" pleading standard, what is undeniably clear is that Twombly and Iqbal require a district court to carefully review complaints that are challenged by Rule 12 motions, to ensure that factual allegations are sufficient to plausibly suggest the existence of a claim. This standard, in this Court's firm view, imposes a greater burden upon R&L than that imposed pre-Iqbal by the district court in Fuji Machine.

In Mallinckrodt, Inc. v. E-Z-EM Inc., 2009 U.S. Dist. LEXIS 108696 (D. Del. November 20, 2009), for example, the district court dismissed indirect infringement claims because the complaint failed to specifically allege facts plausibly establishing the requisite intent and knowledge required for inducement to infringe. And because the complaint similarly failed to allege that defendant knew its product was especially designed for use to infringe, the court dismissed plaintiff's contributory infringement claims. The Court reaches the same conclusions concerning R&L's claims here. This conclusion is further bolstered by the Sixth Circuit's decisions in Tam Travel and in Hensley, both decided after Iqbal and both concluding that the facts alleged did not satisfy Iqbal's plausibility standard.

Finally, this Court rejects R&L's assertion that patent claims should not be dismissed before claim construction. That argument would certainly prevail if the motions to dismiss implicate the meaning and construction of the claim terms in some significant way. R&L relies on Yangaroo Inc. v. Destiny Media Techs., Inc., 2009 U.S. Dist. LEXIS 82052 (E.D. Wis., August 31, 2009), where the defendant sought dismissal, arguing that the process patent at issue

required multiple users to perform the process, and that plaintiff had not properly alleged facts demonstrating direct or joint infringement. The plaintiff argued that the patent did not require multiple users, offering cogent arguments to support its position. The district court found that dispute must be resolved in claim construction, and not on a motion to dismiss.

Here, the Court agrees with R&L that the question of whether its patent requires multiple users (as was argued by all of the moving Defendants) is premature, and has assumed for purposes of the pending motions that a single user performs all steps of the method claim. But that reasoning does not apply to R&L's allegations, made largely if not exclusively on information and belief, that Defendants' respective product marketing statements and product sales are acts of active, intentional inducement, or that Defendants are thereby contributing to direct infringement by others. The MDL Panel orders do not limit this Court's consideration of Rule 12 motions, and granting such motions does not contravene any efficiency concerns that underlie the Panel's orders. This is especially true given that R&L will be granted leave to amend its complaints against these Defendants if it chooses to do so.

For all of these reasons, the Court finds that Defendants' motions to dismiss are meritorious. R&L's complaints and counterclaims against each of the moving Defendants fail to plausibly allege that the moving Defendants are actively inducing infringement of R&L's '078 patent because the complaints do not allege the requisite level of specific intent, or Defendants' knowledge of R&L's patent. R&L's pleadings also fail to plausibly allege contributory infringement claims, as R&L has not adequately pled that Defendants knew their products to be especially made or adapted for infringing use, or that the products are not staple articles suitable for substantial noninfringing uses. R&L's complaints and counterclaims against each of the

moving Defendants are therefore dismissed.

R&L's conditional motion for leave to amend is granted. Amended pleadings must be filed within twenty days of the date of entry of this order, or by March 15, 2010.

SO ORDERED.

Dated: February 23, 2010            s/Sandra S. Beckwith
                                    Sandra S. Beckwith
                                    Senior United States District Judge