# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| **IN RE:  Bill of Lading Transmission and Processing System Patent Litigation** )<br>)<br>) | MDL Docket No. 1:09-md-2050 |
| ) | JUDGE BECKWITH |
| This document relates to: ) )<br>) | |
| **DRIVERTECH LLC,** )<br>) | |
| Plaintiff/Counterclaim-Defendant, )<br>) | |
| vs. )<br>) | Case No. 2:08-cv-00862 (D. Utah) |
| **R+L CARRIERS, INC.** )<br>) | **Jury Demand Endorsed Herein** |
| Defendant/Counterclaim-Plaintiff )<br>) | |

---

## R+L CARRIERS, INC.'S FIRST AMENDED COUNTERCLAIM
## FOR PATENT INFRINGEMENT AND DECLARATORY JUDGMENT

---

("R+L") states the following for its Amended Counterclaim against DriverTech LLC ("DriverTech"):

### Nature of the Action

1.      This is an action for patent infringement in violation of 35 U.S.C. § 271(b) and (c), and for a declaratory judgment as to DriverTech's patent infringement.

### Jurisdiction and Venue

2.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because DriverTech initiated a lawsuit in this judicial district against R+L on the issues to be determined by this

Counterclaim.  Venue is also appropriate in this judicial district pursuant to 28 U.S.C. §§ 1391(d) and 1400(b).

### The Parties

4.      R+L is a corporation organized and existing under the laws of the State of Ohio, and has its principal place of business at 600 Gillam Road, Wilmington, Ohio 45177.

5.      DriverTech is a corporation organized and existing under the laws of the State of Delaware, and has its principal place of business at 1960 South Milestone Drive, Sale Lake City, Utah  84104.

### The Infringed Patent

6.      The United States Patent and Trademark Office duly and legally issued United States Patent No. 6,401,078 B1 ("the '078 Patent") entitled "Bill of Lading Transmission and Processing System for Less Than a Load Carriers" on June 4, 2002.  A copy of the '078 Patent is attached as Exhibit A.

7.      The '078 Patent claims a process directed to the transfer of shipping documentation for a package (freight) to a processing center.  In particular, documentation for a package is scanned and transmitted wirelessly to a remote processing center.  The processing center then prepares a loading manifest that includes the package, prior to the package being removed from the transporting vehicle.

8.      R+L owns all rights, title and interest in the '078 Patent via assignment.

<u>**Actions Giving Rise to this Complaint**</u>

**A.    DRIVERTECH'S PRODUCTS AND SERVICES**

    *1.    The DT4000 TruckPC*

    9.    DriverTech is a supplier of mobile computer solutions to the commercial trucking

industry.

    10.    According to its website, DriverTech provides "next-generation mobile

communications" by offering "on-board intelligence with a full range of services and state-of-

the-art applications for the transportation industry.  The DriverTech system provides access to

key information that improves driver quality of life and trucking efficiency metrics."  *See*

www.drivertech.com/index.html, last visited on April 1, 2010 (attached hereto as Exhibit B).

    11.    Specifically, DriverTech offers its DT4000 TruckPC to its clients in the

transportation industry.  DriverTech represents to potential customers that with the DT4000

TruckPC, they "will increase [their] customer satisfaction, improve [their] team's performance,

and dramatically boost [their] business profitability through efficient asset and fleet utilization."

*See* www.drivertech.com/commercial/index.html, last visited on April 1, 2010 (attached hereto

as Exhibit C).

    12.    The DT4000 TruckPC is a Microsoft Windows XP Embedded secure, onboard

computer with three modes of communications and provides trucking customers with in-cab

scanning.  *Id.*

    13.    The following are some of the key selling features of the DT4000 Truck PC:

- rugged design

- over the air file transfers

- color touch screen

- onboard scanning and printing

- barcode reader and in-cab scanning enabled

- two-way messaging

*See* DriverTechDT4000 Product Brochure (attached hereto as Exhibit D).

14.    The DT4000 TruckPC "connects satellite, cellular and Wi-Fi networks simultaneously and then uses an algorithm to automatically route data via the lowest-cost option."  *Id.*

15.    DriverTech boasts that with in-cab scanning and printing using the DT4000 Truck PC, truck drivers "can work more efficiently and save [the customer] money."  *Id.*

16.     DriverTech identifies the following benefits of the DT4000 Truck PC:

- driving communications costs down

- reduced messaging costs

- improved asset utilization and fleet maintenance

- reduce fuel consumption

- improved driver productivity and customer satisfaction

- improved driver satisfaction

- increased bottom line

*See* http://www.drivertech.com/commercial/benefits.html, last visited April 1, 2010 (attached hereto as Exhibit E).

17.    A reasonable inference to be drawn from the facts set forth in Paragraphs 9-16 of the Amended Counterclaim is that DriverTech's trucking customers use the DT4000 TruckPC's wireless functions.  R+L hereby asserts this reasonable inference as true.

18.    Another reasonable inference to be drawn from the facts set forth in Paragraphs 9-16 of the Amended Counterclaim is that DriverTech's trucking customers use the DT4000

4

TruckPC from onboard the truck, specifically "in-cab."  R+L hereby asserts this reasonable inference as true.

19.     Another reasonable inference to be drawn from the facts set forth in Paragraphs 9-16 of the Amended Counterclaim is that DriverTech's trucking customers use the DT4000 TruckPC to capture critical transportation documents, such as bills-of-lading.  R+L hereby asserts this reasonable inference as true.

20.     Another reasonable inference to be drawn from the facts set forth in Paragraphs 9-16 of the Amended Counterclaim is that DriverTech's trucking customers use the DT4000 TruckPC to wirelessly transmit critical transportation documents such as bills-of-lading, in order to "improve team performance" and "boost business profitability."  R+L hereby asserts this reasonable inference as true.

21.     Another reasonable inference that is drawn from the facts set forth in Paragraphs 9-16 of the Amended Counterclaim is that DriverTech's trucking customers transmit bill-of-lading information to a remote processing facility to boost profitability through "efficient asset and fleet utilization" by preparing loading manifests from the scanned and transmitted bills-of-lading.  R+L hereby asserts this reasonable inference as true.

22.     These facts and reasonable inferences establish that DriverTech actively encourages trucking customers to practice the method taught in the '078 Patent.

23.     These facts and reasonable inferences also establish that DriverTech affirmatively intends to contribute to and actively induce the infringement of the '078 Patent by marketing and selling the DT4000 TruckPC, knowing the same to be especially made or especially adapted for infringement of the '078 Patent, and not a staple article or commodity of commerce for substantial noninfringing use, and encouraging motor carriers to remotely transmit shipping

documents from onboard a motor vehicle to a remote processing facility.  There, a loading document is prepared that includes the further transport of goods on another vehicle.  DriverTech does so without leave or license of R+L, and in violation of R+L's rights.

         *2.*     *DTScan In-Cab Scanning Solution*

24.     The DT4000 Truck PC works with DriverTech's DTScan In-Cab Scanning Solution so that DriverTech's trucking customers have "the ability to perform in-cab scanning of critical Proof of Delivery (POD) and other driver documents . . . In one simple step, this state-of the-art technology results in scanned images that are 'Forms Recognition Friendly' and meet the highest-quality professional imaging standards."  *See* "The Future of In-Cab Choices" Product Brochure, attached hereto as Exhibit F.

25.     According to DriverTech, "DTScan allows the real-time transmission of time critical documents" over the DT4000 TruckPC via wi-fi or cellular networks.  *Id.*

26.     DriverTech's DTScan provides for faster cash cycles by enabling a "quicker revenue return with real-time transmission of [proof of delivery] documents."  *Id.*

27.     DriverTech also advertises that immediate scanning of documents from inside the truck cab eliminates the need for drivers "to spend valuable hours of service using time-consuming truck stop services to scan documents."  *Id.*

28.     DriverTech is also partnered with McLeod Software.  According to its website, "McLeod Software is the leading provider of dispatch, accounting and imaging software to the trucking industry."  *See* http://www.drivertech.com/partners/partners.html, last visited April 2, 2010 (attached hereto as Exhibit G).

29.     DriverTech promotes its partnership with McLeod Software as enabling trucking customers to route and handle bills-of-lading to speed processing of advance loading manifests.

Specifically, DriverTech states that "[w]ith the combination of DriverTech's DTScan and McLeod's Forms Recognition drivers scan delivery, settlement and other documents in the cab, and images are sent seamlessly via open WiFi or cellular communications."  *See* "DriverTech and McLeod Imaging Announce Full Integration of In-Cab Scanning and Document Management", Press Release, dated October 1, 2008, attached hereto as Exhibit H.

30.    A reasonable inference to be drawn from the facts set forth in Paragraphs 24-29 of the Amended Counterclaim is that DriverTech's trucking customers use the DT4000 TruckPC and DTScan In-Cab Scanning to wirelessly transmit data from their truck cabs.  R+L hereby asserts this reasonable inference as true.

31.    Another reasonable inference to be drawn from the facts set forth in Paragraphs 24-29 of the Amended Counterclaim is that DriverTech's trucking customers use DTScan In-Cab Scanning to transmit critical transportation documents, such as bills-of-lading, from their truck cabs through wi-fi and cellular networks to the customers' back office.  R+L hereby asserts this reasonable inference as true.

32.    Another reasonable inference to be drawn from the facts set forth in Paragraphs 24-29 of the Amended Counterclaim is that DriverTech's trucking customers avail themselves of the DriverTech/McLeod partnership announced by DriverTech through a press release by using the McLeod software, the leading "dispatch accounting and imaging software to the trucking industry," to prepare advance loading manifests from the transmitted data, such as bills-of-lading, as a part of the trucking customer's dispatch operations.  R+L hereby asserts this reasonable inference as true.

33.     These facts and reasonable inferences establish that DriverTech actively encourages trucking customers to practice the method taught in the '078 Patent.

34.     Thus, DriverTech affirmatively intends to contribute to and actively induce the infringement of the '078 Patent by marketing and selling the DT4000 TruckPC and DTScan In-Cab Scanning, knowing the same to be especially made or especially adapted for infringement of the '078 Patent, and not a staple article or commodity of commerce for substantial noninfringing use, and encouraging motor carriers to remotely transmit shipping documents from onboard a motor vehicle to a remote processing facility.  There, a loading document is prepared that includes the further transport of goods on another vehicle.  DriverTech does so without leave or license of R+L, and in violation of R+L's rights.

*3.     The DT4000 Truck PC's Applications with Wi-Fi, Satellite and Cellular Networks*

35.     DriverTech has actively sought, identified and engaged business partners to provide wi-fi, cellular and satellite networks for its DT4000 Truck PC.

36.     One of those partners is ORBCOMM.  Upon information and belief, ORBCOMM is a global satellite data communications company focused on machine-to-machine communications.  ORBCOMM technology is used to send and receive short messages, in real-time, which allows "users to access critical information readily, often from areas beyond the geographic reach of terrestrial systems."  *See* http://www.orbcomm.com, last visited March 29, 2010 (attached hereto as Exhibit I).

37.     In or around December 4, 2006, DriverTech announced that it offers ORBCOMM Satellite Data Communications to fleets in "next generation" DT4000 systems.  *See* "DriverTech Offers ORBCOMM Satellite Data Communications" Press Release, dated Dec. 4, 2006, attached hereto as Exhibit J.

38.     According to DriverTech, the "DT4000 incorporates ORBCOMM for satellite coverage and low-cost messaging as well as cellular and Wi-Fi connectivity for the most cost-

efficient message routing. Leading customers such as U.S. Xpress, Interstate Distributor, and Anderson Trucking Service are some of the large fleets who have installed and are using the DriverTech system." *Id.*

39. Marc Eisenberg, ORBCOMM's Chief Marketing Officer, stated that with the partnership of DriverTech and ORBCOMM, "[t]rucking fleets can save money with the DriverTech system while dramatically increasing productivity for their drivers." *Id.*

40. The DT4000 TruckPC is used as part of the DTScan In-Cab Scanning Solution.

41. A reasonable inference to be drawn from the fact set forth in Paragraphs 35-40 of the Amended Counterclaim is that DriverTech intends for trucking customers to purchase the DT4000 Truck PC to send messages wirelessly from the truck cab. R+L hereby asserts this reasonable inference as true.

42. Another reasonable inference to be drawn from the facts set forth in Paragraphs 35-40 of the Amended Counterclaim is that DriverTech's trucking customers use the DT4000 TruckPC and accompanying ORBCOMM satellite data communications technology to facilitate communications between drivers and the back office to "increase[ ] productivity for their drivers." R+L hereby asserts this reasonable inference as true.

43. Yet another reasonable inference to be drawn from the facts set forth in Paragraphs 35-40 of the Amended Counterclaim is that DriverTech's trucking customers use the DT4000 TruckPC, accompanying ORBCOMM satellite data communications, and DTScan In-Cab Scanning Solution to transmit bills-of-lading between the driver and back office so that the back office can "access critical information readily . . . from areas beyond the geographic reach of terrestrial systems." R+L hereby asserts this reasonable inference as true.

44.     Still another reasonable inference to be drawn from the facts set forth in Paragraphs 35-40 of the Amended Counterclaim is that DriverTech's trucking customers use the DT4000 Truck PC and DTScan In-Cab Scanning to prepare advance loading manifests to increase driver productivity and help "trucking fleets save money."  R+L hereby asserts this reasonable inference as true.

45.     These facts and reasonable inferences establish that DriverTech actively encourages trucking customers to practice the method taught in the '078 Patent.

46.     Thus, DriverTech affirmatively intends to contribute to and actively induce the infringement of the '078 Patent by marketing and selling the DT4000 Truck PC and DTScan In-Cab Scanning, knowing the same to be especially made or especially adapted for infringement of the '078 Patent, and not a staple article or commodity of commerce for substantial noninfringing use, and encouraging  motor carriers to remotely transmit shipping documents from onboard a motor vehicle to a remote processing facility.  There, a loading document is prepared that includes the further transport of goods on another vehicle.  DriverTech does so without leave or license of R+L, and in violation of R+L's rights.

   *4.     DTScan's Applications with McLeod Imaging Software*

47.     McLeod Imaging Software is "the leading provider of dispatch, accounting and imaging software to the transportation industry."  *See* Exhibit G.

48.     On or around October 1, 2008, after DriverTech was made aware of the '078 Patent, DriverTech issued a press release announcing its partnership with McLeod Imaging Software in connection with the DTScan In-Cab Scanning solution.  *See* Exhibit H.  Specifically, DriverTech announced "a full integration of DriverTech's DTScan In-Cab Scanning solution with McLeod's Forms Recognition product . . . The integrated technologies can benefit carriers

by reducing DSO (Days Sales Outstanding) and costs associated with overhead and business processes." *Id.*

49.     DriverTech explained in the press release to potential customers that "[w]ith the combination of DriverTech's DTScan and McLeod's Forms Recognition drivers scan delivery, settlement and other documents in the cab, and images are sent seamlessly via open Wi-Fi or cellular communications.  Customers receive images, including a scanned OMR (Optical Mark Recognition) bubble form.  Forms Recognition then automates the process of receiving scanned documents by automatically determining document types and indexing and routing them through a workflow solution." *Id.*

50.     Mark Haslam, DriverTech's CEO, has stated, "Scanning proof of delivery (POD) documents with DTScan and One Touch VRS in the cab, transmitting images and invoicing customers as the vehicle departs can result in a dramatic reduction in DSO.  DTScan also eliminates the need for drivers to spend valuable hours of service time using more costly truckstop services to scan POD and settlement documents and eliminates paperwork delivery delays, leading to improved driver satisfaction and retention." *Id.*

51.     McLeod's software "streamlines paperwork processes and reduces labor costs for all types of motor carriers by quickly, easily, and accurately capturing, validating and classifying documents."  Tom McLeod, president of McLeod Imaging, stated, "The use of Forms Recognition transforms labor-intensive office operations into an advanced electronic document management system." *Id.*

52.     A reasonable inference to be drawn from the facts set forth in Paragraphs 47-51 of the Amended Counterclaim is that DriverTech's trucking customers use its products for in-cab scanning "as the vehicle departs."  R+L hereby asserts this reasonable inference as true.

53.     Another reasonable inference to be drawn from the facts set forth in Paragraphs 47-51 of the Amended Counterclaim is that DriverTech's trucking customers send trip documents, such as bills-of-lading, to remote processing centers.  R+L hereby asserts this reasonable inference as true.

54.     Another reasonable inference to be drawn from the facts set forth in Paragraphs 47-51 of the Amended Counterclaim is that DriverTech offers McLeod Imaging in combination with its DTScan  to "streamline paperwork processes" and "transform[ ] labor-intensive office operations into an advanced electronic document management system" by preparing loading manifests from the scanned and transmitted bills-of-lading.  R+L hereby asserts this reasonable inference as true.

55.      These facts and reasonable inferences establish that DriverTech actively encourages trucking customers to practice the method taught in the '078 Patent.

56.     Thus, DriverTech affirmatively intends to contribute to and actively induce the infringement of the '078 Patent by marketing and selling the DT4000 Truck PC and DTScan In-Cab Scanning, knowing the same to be especially made or especially adapted for infringement of the '078 Patent, and not a staple article or commodity of commerce for substantial noninfringing use, and encouraging motor carriers to remotely transmit shipping documents from onboard a motor vehicle to a remote processing facility.  There, a loading document is prepared that includes the further transport of goods on another vehicle.  DriverTech does so without leave or license of R+L, and in violation of R+L's rights.

## B. DRIVERTECH'S CUSTOMERS DIRECTLY INFRINGE THE '078 PATENT

### 1. *Interstate Distributor Company*

57.     Interstate Distributor Company ("Interstate Distributor") is a trucking company headquartered in Tacoma, WA with terminal and yard facilities located in all major markets throughout the United States.  Interstate Distributor offers regional, expedited, temperature controlled, dedicated, intermodal, brokerage, and third party load services to customers throughout North America.

58.     In or around July 9, 2008, DriverTech announced via a press release that Interstate Distributor was integrating DriverTech DTScan In-Cab Scanning systems throughout Interstate Distributor's fleet.  *See* "Interstate Distributor Co. is the First Major Carrier in the Transportation Industry to Bring Scanning Technology In-Cab Using DriverTech's DTScan" Press Release, dated July 9, 2008, attached hereto as Exhibit K.  According to George Payne, CEO of Interstate Distributor, "Bringing in-cab scanning right into the tractor is a win-win-win for our drivers, our customers and IDC."  *Id.*

59.     DriverTech announced that DTScan brought Interstate Distributor to do the following:

- Offset rapid fuel price increases by speeding up the billing process and accelerating cash flow.

- Eliminate wait time—paperwork is delivered within minutes versus hours or days. The company doesn't have to wait for the documents to be scanned or mailed.

- Provide driver convenience—drivers can scan at the time of load delivery.

- Eliminate transactional scanning charges.

- Increase customer satisfaction—customers can bill faster with instant proof of delivery.

*Id.*

60.     Mr. Payne is further quoted on DriverTech's website to say: "The DriverTech system provides our drivers with PC capabilities including the ability to scan documents, e-mail, watch movies, search the Internet, complete online safety training, communicate with management in what are now considered 'dead' zones and utilize highly proficient street-level mapping."  He further states "the question is how to reduce the monthly communications bill as well as how to leverage additional applications to fully embrace the savings available."  *See* http://www.drivertech.com/commercial/testimonials.html, last visited April 2, 2010 (attached hereto as Exhibit L).

61.     The reasonable inference to be drawn from the facts set forth in Paragraphs 57-60 of the Amended Counterclaim is that DriverTech actively induced Interstate Distributor to use the DT4000 TruckPC and DTScan In-Cab Scanning to scan and wirelessly transmit bills-of-lading from inside the truck cab to the back office where advance loading manifests are prepared. Those actions constitute direct infringement of the '078 Patent.  R+L hereby asserts this reasonable inference as true.

62.     Another reasonable inference to be drawn from the facts set forth in Paragraphs 57-60 of the Amended Counterclaim is that DriverTech contributorily infringed the '078 Patent by selling and providing the DT4000 TruckPC and DTScan In-Cab Scanning  in combination with other services and devices to Interstate Distributor in order for Interstate Distributor to directly infringe the '078 Patent by scanning and wirelessly transmitting bills-of-lading from inside the truck cab to the back office where advance loading manifests are prepared.  R+L hereby asserts this reasonable inference as true.

C.    **DRIVERTECH'S STRATEGIC PARTNERSHIP AND ALLIANCE WITH AFFILIATED COMPUTER SERVICES, INC.**

63.    DriverTech has partnered with Affiliated Computer Services, Inc. ("ACS") to provide mobile in-cab scanning to customers in the trucking and transportation industry.

64.    ACS is a global provider of business process and information technology services. ACS markets and sells its TripPak line of products and services. ACS claims to provide "Comprehensive Business Process Outsourcing services to the global integrated freight delivery industry, as well as LTL carriers in the North American market place." *See* "ACS in Transportation" Marketing Brochure (attached hereto as Exhibit M).

65.    ACS offers customers the TripPak SERVICES product line which includes, among other products and services, TripPak SCANNING. ACS offers the TripPak SCANNING so that its trucking customers can scan their paperwork from "virtually anywhere, including [ ] in-cab scanning . . ." *See* http://www.trippak.com/sanning_outsourced.asp, last visited April 2, 2010 (attached hereto as Exhibit N).

66.    On or about October 22, 2007, DriverTech announced the launch of InCab Scanning through an agreement with ACS TripPak SERVICES. Specifically, DriverTech announced that it "now offers InCab Scanning, part of ACS' Capture ANYWARE program." *See* "DriverTech Provides In-Cab Scanning Solution Using ACS TripPak SERVICES" Press Release, dated October 22, 2007, attached hereto as Exhibit O.

67.    Kelley Walkup, vice president and general manager of ACS Expedited Solutions, stated "InCab Scanning provides drivers yet another option to advance their paperwork so that it can be processed quickly and efficiently." She continued to say "[t]his flexible innovation remotely captures important documents and processes them as directed, boosting convenience, accessibility and affordability for all users." *Id.*

68.     Mark Haslam, CEO and President of DriverTech, admitted that "[t]he ability to scan documents in the cab of the truck provides carriers with a significant operational efficiency that speeds up receivable collection and driver settlement."  *Id.*

69.     Mr. Haslam further added that "[t]hrough advantages like 'incab' scanning, carriers are beginning to experience the operational improvements available with a powerful computing platform in the cab of the truck and lower communication costs.  Because documents are scanned 'in cab,' using proven DriverTech technology, they are easily integrated with other TripPak SERVICES."  *Id.*

70.     A reasonable inference to be drawn from the facts set forth in Paragraphs 63-69 of the Amended Counterclaim is that DriverTech's trucking customers use it products for in-cab scanning.  R+L hereby asserts this reasonable inference as true.

71.     Another reasonable inference to be drawn from the facts set forth in Paragraphs 63-69 of the Amended Counterclaim is that DriverTech's trucking customers send trip documents and "important documents," such as bills-of-lading, to remote processing centers. R+L hereby asserts this reasonable inference as true.

72.     Another reasonable inference to be drawn from the facts set forth in Paragraphs 63-69 of the Amended Counterclaim is that DriverTech's trucking customers boost "convenience, accessibility, and affordability" by preparing loading manifests from the scanned and transmitted bills-of-lading.  R+L hereby asserts this reasonable inference as true.

73.     To the extent that a mastermind is required to be identified, the reasonable inference to be drawn from the allegations contained in this Amended Counterclaim is that DriverTech is the mastermind of the collaboration between DriverTech and ACS, and that,

despite this, ACS has actively collaborated with DriverTech to infringe the '078 Patent.  R+L hereby asserts this reasonable inference as true.

74.     These facts and reasonable inferences establish that DriverTech actively encourages trucking customers to practice the method taught in the '078 Patent.

75.     Thus, DriverTech affirmatively intends to contribute to and actively induce the infringement of the '078 Patent by marketing and selling the DT4000 Truck PC and DTScan In-Cab Scanning, and encouraging motor carriers to remotely transmit shipping documents from onboard a motor vehicle to a remote processing facility.  There, a loading document is prepared that includes the further transport of goods on another vehicle.  DriverTech does so without leave or license of R+L, and in violation of R+L's rights.

**D.     THE CEASE AND DESIST LETTER**

76.     On or about September 24, 2008, R+L sent DriverTech a cease and desist letter regarding the sale of the DT4000 TruckPC ("Cease and Desist Letter", attached hereto as Exhibit P).  The Cease and Desist Letter advised DriverTech that R+L is the owner of the '078 Patent, and enclosed a copy of the '078 Patent.  Thus, DriverTech was aware of the '078 Patent at least as of September 2008.

77.     The Cease and Desist Letter informed DriverTech that R+L was aware that DriverTech was "promoting the use of the device to motor carriers to remotely transmit shipping documents from a vehicle to a remote processing facility." *Id.*

78.      After advising DriverTech that R+L aggressively protects its valuable intellectual property rights, the Cease and Desist Letter requested that DriverTech provide R+L with sufficient information regarding DriverTech's product to allow R+L to dispel its concerns of infringement.

79.    DriverTech did not respond in writing to the Cease and Desist Letter.

80.    DriverTech did not provide any information to R+L, oral or otherwise, to refute R+L's contention that DriverTech had indirectly infringed the '078 Patent.

81.    DriverTech did not provide any information to R+L, oral or otherwise, to dispel R+L's concerns that DriverTech had indirectly infringed on the '078 Patent.

82.    DriverTech continued to advertise the DT4000 Truck PC on its website despite receiving the Cease and Desist Letter.

83.    DriverTech continued to provide the DT4000 Truck PC to its trucking customers, like Interstate Distributor, despite receiving the Cease and Desist Letter.

84.    Instead of responding to the Cease and Desist Letter, DriverTech filed its Declaratory Judgment Action against R+L on or about November 10, 2008.

85.    The reasonable inference to be drawn from the facts set forth in Paragraphs 76-84 of the Amended Counterclaim is that DriverTech did not respond to R+L's request for information to dispel its concerns of infringement because DriverTech is infringing or has infringed the '078 Patent. R+L hereby asserts this reasonable inference as true.

86.    Another reasonable inference to be drawn from the facts set forth in Paragraphs 76-84 of the Amended Counterclaim is that there is a justiciable question over whether DriverTech is contributorily infringing, or actively inducing the infringement of, the '078 Patent. R+L hereby asserts this reasonable inference as true.

87.    Another reasonable inference to be drawn from the facts set forth in Paragraphs 76-84 of the Amended Counterclaim is that DriverTech became aware of the '078 Patent no later than September 2008, yet continued to market the DT4000 TruckPC in the same manner that it

had done prior to receiving the Cease and Desist Letter.  R+L hereby asserts this reasonable inference as true.

88.     These facts and reasonable inferences establish that DriverTech actively encourages trucking customers to practice the method taught in the '078 Patent.

89.     Thus, DriverTech affirmatively intends to contribute to and actively induce the infringement of the '078 Patent by marketing and selling the DT4000 TruckPC, and encouraging motor carriers to remotely transmit shipping documents from onboard a motor vehicle to a remote processing facility.  There, a loading document is prepared that includes the further transport of goods on another vehicle.  DriverTech does so without leave or license of R+L, and in violation of R+L's rights.

COUNT I—CONTRIBUTORY INFRINGEMENT

**A.     DRIVERTECH SELLS THE DT4000 TRUCKPC AND DT SCAN SO THAT ITS TRUCKING CUSTOMERS CAN PRACTICE THE '078 PATENT**

90.     R+L repeats and realleges the allegations contained in paragraphs 1-89 above as if fully set forth herein.

91.     DriverTech markets the DT4000 TruckPC and DTScan In-Cab Scanning on its website to customers in the trucking and transportation industry.  *See* Exhibits D and F.

92.     DriverTech describes for potential customers how trucking companies can use the DT4000 TruckPC and DTScan In-Cab Scanning to scan critical transportation documents, such as bills-of-lading, inside the truck cab.  *See id.*

93.     DriverTech further instructs potential customers how trucking companies can use the DT4000 TruckPC and DTScan In-Cab Scanning to wirelessly transmit transportation documents, such as bills-of-lading, from inside the cab.  *See id.*

19

94.     DriverTech uses ORBCOMM satellite data communications so that its trucking customers can use the DT4000 TruckPC to transmit bills-of-lading to their back offices.  *See* Exhibit J.

95.     DriverTech partners with McLeod Software and tells its trucking customers that once their back offices receive the bills-of-lading from truck cabs, they can prepare loading manifests using McLeod software.  *See* Exhibit H.

96.     DriverTech's customers, like Interstate Distributor, use the DT4000 TruckPC and DTScan In-Cab Scanning to scan bills-of-lading from inside the truck cab, wirelessly transmit those scanned bills-of-lading to their back offices, and prepare advance loading manifests.

97.     Thus, DriverTech sells, and has sold, the DT4000 TruckPC and DTScan In-Cab Scanning to its trucking company customers for the purpose of those customers practicing the '078 Patent.

**B.      DRIVERTECH'S DT4000 TRUCKPC AND DTSCAN IN-CAB SCANNING ARE MATERIAL PARTS OF THE PROCESS TAUGHT IN THE '078 PATENT**

98.     R+L repeats and realleges the allegations contained in paragraphs 1-97 above as if fully set forth herein.

99.     DriverTech provides its DT4000 TruckPC and DTScan In-Cab Scanning to its trucking customers, along with ORBCOMM satellite data communications, to send and receive transmissions from the DT4000.  *See* Exhibit J.

100.    Without the DT4000 TruckPC and DTScan In-Cab Scanning, DriverTech's trucking customers would not be able to transmit any data from inside the cab.

101.    DriverTech partners with McLeod Software so that its trucking customers can prepare dispatch and loading manifests from data that is transmitted wirelessly from inside the cab while the truck is still en route.

20

102.     Without the DT4000 TruckPC, DriverTech's customers would not have any data sent from the truck cab from which they prepare dispatch and loading manifests.

103.     Without the DT4000 TruckPC and DTScan In-Cab Scanning, DriverTech's customers, like Interstate Distributor, would be unable to scan bills-of-lading from inside the truck cab, wirelessly transmit those scanned bills-of-lading to their back offices, and prepare advance loading manifests.

104.     Thus, the DT4000 TruckPC and DTScan In-Cab Scanning are critical components and material parts of practicing the process taught in the '078 Patent.

**C.     DRIVERTECH'S DT4000 TRUCK PC AND DTSCAN IN-CAB SCANNING ARE SPECIFICALLY ADAPTED FOR USE IN PRACTICING THE '078 PATENT**

105.     R+L repeats and realleges the allegations contained in paragraphs 1-104 above as if fully set forth herein.

106.     DriverTech's press release announcing its partnership with McLeod specifically states that the combination of the two companies' products enable drivers to "scan delivery, settlement and other documents in the cab, and images are sent seamlessly via open Wi-Fi or cellular communications".  *See* Exhibit H.

107.     Furthermore, DriverTech advertises that it offers "advanced mobile computer technology, a wide array of software applications designed for Truckload operations, and customer access to real-time fleet data through online portals and customized integrations with their enterprise systems." *See* http://www.drivertech.com/markets/markets.html, last visited April 2, 2010 (attached hereto as Exhibit Q).

108.     DriverTech's customers, like Interstate Distributor, have customized the DT4000 TruckPC and DTScan In-Cab Scanning to scan bills-of-lading from inside the truck cab,

wirelessly transmit those scanned bills-of-lading to their back offices, and prepare advance loading manifests.

109. Thus, DriverTech knowingly and specifically adapts the DT4000 TruckPC and DTScan In-Cab Scanning for use in practicing the process taught in the '078 Patent.

**D.  DRIVERTECH'S CUSTOMIZED PROCESS USING THE DT4000 TRUCKPC AND DTSCAN IN-CAB SCANNING FOR SCANNING AND WIRELESSLY TRANSMITTING DOCUMENTS HAS NO SUBSTANTIAL NONINFRINGING USE**

110. R+L repeats and realleges the allegations contained in paragraphs 1-109 above as if fully set forth herein.

111. DriverTech combines the DT4000 Truck PC with DTScan In-Cab Scanning to specifically enable trucking companies to scan bills-of-lading from inside the truck cab.

112. DriverTech combines the DT4000 TruckPC with ORBCOMM satellite data communication to specifically enable trucking companies to wirelessly transmit bills-of-lading from inside the truck cab to a remote facility. *See* Exhibit J.

113. DriverTech partners with McLeod Software to provide advanced dispatch software used by trucking customers to prepare advance loading manifests. *See* Exhibit H.

114. The reasonable inference to be drawn from the facts set forth in Paragraphs 110-113 of the Amended Counterclaim is that DriverTech especially designs and customizes a process for trucking customers to use the DT4000 TruckPC and DTScan In-Cab Scanning to scan and wirelessly transmit bills-of-lading from the truck cab to their back office for the preparation of loading manifests. R+L hereby asserts this reasonable inference as true.

115. As customized by DriverTech for their trucking customers, the process for scanning and wirelessly transmitting bills-of-lading from the truck cab to the back office for the preparation of loading manifests has no other substantial non-infringing use.

### E.    DRIVERTECH'S CONTRIBUTORY INFRINGEMENT CAUSES HARM TO R+L

116.    R+L repeats and realleges the allegations contained in Paragraphs 1-115 above as if fully set forth herein.

117.    DriverTech knowingly sells and offers to sell the DT4000 TruckPC and DTScan In-Cab Scanning to customers who use them in conjunction with other applications and processes, knowing the same to be especially made or especially adapted for infringement of the '078 Patent, and not a staple article or commodity of commerce for substantial noninfringing use, and in a manner that infringes on the patented process claimed in the '078 Patent.  DriverTech's conduct amounts to contributory infringement in violation of 35 U.S.C. § 271(c).

118.    Upon information and belief, DriverTech has profited and will continue to profit from contributing to the infringement of the '078 Patent.

119.    DriverTech's actions with regard to contributing to the infringement of the '078 Patent has caused and will continue to cause R+L substantial and irreparable injury, for which R+L is entitled to receive injunctive relief and adequate compensatory damages.

120.    Further, the actions of DriverTech with regard to contributing to the infringement of the '078 Patent are willful such that R+L is entitled to treble damages under 35 U.S.C. § 284.

### COUNT II—ACTIVE INDUCEMENT OF INFRINGEMENT

### A.    DRIVERTECH HAS ACTIVELY TAKEN STEPS TO ENCOURAGE DIRECT INFRINGEMENT OF THE '078 PATENT

*1.    DriverTech's Website*

121.    R+L repeats and realleges the allegations contained in Paragraphs 1-120 above as if fully set forth herein.

122.    DriverTech's website, found at http://www.drivertech.com, provides a comprehensive description of DriverTech's services, products, fleet solutions, partnerships, press

releases, contact information, customer testimonials, customer base, corporate structure, company history, business successes, awards, public recognitions, job openings, and privacy policies.  Upon information and belief, DriverTech regularly updates its website.

123.    DriverTech's website is publicly accessible, and nearly all of DriverTech's webpages can be viewed without providing login or password information.  DriverTech's website is targeted to, and viewed by, potential customers in the trucking and transportation industry.

124.    DriverTech's website includes a product description of the DT4000 TruckPC and DTScan In-Cab Scanning.  The website provides a physical description of the DT4000 Truck PC, the functions the DT4000 TruckPC and DTScan In-Cab Scanning performs, and the manner in which the DT4000 TruckPC and DTScan In-Cab Scanning provides value to users.  *See* Exhibits D and F.

125.    DriverTech's website also contains descriptions of what DT4000 TruckPC and DTScan In-Cab Scanning can accomplish when paired with other devices and software manufactured by its strategic business partners, such as the back office software of McLeod Software.  *See* Exhibit H.

126.    DriverTech uses its website to announce new innovations and deployments of its products, services, and technology to its trucking customers.  For example, on July 9, 2008, DriverTech announced on its website that it provides In-Cab Scanning to Interstate Distributor. *See* Exhibit K.

127.    The reasonable inference to be drawn from the facts set forth in Paragraphs 121-126 of the Amended Counterclaim is that DriverTech actively and intentionally updates its website to promote its products and services to encourage potential customers to use those

products in the manner described by DriverTech.  R+L hereby asserts this reasonable inference as true.

128.    The further reasonable inference to be drawn from the facts set forth in Paragraphs 121-126 of the Amended Counterclaim is that DriverTech actively takes steps to update its website to promote the DT4000 TruckPC and DTScan In-Cab Scanning to encourage customers to practice the process taught in the '078 Patent.  R+L hereby asserts this reasonable inference as true.

        2.    *DriverTech's Press Releases*

129.    R+L repeats and realleges the allegations contained in Paragraphs 1-128 above as if fully set forth herein.

130.    DriverTech announces and advertises its product and service offerings through public press releases issued by its internal employees and displayed on DriverTech's publicly-accessible website.  Those press releases include announcements of strategic partnerships and alliances, industry and client recognition, and its corporate accomplishments and successes.

131.    For example, on July 9, 2008, DriverTech issued a press release that it had rolled out its DT4000 Truck PC and DTScan In-Cab Scanning to Interstate Distributor.  *See* Exhibit K. DriverTech issued similar press releases regarding its partnerships with ACS and McLeod.  *See* Exhibit H and O.

132.    DriverTech also announces and advertises its product and service offerings through trade journals, industry newsletters, and publicly released whitepapers.

133.    A reasonable inference to be drawn from the facts set forth in Paragraphs 129-132 of the Amended Counterclaim is that DriverTech actively and regularly releases statements

to the public, including to existing and potential customers, to entice them to purchase DriverTech's products and services.  R+L hereby asserts this reasonable inference as true.

134.    Another reasonable inference to be drawn from the facts set forth in Paragraphs 129-132 of the Amended Counterclaim is that DriverTech actively took steps to release statements to the public, including to existing and potential customers, about the deployment of the DT4000 TruckPC and DTScan In-Cab Scanning in truck fleets to scan and wirelessly transmit bills-of-lading to the back office for the preparation of a loading manifest, in order to encourage others to practice the process taught in the '078 Patent using DriverTech's DT4000 TruckPC and DTScan In-Cab Scanning.  R+L hereby asserts this reasonable inference as true.

 *3.    DriverTech's Participation in Trade Shows and Conferences*

135.    R+L repeats and realleges the allegations contained in paragraphs 1-134 above as if fully set forth herein.

136.    Susan Fall is DriverTech's press contact who, upon information and belief, is responsible, in part, for marketing and publicizing DriverTech's innovations to potential customers in the transportation and trucking industry.  *See* http://www.drivertech.com/contact/contact.html, last visited March 29, 2010 (attached hereto as Exhibit R).

137.    DriverTech regularly participates in and displays its products and services at national trade shows for demonstration to potential customers in the trucking and transportation industry.  For example, DriverTech  demonstrates its products at the American Trucking Association Management Conferences.  *See* "NavTEQ Showcases Innovative Customers Solutions at ATA 2007" Press Release dated October 18, 2007 (attached hereto as Exhibit S).

138.    The reasonable inference to be drawn from the facts set forth in Paragraphs 135-137 of the Amended Counterclaim is that DriverTech participates in national trade shows and conferences to actively encourage potential customers to purchase its products.  R+L hereby asserts this reasonable inference as true.

4.    *DriverTech's Strategic Partnerships and Alliances*

139.    R+L repeats and realleges the allegations contained in Paragraphs 1-138 above as if fully set forth herein.

140.    DriverTech maintains strategic partnerships with numerous corporations who serve clients in the transportation and trucking industry.  According to DriverTech, it chooses "world-class partners who share the same vision, dedication and commitment to customers."  *See* Exhibit G.

141.    Among DriverTech's partners is McLeod Software, which provides dispatch and accounting transportation management software that interfaces with DriverTech's DT4000 TruckPC and DTScan In-Cab Scanning.  *Id.*

142.    Another of DriverTech's partners is ORBCOMM, which provides satellite data communications to DriverTech's DT4000 Truck PC.  *Id.*

143.    Another of DriverTech's partners is ACS, proprietors of TripPak Services.   As advertised by DriverTech, TripPak offers "a wide variety of flexible, driver friendly, expedited document management services."  *Id.*

144.    Upon information and belief, DriverTech has financial incentives to maintain relationships with its business partners.  DriverTech enters these business partnerships to jointly serve the marketplace.

145.    The reasonable inference to be drawn from the facts set forth in Paragraphs 139-144 of the Amended Counterclaim is that DriverTech has actively taken steps to partner with other businesses to be able to promote and cross-sell its products and services to a larger target audience.  R+L hereby asserts this reasonable inference as true.

146.    Another reasonable inference to be drawn from the facts set forth in Paragraphs 139-144 of the Amended Counterclaim is that DriverTech has actively taken steps to partner with ACS, McLeod and ORBCOMM to encourage its trucking customers to scan and wirelessly transmit bills-of-lading to the back office for the preparation of a loading manifest, and directly infringe the practice the process taught in the '078 Patent.  R+L hereby asserts this reasonable inference as true.

**B.    DRIVERTECH OFFERS TO SELL THE DT4000 TRUCKPC AND DTSCAN IN-CAB SCANNING TO ENABLE ITS CUSTOMERS TO PRACTICE THE '078 PATENT**

147.    R+L repeats and realleges the allegations contained in Paragraphs 1-146 above as if fully set forth herein.

148.    On its website, DriverTech invites those interested in the DT4000 TruckPC and DTScan In-Cab Scanning to contact DriverTech to obtain further information by sending an email to a specific address for general sales inquiries.  *See* Exhibit R.

149.    DriverTech provides the name of a contact person, e-mail address and phone number at the end of every press release.  For example, at the end of the press release announcing its partnership with McLeod to provide In-Cab Scanning using DTScan In-Cab Scanning, DriverTech invites those seeking more information to contact Ms. Susan Fall.  *See* Exhibit H.

150.     The reasonable inference to be drawn from the facts set forth in Paragraphs 147-149 of the Amended Counterclaim is that DriverTech offers for sale, and continues to offer for sale, the DT4000 TruckPC and DTScan In-Cab Scanning to enable potential customers to practice the process taught in the '078 Patent.  R+L hereby asserts this reasonable inference as true.

## C.     DRIVERTECH WAS AWARE OF THE '078 PATENT WHEN IT ACTIVELY INDUCED ITS INFRINGEMENT

151.     R+L repeats and realleges the allegations contained in Paragraphs 1-150 above as if fully set forth herein.

152.     DriverTech received the Cease and Desist Letter on or about September 24, 2008 and filed its Declaratory Judgment Action against R+L on or about November 10, 2008. DriverTech was clearly aware of the '078 Patent as of September 2008, if not sooner.

153.     DriverTech continues to take active steps to market and sell the DT4000 TruckPC and DTScan In-Cab Scanning to potential customers in the trucking and transportation industry after September 2008.

154.     DriverTech continued to advertise on its website, after September 2008, the DT4000 TruckPC and DTScan In-Cab Scanning's effectiveness in practicing the process taught in the '078 Patent.

155.     DriverTech continued to issue press releases after September 2008 to promote and cross-sell the DT4000 TruckPC and DTScan In-Cab Scanning to practice the process taught in the '078 Patent.

156.     DriverTech continued to form strategic partnerships and alliances, after September 2008, to promote and cross-sell the DT4000 TruckPC and DTScan In-Cab Scanning to practice the process taught in the '078 Patent.

29

157.    DriverTech's trucking customers, such as Interstate Distributor, continue to use the DT4000 TruckPC and DTScan In-Cab Scanning in combination with other services and devices to scan and wirelessly transmit bills-of-lading from the truck cab to their back offices where the data is used to prepare advance loading manifests in a manner that directly infringes the process taught in the '078 Patent.

158.    The reasonable inference to be drawn from the facts set forth in Paragraphs 151-157 of the Amended Counterclaim is that DriverTech knowingly and affirmatively intends to actively induce infringement of the '078 Patent.

**D.    DRIVERTECH'S ACTIVE INDUCEMENT OF INFRINGEMENT CAUSES HARM TO R+L**

159.    R+L repeats and realleges the allegations contained in Paragraphs 1-158 above as if fully set forth herein.

160.    Based upon the facts and inferences asserted in this Amended Counterclaim, DriverTech affirmatively sells, offers to sell, encourages, and intends for its customers to use the DT4000 TruckPC and DTScan In-Cab Scanning in conjunction with other applications and processes, and in a manner that infringes on the patented process claimed in the '078 Patent. DriverTech's conduct amounts to active inducement of infringement in violation of 35 U.S.C. § 271(b).

161.    Upon information and belief, DriverTech has profited and will continue to profit from actively inducing the infringement of the '078 Patent.

162.    The actions of DriverTech with regard to actively inducing the infringement of the '078 Patent has caused and will continue to cause R+L substantial and irreparable injury, for which R+L is entitled to receive injunctive relief and adequate compensatory damages.

163.    Further, the actions of DriverTech with regard to actively inducing the infringement of the '078 Patent are willful such that R+L is entitled to treble damages under 35 U.S.C. § 284.

### COUNT III—DECLARATORY JUDGMENT OF JUSTICIABLE CONTROVERSY

164.    R+L repeats and realleges the allegations contained in Paragraphs 1-163 above as if fully set forth herein.

165.    On or around November 10, 2008, DriverTech filed a Declaratory Judgment Action against R+L seeking a declaration that the '078 Patent is invalid and a declaration of noninfringement.  DriverTech filed an Amended Complaint on March 3, 2009.

166.    R+L filed its Answer and Counterclaim on April 20, 2009 alleging contributory infringement and active inducement of infringement.  On or around May 4, 2009, DriverTech filed its Reply to R+L's Counterclaim.

167.    On or around December 30, 2009, DriverTech filed a Rule 12(b)(6) Motion with respect to R+L's Counterclaim.  DriverTech did not seek any relief with respect to its original complaint seeking declaratory relief.

168.    R+L alleges that DriverTech indirectly infringes the '078 Patent today.

169.    DriverTech continues to deny any infringement of the '078 Patent today.

170.    Therefore, there remains a justiciable controversy over whether DriverTech infringes the '078 Patent.

171.    This Court may declare the rights and other legal relations of the parties and issue a declaratory judgment that DriverTech has infringed pursuant to 28 U.S.C. §§ 2201 and 2202 because this is a case of actual controversy within the Court's jurisdiction.

**Demand for Relief**

WHEREFORE, R+L respectfully requests that this Court enter judgment as follows:

A.      Declare that R+L is the owner of the '078 Patent;

B.      Preliminarily and permanently enjoin DriverTech, its employees and agents, and any others acting in concert with DriverTech, from contributing to and/or actively inducing the infringement of the '078 Patent;

C.      Award R+L its damages resulting from DriverTech's contribution to and active inducement of the infringement of the '078 Patent;

D.      Award R+L treble damages pursuant to 35 U.S.C. § 284 as a result of DriverTech's willfulness in contributing to and actively inducing the infringement of the '078 Patent;

E.      Declare that the nature of DriverTech's infringement is "exceptional" pursuant to 35 U.S.C. § 285 and award R+L its costs and attorney fees; and

F.      Grant R+L such other relief as is just and proper.

**Jury Demand**

R+L demands a trial by jury to the extent permitted by applicable law.


        /s/ Anthony C. White
        Anthony C. White            (0062146)

Respectfully submitted,

_/s/ Anthony C. White_

Anthony C. White     (0062146)
O. Judson Scheaf, III     (0040285)
Philip B. Sineneng     (0083406)
THOMPSON HINE LLP
41 South High Street, Suite 1700
Columbus, Ohio  43215-6101
Tel:    (614) 469-3200
Fax:    (614) 469-3361
Tony.White@ThompsonHine.com
Jud.Scheaf@ThompsonHine.com
Philip.Sineneng@ThompsonHine.com

Megan D. Dortenzo     (0079047)
Troy S. Prince     (0077443)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH  44114
Tel:    (216) 566-5500
Fax:    (216) 566-5800
Megan.Dortenzo@ThompsonHine.com
Troy.Prince@ThompsonHine.com

*Attorneys for Defendant/Counterclaim-Plaintiff
R+L Carriers, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 6, 2010, I electronically filed the foregoing *R+L Carriers,*

*Inc.'s First Amended Counterclaim* with the Clerk of Court using the CM/ECF system which

will send notification of such filing to all counsel of record, including the following:

> Scott M. Petersen, Esq.
> Philip D. Dracht, Esq.
> FABIAN & CLENDENIN, P.C.
> 215 South State Street, Suite 1200
> Salt Lake City, UT  84111
> spetersen@fabianlaw.com
> pdracht@fabianlaw.com
>
> *Attorneys for Plaintiff/Counterclaim-Defendant*
> *DriverTech LLC*


                                         /s/ Philip B. Sineneng
                                        Philip B. Sineneng

641754.3