# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| **IN RE:  Bill of Lading Transmission and Processing System Patent Litigation** | MDL Docket No. 1:09-md-2050 |
| | JUDGE BECKWITH |
| This document relates to: | |
| **R+L CARRIERS, INC.** | |
| Plaintiff, | |
| vs. | Case No. 1:09-cv-818 |
| **AFFILIATED COMPUTER SERVICES, INC.** | **Jury Demand Endorsed Herein** |
| Defendant. | |

---

## R+L CARRIERS, INC.'S FIRST AMENDED COMPLAINT
## FOR PATENT INFRINGEMENT AND DECLARATORY JUDGMENT

---

("R+L") states the following for its Amended Complaint against Affiliated Computer Services, Inc. ("ACS"):

### **Nature of the Action**

1.       This is an action for patent infringement in violation of 35 U.S.C. § 271(b) and (c), and for a declaratory judgment as to ACS's patent infringement.

### **Jurisdiction and Venue**

2.       This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3.       This Court has general personal jurisdiction over ACS because of its continuous and systematic contacts with the State of Ohio.  ACS is a registered foreign corporation,

authorized to do business in the State of Ohio.  Upon information and belief, ACS does

significant business in the State of Ohio, including through two subsidiaries and/or operating

units:  (1) Intellinex, LLC, a wholly owned subsidiary and Delaware corporation headquartered

in Cleveland; and (2) Buck Consultants, LLC, a Delaware corporation headquartered in New

York, New York with offices in Cleveland and Cincinnati.

4.	Upon information and belief, this Court has specific personal jurisdiction over

ACS because it has caused and induced others to use, among other things, its TripPak Mobile

Scanning Solutions, TripPak Enterprise Solutions, and associated TripPak products and services,

within the state of Ohio in a manner that infringes on a patent owned by R+L, causing R+L harm

and tortious injury in this judicial district.

5.	Venue is appropriate in this judicial district pursuant to 28 U.S.C. §§ 1391(d) and

1400(b).

### The Parties

6.	R+L is a corporation organized and existing under the laws of the State of Ohio,

and has its principal place of business at 600 Gillam Road, Wilmington, Ohio 45177.

7.	Upon information and belief, ACS is a corporation organized and existing under

the laws of Delaware, with its principal place of business at 2828 N. Haskell Avenue, Dallas,

Texas  75204.

### The Infringed Patent

8.	The United States Patent and Trademark Office duly and legally issued United

States Patent No. 6,401,078 B1 ("the '078 Patent") entitled "Bill of Lading Transmission and

Processing System for Less Than a Load Carriers" on June 4, 2002.  A copy of the '078 Patent is

attached as Exhibit A.

9.      The '078 Patent claims a process directed to the transfer of shipping documentation for a package (freight) to a processing center.  In particular, documentation for a package is scanned and transmitted wirelessly to a remote processing center.  The processing center then prepares a loading manifest that includes the package, prior to the package being removed from the transporting vehicle.

10.     R+L owns all rights, title and interest in the '078 Patent via assignment.

**Actions Giving Rise to this Complaint**

**A.    ACS'S PRODUCTS AND SERVICES**

   *1.    TripPak SERVICES*

11.     ACS is a global provider of business process and information technology services. ACS's information technology products and services offered for sale and sold include its TripPak line of products and services.  ACS claims to provide "Comprehensive Business Process Outsourcing services to the global integrated freight delivery industry, as well as LTL carriers in the North American market place."  *See* "ACS in Transportation" Marketing Brochure, attached hereto as Exhibit B.

12.     ACS offers fully integrated, technological solutions to several industries, including the transportation industry.  ACS dedicates itself to helping "commercial enterprises improve operations to better serve their customers."  *See* http://www.acs-inc.com/pages_exp.aspx?id=536&linkidentifier=id&itemid=536, last visited March 29, 2010 (attached hereto as Exhibit C).  ACS claims to know the industries it serves because "[m]any of [ACS's] managers, staff, and subject matter experts have years of experience working in healthcare, transportation, manufacturing, financial services, consumer goods and retail—

addressing the same challenges and working towards the same goals its commercial clients experience." *Id.*

13.     For clients in the transportation industry, ACS acknowledges that "package delivery businesses… freight haulers… and other entities often work under extreme time and operating cost pressures to fulfill their missions.  ACS understands these pressures, and applies [its] knowledge of the transportation and travel industries to meet each client's needs."  *See* http://www.acs-inc.com/pages_exp.aspx?id=640, last visited March 29, 2010 (attached hereto as Exhibit D).

14.     Specifically, ACS advertises that it "leverages its extensive market knowledge to help [transportation] clients reduce costs and improve efficiencies."  *See* "ACS in Transportation and Logistics" Marketing Brochure, attached hereto as Exhibit E.  Among the transactional services ACS provides its transportation clients are the following:

- Data Capture

- Distributed and Central Image Capture

- Document Digitization

- Document Recognition, Preparation, and Scanning

- Image Storage & Retrieval

- Mailroom (Inbound/Outbound)

- Total Document, Content & Record Management

- Workflow and Application Development

*Id.*

15.     ACS offers TripPak Services to "help carriers increase cash flow and improve processes." *See* http://www.trippak.com, last visited on April 1, 2010 (attached hereto as Exhibit F).

16.     ACS's TripPak Services claims to be "the recognized leader in business process improvement, imaging & data capture/entry, Enterprise Content Management, safety and compliance and outsourced IT solutions in the truckload and less than truckload market segments." *See* http://www.trippak.com/companyinfo.asp, last visited on April 1, 2010 (attached hereto as Exhibit G).

17.     ACS's TripPak provides scanning services through several customized solutions including TripPak SCANNING, Capture ANYWARE, Mobile SCANNING and In-Cab Solution. *See* Exhibit F.

18.     ACS's TripPak SCANNING In-Cab Solution provides "state-of-the-art software and a light-weight and cost-effective scanner for drivers to use in the cab of the truck." *See* http://www.trippak.com/scanning_in-cab_solution.asp, last visited April 1, 2010 (attached hereto as Exhibit H).

19.     ACS's TripPak also provides imaging and workflow services through TripPak ENTERPRISE and FreightForm EXPRESS. *See* http://trippak.com, last visited April 1, 2010 (attached hereto as Exhibit I).

20.     ACS's TripPak ENTERPRISE is a "robust, cost-effective imaging and workflow system easily implemented and utilized for billing, settlements, AP, and other back office documents." *See* http://www.trippak.com/enterprise.asp, last visited April 1, 2010 (attached hereto as Exhibit J).

21.     A reasonable inference to be drawn from the facts set forth in Paragraphs 11-20 of the Amended Complaint is that ACS's trucking customers using TripPak SERVICES.  R+L hereby asserts this reasonable inference as true.

22.     Another reasonable inference to be drawn from the facts set forth in Paragraphs 11-20 of the Amended Complaint is that ACS's trucking customers use TripPak Scanning Services from onboard the truck, specifically "in-cab."  R+L hereby asserts this reasonable inference as true.

23.     Another reasonable inference to be drawn from the facts set forth in Paragraphs 11-20 of the Amended Complaint is that ACS's trucking customers use TripPak Scanning Services to capture bills-of-lading.  R+L hereby asserts this reasonable inference as true.

24.     Another reasonable inference to be drawn from the facts set forth in Paragraphs 11-20 of the Amended Complaint is that ACS's trucking customers use TripPak Scanning Services to wirelessly transmit bills-of-lading information.  R+L hereby asserts this reasonable inference as true.

25.     Another reasonable inference to be drawn from the facts set forth in Paragraphs 11-20 of the Amended Complaint is that ACS's trucking customers transmit bill-of-lading information to the home terminal.  R+L hereby asserts this reasonable inference as true.

26.     Yet another reasonable inference to be drawn from the facts set forth in Paragraphs 11-20 of the Amended Complaint is that ACS's trucking customers can "increase cash flow," "improve processes" and "improve efficiencies" by preparing loading manifests from the scanned and transmitted bills-of-lading using TripPak's imaging and workflow services. R+L hereby asserts this reasonable inference as true.

27.     These facts and reasonable inferences establish that ACS actively encourages trucking customers to practice the method taught in the '078 Patent.

28.     These facts and reasonable inferences also establish that ACS affirmatively intends to contribute to and actively induce the infringement of the '078 Patent by marketing and selling TripPak SERVICES, and encouraging motor carriers to remotely transmit shipping documents from onboard a motor vehicle to a remote processing facility.  There, a loading document is prepared that includes the further transport of goods on another vehicle.  ACS does so without leave or license of R+L, and in violation of R+L's rights.

     *2.*     *TripPak Capture ANYWARE*

29.     ACS offers TripPak's Capture ANYWARE solution, which "provides the ultimate in flexibility by offering more options to accept and process documents, data and other content . . . from remote, distributed sources."  *See* http://www.trippak.com/anywhere.asp, last visited April 1, 2010 (attached hereto as Exhibit K).

30.     The key features of Capture ANYWARE, as advertised by ACS, are the following:

- Remotely capture documents from variety of sources including Email, FAX, FTP or other truck stop scanning networks

- In-Cab Scanning

- Capture any type of documents, including trip documents, driver logs, accounts payable documents and more!

- Use as a standalone solution, or combine with TripPak ONLINE for tailored indexing solutions to meet your specific business needs

- Relish an assortment of possible delivery options

*Id.*

31.     The key benefits of Capture ANYWARE, as advertised by ACS are the following:

- Decreased time to bill loads by nearly three weeks

- Decreased agent settlement cycle time

- Reduced shipping costs from agent office/terminal locations

- Significant cost savings from outsourcing

- Paperless processes cut cycle times and processing costs

- Gives fleets and drivers choices

*Id.*

32.     A reasonable inference to be drawn from the facts set forth in Paragraphs 29-31 of the Amended Complaint is that ACS's trucking clients are using Capture ANYWARE.  R+L hereby asserts this reasonable inference as true.

33.     Another reasonable inference to be drawn from the facts set forth in Paragraphs 29-31 of the Amended Complaint is that ACS's trucking clients are using Capture ANYWARE to scan documents from onboard the truck, specifically "in-cab."  R+L hereby asserts this reasonable inference as true.

    *3.*     *TripPak Mobile SCANNING*

34.     ACS also offers TripPak Mobile SCANNING.  "With TripPak Mobile SCANNING your paperwork can be scanned from virtually anywhere, including [ ] in-cab scanning . . . [and] remote office locations."  *See* http://www.trippak.com/mobile_scanning.asp, last visited April 1, 2010 (attached hereto as Exhibit L).

35.     ACS has partnered with PeopleNet Communications Corporation ("PeopleNet") to bring "fleets an in-cab scanning solution that delivers both driver convenience and a better bottom line for carriers."  *See* http://www.trippak.com/scanning_in-cab_peoplenet.asp, last

visited April 1, 2010 (attached hereto as Exhibit M). "The ACS TripPak scanner connects to PeopleNet's BLU device, making transmitting document easier than ever before." *Id.*

36.     ACS uses the PACOS Geofencing & Automated Message solutions ("PACOS") and BLU technology of PeopleNet. PACOS provides increased "efficiency of stops and improve[d] supply chain communication through PACOS messages, which are generated automatically based on a geo-fence that's created around a location or event." *See* http://www.peoplentonline.com/ProductsServices.aspx?id=58, last visited April 1, 2010 (attached hereto as Exhibit N). PeopleNet BLU is an in-cab display that has a 7" touch-screen with easy-to-use interface that is built specifically for the transportation industry. *See* "BLU is a Whole New Way to Think About Your Driver's Experience" Marketing Sheet, attached hereto as Exhibit O).

37.     ACS uses PeopleNet's technology to transmit transportation documents, such as bills-of-lading, wirelessly from inside the truck cab. On its website, ACS provides the following illustration to demonstrate the flow of information using ACS and PeopleNet's technology:



See Exhibit M.

38.     The key benefits of TripPak Mobile SCANNING, as advertised by ACS are the following:

- Quality images without compromise. Images are comparable or better than truck stop scanning images.

- Reduce billing cycles.

- Improve cash flow.

- Driver indexing/document typing.

- Secure data storage and imaging.

- Show proof of delivery instantly.

- Convenience of scanning in-cab rather than searching for truck stop or drop box.

- Scan anywhere, any time.

- Reduce out-of-route miles.

- Get paid faster.

- Better communication.

*Id.*

39.     Further features of TripPak Mobile SCANNING are the following:

- Seamless back office integration

- Uses in-cab indexed images.

- Eliminates manual sorting or filing of bills of lading, delivery receipts, etc.

- Documentation handling is minimized.

- Improved data integrity.

*Id.*

40.     A reasonable inference to be drawn from the facts set forth in Paragraphs 34-39 of the Amended Complaint is that ACS's trucking clients are using TripPak Mobile SCANNING. R+L hereby asserts this reasonable inference as true.

41.     Another reasonable inference to be drawn from the facts set forth in Paragraphs 34-39 of the Amended Complaint is that ACS's trucking clients are using TripPak Mobile

SCANNING to scan critical transportation documents, such as bills-of-lading, from inside the truck cab.  R+L hereby asserts this reasonable inference as true.

42.     A further reasonable inference to be drawn from the facts set forth in Paragraphs 34-39 of the Amended Complaint is that ACS's trucking clients are using TripPak Mobile SCANNING to wirelessly transmit those documents, like bills-of-lading, to remote locations, including their back office.  R+L hereby asserts this reasonable inference as true.

### 4.     *TripPak In-Cab Solution*

43.     ACS's In-Cab Solution is part of the TripPak SCANNING solution.  "With this technology, [truck] drivers easily install the TripPak SCANNING software on their laptop or net book computer, receive a product key from their carrier for use of the software, and scan their documents with the TripPak SCANNING Model 467 scanner."  *See* Exhibit H.

44.     According to ACS, the In-Cab Solution helps drivers "scan documents in the cab of the truck" with "no more driving around wasting out-of-route miles searching for the right truck stop for scanning."  *Id.*

45.     The In-Cab Solution helps the back office "produce quality images comparable or better than truck stop scanning" and "provides [an] additional document submission method for Capture ANYWARE."  *Id.*

46.     The In-Cab Solution also provides secure data storage and imaging, and provides a "better utilization of resources, which improves customer service."  *Id.*

47.     A reasonable inference to be drawn from the facts set forth in Paragraphs 43-46 of the Amended Complaint is that ACS's trucking customers use TripPak's In-Cab Solution.  R+L hereby asserts this reasonable inference as true.

48.     Another reasonable inference to be drawn from the facts set forth in Paragraphs 43-46 of the Amended Complaint is that ACS's trucking customers use TripPak In-Cab Solution from onboard the truck, specifically "in-cab."  R+L hereby asserts this reasonable inference as true.

49.     Another reasonable inference to be drawn from the facts set forth in Paragraphs 43-46 of the Amended Complaint is that ACS's trucking customers use TripPak In-Cab Solutions to capture bills-of-lading.  R+L hereby asserts this reasonable inference as true.

50.     Another reasonable inference to be drawn from the facts set forth in Paragraphs 43-46 of the Amended Complaint is that ACS's trucking customers use TripPak In-Cab Solution to wirelessly transmit bill-of-lading information.  R+L hereby asserts this reasonable inference as true.

51.     Another reasonable inference that is drawn from the facts set forth in Paragraphs 43-46 of the Amended Complaint is that ACS's trucking customers transmit bill-of-lading information to the home terminal.  R+L hereby asserts this reasonable inference as true.

52.     Yet another reasonable inference that is drawn from the facts set forth in Paragraphs 43-46 of the Amended Complaint is that ACS's trucking customers can "provide better utilization of resources" and "improve[ ] customer service" by preparing loading manifests from the scanned and transmitted bills-of-lading using TripPak's imaging and workflow services. R+L hereby asserts this reasonable inference as true.

*5.     TripPak ENTERPRISE*

53.     ACS offers TripPak ENTERPRISE to its trucking customers.  TripPak ENTERPRISE is a "robust, cost-effective imaging and workflow system."  *See* Exhibit J.

54.     TripPak ENTERPRISE allows ACS's trucking customers to search, scan and process workflow from remote locations.  It integrates with "all major dispatch system vendors" and integrates with all "ACS TripPak SERVICES document capture & processing options."  *Id.*

55.     The key features of TripPak ENTERPRISE, as advertised by ACS to its trucking customers, are the following:

- Innovative imaging and workflow tools enable you to view, route and control all varieties of documents and information.

- Ease of use—Simple, straightforward systems configuration/administration setup in minutes

- Integration to other major dispatch system providers

- Internet-based so that all users, regardless of location, may be linked together and collaborate

- No-hassle integration to TripPak ONLINE for indexing services, data validation and image enhancement.

*Id.*

56.     Among the key benefits of TripPak ENTERPRISE, as advertised by ACS to its trucking customers, are "improve[d] service to your customers and drivers with documents right at your fingertips" and the ability to "supply orders, customer, driver and invoice data directly from dispatch and accounting systems."  *Id.*

57.     A reasonable inference to be drawn from the facts set forth in Paragraphs 53-56 of the Amended Complaint is that ACS's trucking customers use TripPak ENTERPRISE.  R+L hereby asserts this reasonable inference as true.

58.     A further reasonable inference to be drawn from the facts set forth in Paragraphs 53-56 is that ACS's trucking customers integrate TripPak ENTERPRISE with "document capture & processing options" and use TripPak ENTERPRISE to receive scanned images, such

13

as bills-of-lading, sent wirelessly from inside a truck cab.  R+L hereby asserts this reasonable inference as true.

59.     Yet another reasonable inference to be drawn from the facts set forth in Paragraphs 53-56 of the Amended Complaint is that ACS's trucking customers integrate TripPak ENTERPRISE with "dispatch system vendors" in order to prepare advance loading manifests from the data transmitted wirelessly from inside a truck cab.  R+L hereby asserts this reasonable inference as true.

60.     The facts and reasonable inferences set forth in Paragraphs 29-59 of the Amended Complaint establish that ACS actively encourages trucking customers to practice the method taught in the '078 Patent.

61.     These facts and reasonable inferences also establish that ACS affirmatively intends to contribute to and actively induce the infringement of the '078 Patent by marketing and selling TripPak SERVICES, and encouraging motor carriers to remotely transmit shipping documents from onboard a motor vehicle to a remote processing facility.  There, a loading document is prepared that includes the further transport of goods on another vehicle.  ACS does so without leave or license of R+L, and in violation of R+L's rights.

**B.     ACS'S CUSTOMERS DIRECT INFRINGE THE '078 PATENT**

62.     ACS's implementation partner PeopleNet Communications Corp. ("PeopleNet") is publicizing the sale of PeopleNet in-cab computers with ACS TripPak in-cab scanning systems to Frozen Food Express Industries, Inc. ("Frozen Food Express"), a frozen and refrigerated goods carrier with LTL operations. *See* "Frozen Food Express Selects PeopleNet for Mobile Service," *Transport Topics Online*, dated April 5, 2010 (attached hereto as Exhibit CC).

14

According to the statements, "Frozen Food Express ordered PeopleNet BLU in-cab computers and in-cab scanning systems from Xerox Corp's ACS TripPak unit."  *Id.*

63.     Frozen Food Express's purpose for implementing the PeopleNet BLU and ACS TripPak in-cab scanning technology is to "assist in the *important pre-planning and routing of LTL shipments* – helping us to make our LTL operation more productive and more responsive to our customer needs." *See* Frozen Food Express Industries, Inc. 2008 Annual Report to Shareholders, pg. III, available at http://financials.ffex.net/downloads.cfm, last visited on April 6, 2010 (emphasis added) (attached hereto as Exhibit DD).  According to Frozen Food Express's annual report, the use of the PeopleNet BLU in-cab computers with ACS TripPak in-cab scanning "will revolutionize our less-than-truckload (LTL) operation, enabling us to track not just our trucks, but also the shipments that they are carrying." *Id.*

64.     A reasonable inference to be drawn from the facts set forth in Paragraphs 62-63 of the Amended Complaint is that ACS has sold to Frozen Food Express its TripPak in-cab scanning systems for use in its trucking operations, and particularly its LTL trucking operations. R+L hereby asserts this reasonable inference as true.

65.     Another reasonable inference to be drawn from the facts set forth in Paragraphs 62-63 of the Amended Complaint is that Frozen Foods Express bought ACS TripPak scanning systems for the purpose of scanning documents containing shipping details of the cargo being transported, because ACS markets and sells in-cab scanning capability to its customers for the purpose of scanning documents that contain shipping details of the cargo being transported.  R+L hereby asserts this reasonable inference as true.

66.     Yet another reasonable inference to be drawn from the facts set forth in Paragraphs 62-63 of the Amended Complaint is that Frozen Food Express uses the in-cab

scanning and wireless document transfer capabilities for shipping documentation data provided by PeopleNet for the purpose of pre-planning and routing LTL shipments, i.e. creating advance loading manifests for the transport of cargo on another transporting vehicle.  R+L hereby asserts this reasonable inference as true.

67.      A final inference to be drawn from the facts set forth in Paragraphs 62-63 of the Amended Complaint is that Frozen Food Express is a direct infringer that uses the ACS Trip-Pak in-cab scanning system to infringe the '078 Patent.  R+L hereby asserts this reasonable inference as true.

## C.      ACS'S STRATEGIC PARTNERSHIPS AND ALLIANCES

### 1.      *PeopleNet Communications Corp.*

68.      ACS has partnered with PeopleNet to offer products to customers in the transportation and trucking industry.

69.      PeopleNet is a mobile communications and onboard computing provider for its clients in the transportation industry.

70.      PeopleNet sells to its customers "handheld/portable solutions for wireless proof-of-delivery and inventory management."  *See* http://www.peoplenetonline.com/-ProductsServices.aspx?id=56, last visited on April 1, 2010 (attached hereto as Exhibit P)

71.      Specifically, PeopleNet markets and sells the g3 Onboard Computing System ("g3").  The g3 provides PeopleNet's customers with "[m]obile communications, onboard computing and fleet management in one powerful platform."  *See* http://www.peoplenetonline.com/ProductsServices.aspx?id=67 last visited April 1, 2010 (attached hereto as Exhibit Q).

72.     The g3 further provides PeopleNet's customers with a "[m]ulti-network with nearly 100 wireless carriers utilized across digital and analog channels to provide the highest level of coverage, bandwidth and cost effectiveness." *Id.*

73.     On or about June 10, 2009, PeopleNet and ACS announced that they have partnered together to provide "new mobile in-cab scanning solutions." *See* "ACS and PeopleNet Partner to Provide new Mobile-In-Cab Scanning Solutions," *Corporate IT Update*, June 10, 2009 (attached hereto as Exhibit R).

74.     Bridget Wahlstrom, product manager for PeopleNet, stated that "[t]his partnership is a natural with ACS' business process improvement solutions, which complement PeopleNet's profit-driving operational applications and industry-leading mobile communications." *See* "ACS Expedited Solutions and PeopleNet Partner to Provide In-Cab Scanning Solutions" found on http://www.truck.net, last visited on December 30, 2009 (attached hereto as Exhibit S).

75.     Ms. Wahlstrom further stated that "[t]he combination of [PeopleNet and ACS] offers fleets an additional way to reduce operating costs and improve fleet productivity through in-cab scanning solutions." *Id.*

76.     PeopleNet and ACS partnered to provide "truckload market scanning and document delivery services that deliver trip documents within minutes through TripPak SCANNING, Capture ANYWARE and TripPak EXPRESS." *Id.*

77.     Through Capture ANYWARE, truck drivers can send "mission critical documents" through in-cab scanning. *Id.*

78.     A reasonable inference to be drawn from the facts set forth in Paragraphs 68-77 of the Amended Complaint is that ACS's trucking customers use its products for in-cab scanning. R+L hereby asserts this reasonable inference as true.

79.     Another reasonable inference to be drawn from the facts set forth in Paragraphs 68-77 of the Amended Complaint is that ACS's trucking customers sent and send trip documents and "mission critical documents," such as bills-of-lading, to remote processing centers.  R+L hereby asserts this reasonable inference as true.

80.     Another reasonable inference to be drawn from the facts set forth in Paragraphs 68-77 of the Amended Complaint is that ACS's trucking customers "reduce operating costs" and "improve fleet productivity" by preparing loading manifests from the scanned and transmitted bills-of-lading.  R+L hereby asserts this reasonable inference as true.

81.     To the extent that a mastermind is required to be identified, the reasonable inference to be drawn from the allegations contained in this Amended Complaint is that PeopleNet is the mastermind of the collaboration between PeopleNet and ACS, and that, despite this, ACS has actively collaborated with PeopleNet to infringe the '078 Patent.  R+L hereby asserts this reasonable inference as true.

82.     These facts and reasonable inferences establish that ACS actively encourages trucking customers to practice the method taught in the '078 Patent.

83.     Thus, ACS affirmatively intends to contribute to and actively induce the infringement of the '078 Patent by marketing and selling TripPak SERVICES, and encouraging motor carriers to remotely transmit shipping documents from onboard a motor vehicle to a remote processing facility.  There, a loading document is prepared that includes the further transport of goods on another vehicle.  ACS does so without leave or license of R+L, and in violation of R+L's rights.

2.    *DriverTech LLC*

84.    ACS has partnered with DriverTech LLC ("DriverTech") to provide mobile in-cab scanning to customers in the trucking and transportation industry.

85.    DriverTech is a supplier of mobile computer solutions to the commercial trucking industry.

86.    According to its website, DriverTech provides "next generation mobile communications" by offering "on-board intelligence with a comprehensive fleet management system supporting a range of services and state-of-the-art applications for the transportation industry.  The DriverTech system provides access to key information that improves driver quality of life and trucking efficiency metrics."  *See* www.drivertech.com, last visited on April 1, 2010 (attached hereto as Exhibit T).

87.    Specifically, DriverTech offers its DT4000 TruckPC to its clients in the transportation industry.  DriverTech represents to potential customers that with the DT4000 TruckPC, they "will increase [their] customer satisfaction, improve [their] team's performance, and dramatically boost [their] business profitability through efficient asset and fleet utilization."  *See* www.drivertech.com/commercial/index.html, last visited on April 1, 2010 (attached hereto as Exhibit U).

88.    On or about October 22, 2007, DriverTech announced the launch of InCab Scanning through an agreement with ACS TripPak SERVICES.  Specifically, DriverTech announced that it "now offers InCab Scanning, part of ACS' Capture ANYWARE program."  *See* "DriverTech Provides In-Cab Scanning Solution Using ACS TripPak SERVICES" Press Release, dated October 22, 2007, attached hereto as Exhibit V.

89.    Kelley Walkup, vice president and general manager of ACS Expedited Solutions, stated that "InCab Scanning provides drivers yet another option to advance their paperwork so that it can be processed quickly and efficiently."  She continued to say "[t]his flexible innovation remotely captures important documents and processes them as directed, boosting convenience, accessibility and affordability for all users."  *Id.*

90.    Mark Haslam, CEO and President of DriverTech, remarked that "the ability to scan documents in the cab of the truck provides carriers with a significant operational efficiency that speeds up receivable collection and driver settlement."  *Id.*

91.    Mr. Haslam further added that "through advantages like 'incab' scanning, carriers are beginning to experience the operational improvements available with a powerful computing platform in the cab of the truck and lower communication costs.  Because documents are scanned 'in cab,' using proven DriverTech technology, they are easily integrated with other TripPak SERVICES."  *Id.*

92.    A reasonable inference to be drawn from the facts set forth in Paragraphs 84-91 of the Amended Complaint is that ACS's trucking customers use its products for in-cab scanning. R+L hereby asserts this reasonable inference as true.

93.    Another reasonable inference to be drawn from the facts set forth in Paragraphs 84-91 of the Amended Complaint is that ACS's trucking customers send trip documents and "important documents," such as bills-of-lading, to remote processing centers.  R+L hereby asserts this reasonable inference as true.

94.    Another reasonable inference to be drawn from the facts set forth in Paragraphs 84-91 of the Amended Complaint is that ACS's trucking customers boost "convenience,

accessibility, and affordability" by preparing loading manifests from the scanned and transmitted bills-of-lading.  R+L hereby asserts this reasonable inference as true.

95.     To the extent that a mastermind is required to be identified, the reasonable inference to be drawn from the allegations contained in this Amended Complaint is that DriverTech is the mastermind of the collaboration between DriverTech and ACS, and that, despite this, ACS has actively collaborated with DriverTech to infringe the '078 Patent.  R+L hereby asserts this reasonable inference as true.

96.     These facts and reasonable inferences establish that ACS actively encourages trucking customers to practice the method taught in the '078 Patent.

97.     Thus, ACS affirmatively intends to contribute to and actively induce the infringement of the '078 Patent by marketing and selling TripPak SERVICES, and encouraging motor carriers to remotely transmit shipping documents from onboard a motor vehicle to a remote processing facility.  There, a loading document is prepared that includes the further transport of goods on another vehicle.  ACS does so without leave or license of R+L, and in violation of R+L's rights.

## COUNT I—CONTRIBUTORY INFRINGEMENT

**A.    ACS SELLS TRIPPAK SERVICES SO THAT ITS TRUCKING CUSTOMERS CAN PRACTICE THE '078 PATENT**

98.     R+L repeats and realleges the allegations contained in paragraphs 1-97 above as if fully set forth herein.

99.     ACS markets TripPak SERVICES on its website to customers in the trucking and transportation industry.  *See* Exhibit F.

100.     ACS describes for potential customers how trucking companies can use TripPak SERVICES to scan critical transportation documents, such as bills-of-lading, inside the truck cab.  *See* Exhibit H.

101.     ACS further instructs potential customers how trucking companies can use TripPak SERVICES to wirelessly transmit transportation documents, such as bills-of-lading, from inside the cab.  *See* Exhibit M.

102.      ACS's trucking customers use TripPak SERVICES to scan bills-of-lading from inside the truck cab, wirelessly transmit those scanned bills-of-lading to their back offices, and prepare advance loading manifests.

103.     Thus, ACS sells, and has sold, TripPak SERVICES to its trucking company customers for the purpose of those customers practicing the '078 Patent.

**B.     ACS'S TRIPPAK SERVICES ARE A MATERIAL PART OF THE PROCESS TAUGHT IN THE '078 PATENT**

104.     R+L repeats and realleges the allegations contained in paragraphs 1-103 above as if fully set forth herein.

105.     ACS provides TripPak SERVICES to its trucking customers to send and receive transmissions from the TripPak Mobile SCANNING In-Cab scanner.  *See* Exhibit M.

106.     Without TripPak SERVICES, ACS's trucking customers would not be able to transmit any data from inside the cab.

107.     ACS provides software through TripPak ENTERPRISE so that its trucking customers can prepare dispatch and loading manifests from data that is transmitted wirelessly from inside the cab while the truck is still en route.

108.     Without TripPak ENTERPRISE, ACS's customers would not have any data sent from the truck cab from which they prepare dispatch and loading manifests.

109.    Without TripPak SERVICES, ACS's trucking customers would be unable to scan bills-of-lading from inside the truck cab, wirelessly transmit those scanned bills-of-lading to their back offices, and prepare advance loading manifests.

110.    Thus, TripPak SERVICES is a critical component and material part of practicing the process taught in the '078 Patent.

## C.    ACS'S TRIPPAK SERVICES ARE SPECIFICALLY ADAPTED FOR USE IN PRACTICING THE '078 PATENT

111.    R+L repeats and realleges the allegations contained in paragraphs 1-110 above as if fully set forth herein.

112.    ACS's trucking customers have customized TripPak SERVICES to scan bills-of-lading from inside the truck cab, wirelessly transmit those scanned bills-of-lading to their back offices, and prepare advance loading manifests.

113.    Indeed, ACS publicizes that its "menu of services and solutions deliver increased cash flow, lower costs, and improve efficiency to over 1,000 leading companies today." *See* Exhibit G.

114.    ACS further advertises that Capture ANYWARE allows trucking customers to capture information "on your terms." *See* Exhibit K.

115.    ACS further touts on its website that it has developed specific knowledge about each industry it serves to help clients "solve their specialized business needs." *See* http://www.acs-inc.com/pages_exp.aspx?id=564&linkidentifier=id&itemid=564, last visited April 1, 2010 (attached hereto as Exhibit W).

116.    Thus, ACS knowingly and specifically adapts TripPak SERVICES for use in practicing the process taught in the '078 Patent.

**D.    ACS'S CUSTOMIZED PROCESS USING TRIPPAK SERVICES FOR SCANNING, WIRELESSLY TRANSMITTING DOCUMENTS AND PREPARING LOADING MANIFESTS HAS NO SUBSTANTIAL NONINFRINGING USE**

117.    R+L repeats and realleges the allegations contained in paragraphs 1-116 above as if fully set forth herein.

118.    ACS's TripPak SERVICES specifically enable trucking companies to scan bills-of-lading from inside the truck cab.  *See* Exhibit H.

119.    ACS's TripPak SERVICES combine with the wireless networks of PeopleNet and the hardware devices of DriverTech to specifically enable trucking companies to wirelessly transmit bills-of-lading from inside the truck cab to a remote facility.  *See* Exhibit M.

120.    ACS's TripPak ENTERPRISE integrates with dispatch software used by trucking customers to prepare advance loading manifests.  *See* Exhibit J.

121.    The reasonable inference to be drawn from the facts set forth in Paragraphs 117-120 of the Amended Complaint is that ACS especially designs and customizes a process for trucking customers to use TripPak SERVICES to scan and wirelessly transmit bills-of-lading from the truck cab to their back office for the preparation of loading manifests.  R+L hereby asserts this reasonable inference as true.

122.    As customized by ACS for their trucking customers, the process for scanning and wirelessly transmitting bills-of-lading from the truck cab to the back office for the preparation of loading manifests has no other substantial non-infringing use.

**E.    ACS'S CONTRIBUTORY INFRINGEMENT CAUSES HARM TO R+L**

123.    R+L repeats and realleges the allegations contained in paragraphs 1-122 above as if fully set forth herein.

24

124.    ACS knowingly sells and offers to sell TripPak SERVICES to customers who use them in conjunction with other applications and processes, and in a manner that infringes on the patented process claimed in the '078 Patent.  ACS's conduct amounts to contributory infringement in violation of 35 U.S.C. § 271(c).

125.    Upon information and belief, ACS has profited and will continue to profit from contributing to the infringement of the '078 Patent.

126.    ACS's actions with regard to contributing to the infringement of the '078 Patent has caused and will continue to cause R+L substantial and irreparable injury, for which R+L is entitled to receive injunctive relief and adequate compensatory damages.

127.    Further, the actions of ACS with regard to contributing to the infringement of the '078 Patent are willful such that R+L is entitled to treble damages under 35 U.S.C. § 284.

### COUNT II—ACTIVE INDUCEMENT OF INFRINGEMENT

**A.    ACS HAS ACTIVELY TAKEN STEPS TO ENCOURAGE DIRECT INFRINGEMENT OF THE '078 PATENT**

   *1.    ACS's Website*

128.    R+L repeats and realleges the allegations contained in paragraphs 1-127 above as if fully set forth herein.

129.    ACS's website, found at http://www.acs-inc.com, and the TripPak website, found at http://www.trippak.com, provide a comprehensive description of ACS's services, products, fleet solutions, partnerships, press releases, contact information, customer testimonials, customer base, corporate structure, company history, business successes, awards, public recognitions, calendar of events, job openings, and privacy policies.  Upon information and belief, ACS regularly updates its website.

130. ACS's and TripPak's websites are publicly accessible, and nearly all of ACS's and TripPak's webpages can be viewed without providing login or password information. TripPak's website is targeted to, and viewed by, potential customers in the trucking and transportation industry.

131. TripPak's website includes a product description of TripPak SERVICES. The website provides the various functions of TripPak SERVICES and the manner in which TripPak SERVICES provide value to users. ACS uses its website to announce new innovations and partnerships of relevance to its trucking customers. For example, on its website, ACS announced that it developed a new cost-saving in-cab scanning solution in coordination with PeopleNet. *See* http://www.trippak.com/news.asp?ItemID=105&rcid=64&pcid=63&cid=64, last visited on April 1, 2010 (attached hereto as Exhibit X).

132. ACS invited those interested in its "cost-saving in-cab scanning solution" to see a demonstration at the 2010 Truckload Carriers Association Annual Convention in Las Vegas, Nevada from February 28-March 3, 2010. *Id.*

133. The reasonable inference to be drawn from the facts set forth in Paragraphs 128-132 of the Amended Complaint is that ACS actively and intentionally updates its website to promote its products and services to encourage potential customers to use those products in the manner described by ACS. R+L hereby asserts this reasonable inference as true.

134. The further reasonable inference to be drawn from the facts set forth in Paragraphs 128-132 of the Amended Complaint is that ACS actively takes steps to update its website to promote TripPak SERVICES and its use with other devices and software to encourage customers to practice the process taught in the '078 Patent. R+L hereby asserts this reasonable inference as true.

2. *ACS's Press Releases*

135.  R+L repeats and realleges the allegations contained in paragraphs 1-134 above as if fully set forth herein.

136.  ACS announces and advertises its product and service offerings through public press releases issued by its internal employees and displayed on ACS's publicly-accessible website.  Those press releases include announcements of strategic partnerships and alliances, industry and client recognition, and its corporate accomplishments and successes.

137.  For example, ACS announced that it partnered with PeopleNet to create a cost-saving in-cab solution that would be on display at the 2010 Truckload Carriers Association Annual Convention in Las Vegas from February 28-March 3, 2010.  *See* Exhibit X.

138.  ACS also announces and advertises its product and service offerings through trade journals, industry newsletters, and other websites visited by its trucking customers.

139.  For example, on or about February 24, 2010, ACS posted an advertisement on JiggyJobs.com which promoted TripPak In-Cab SCANNING.  *See* Jiggy Jobs.com Classified Ads, dated February 24, 2010 (attached hereto as Exhibit Y).  Specifically, the advertisement on JiggyJobs.com stated:

> Drivers—you can now scan inside your truck—and its easy!  Your paperwork gets to your fleet quickly and with quality images, and YOU GET PAID FASTER!
>
> TripPak IN-CAB provides drivers with convenience and faster pay with the ease of the state-of-the-art technology.

*Id.*

140.  Upon information and belief, ACS also maintains a Facebook account which is accessed by potential customers in the trucking and transportation industry.

141.   A reasonable inference to be drawn from the facts set forth in Paragraphs 135-140 of the Amended Complaint is that ACS actively and regularly releases statements to the public, including to existing and potential customers, to entice them to purchase ACS's products and services.  R+L hereby asserts this reasonable inference as true.

142.   Another reasonable inference to be drawn from the facts set forth in Paragraphs 135-140 of the Amended Complaint is that ACS actively took steps to release statements to the public, including to existing and potential customers, about the use of TripPak SERVICES fleets to scan and wirelessly transmit bills-of-lading to the back office for the preparation of a loading manifest, in order to encourage others to practice the process taught in the '078 Patent.  R+L hereby asserts this reasonable inference as true.

*3.*     *ACS's Participation in Trade Shows and Conferences*

143.   R+L repeats and realleges the allegations contained in paragraphs 1-142 above as if fully set forth herein.

144.   ACS regularly participates in and displays its products and services at national trade shows for demonstration to potential customers in the trucking and transportation industry. For example, ACS's engagements scheduled for 2010 have included:

- 2010 Truckload Carriers Association Annual Convention in Las Vegas, Nevada from February 28-March 3, 2010, and

- Mid-America Truck Show from March 25-27, 2010

*See* Exhibit X; *see* also Twitter Posts of ACS, attached hereto as Exhibit Z.

145.   ACS encourages customers and potential customers to meet with company representatives during any of its scheduled appearances at trade shows and conventions.  *Id.*

146.    The reasonable inference to be drawn from the facts set forth in Paragraphs 143-145 of the Amended Complaint is that ACS participates in national trade shows and conferences

to actively encourage potential customers to purchase its products. R+L hereby asserts this reasonable inference as true.

147. Another reasonable inference to be drawn from the facts set forth in Paragraphs 143-145 of the Amended Complaint is that ACS actively takes steps to display the TripPak SERVICES at national trade shows and conferences and demonstrate how it can be used to scan and wirelessly transmit bills-of-lading to the back office for the preparation of a loading manifest, in order to encourage others to practice the process taught in the '078 Patent. R+L hereby asserts this reasonable inference as true.

     *4.*     *ACS's Twitter Posts*

148. R+L repeats and realleges the allegations contained in paragraphs 1-147 above as if fully set forth herein.

149. ACS maintains a Twitter account and posts updates that are targeted to existing and potential trucking customers.

150. For example, on January 18, 2010, ACS posted a Twitter message that stated: "Drivers and Carriers—looking for ways to reduce out of route miles? Check out our in-cab solutions at www.trippak.com today!" *See* Exhibit Z.

151. On January 19, 2010, ACS posted another Twitter message that stated: "Drivers don't have to wait in lines at the truckstop. Check out the in-cab scanning options from ACS. www.trippak.com" *Id.*

152. Again on February 15, 2010, ACS posted a Twitter message remarking: "Drivers—mark your calendars for [Mid-America Truck Conference] March 25-27—come see the new laptop model in-cab scanner from TripPak In-Cab! Booth #69045." *Id.*

153. Still another Twitter message was posted on February 26, 2010, stating: "If you're headed to Vegas for TCA Annual Convention—stop by and see us at booth #328!" *Id.*

154. On March 1, 2010, ACS posted a Twitter message that stated: "ACS TripPak MOBILE and TripPak In-Cab are the talk of the show at the annual TCA convention in Vegas." *Id.*

155. The reasonable inference to be drawn from the facts set forth in Paragraphs 148-154 of the Amended Complaint is that ACS maintains a Twitter account to actively encourage potential customers to purchase its products. R+L hereby asserts this reasonable inference as true.

156. Another reasonable inference to be drawn from the facts set forth in Paragraphs 148-154 of the Amended Complaint is that ACS actively takes steps to promote TripPak SERVICES through Twitter and seeks opportunities to show potential customers how it can be used to scan and wirelessly transmit bills-of-lading to the back office for the preparation of a loading manifest, in order to encourage others to practice the process taught in the '078 Patent. R+L hereby asserts this reasonable inference as true.

5. *ACS's Strategic Partnerships and Alliances*

157. R+L repeats and realleges the allegations contained in paragraphs 1-156 above as if fully set forth herein.

158. ACS maintains strategic partnerships with numerous corporations who serve clients in the transportation and trucking industry.

159. One of ACS's partners is McLeod Software, which provides dispatch and accounting transportation management software that interfaces with mobile communications

systems. *See* http://www.trippak.com/partners.asp, last visited April 1, 2010 (attached hereto as Exhibit AA).

160. Another of ACS's partners is TMW Systems, a leading supplier of solutions covering the transportation services sector. *Id.*

161. Yet another of ACS's business partners is PeopleNet. PeopleNet pairs with ACS to provide customers with cost-effective in-cab scanning. *Id.*

162. Still another of ACS's business partners is DriverTech. According to DriverTech, ACS pairs with DriverTech's technology to provide "a wide variety of flexible, driver friendly, expedited document management services." *See*

http://www.drivertech.com/partners/partners.html, last visited April 1, 2010 (attached hereto as Exhibit BB).

163. The reasonable inference to be drawn from the facts set forth in Paragraphs 157-162 of the Amended Complaint is that ACS has actively taken steps to partner with other businesses to promote and cross-sell its products and services to a larger target audience. R+L hereby asserts this reasonable inference as true.

164. Another reasonable inference to be drawn from the facts set forth in Paragraphs 157-162 of the Amended Complaint is that ACS has actively taken steps to partner with McLeod Software, TMW Systems, PeopleNet and DriverTech to encourage its trucking customers to scan and wirelessly transmit bills-of-lading to the back office for the preparation of a loading manifest, and directly infringe the process taught in the '078 Patent. R+L hereby asserts this reasonable inference as true.

**B.      ACS OFFERS TO SELL TRIPPAK SERVICES TO ENABLE ITS CUSTOMERS TO PRACTICE THE '078 PATENT**

165.    R+L repeats and realleges the allegations contained in paragraphs 1-164 above as if fully set forth herein.

166.    On its website, ACS invites those interested to purchase TripPak SERVICES.  *See* Exhibit F.

167.    ACS also invites those interested in TripPak SERVICES to contact ACS by phone or email.  *See* Exhibit C.

168.    ACS also invites interested individuals to visit ACS's booth at any of its scheduled appearances at trade shows and conferences for demonstrations of TripPak SERVICES.  *See* Exhibit Z.

169.    ACS provides an e-mail address and phone number at the end of every press release for interested individuals to use to obtain further information.  *See* Exhibit X.  For example, at the end of the press release announcing ACS's partnership with PeopleNet, interested customers are encouraged to call or e-mail Chris Gilligan, Manager of Corporate Communications, or Priscilla Peters, Marketing Director, for more information.  *Id.*

170.    The reasonable inference to be drawn from the facts set forth in Paragraphs 166-169 of the Amended Complaint is that ACS has offered for sale, and continues to offer for sale, TripPak SERVICES to enable potential customers to practice the process taught in the '078 Patent.  R+L hereby asserts this reasonable inference as true.

**C.      ACS WAS AWARE OF THE '078 PATENT WHEN IT ACTIVELY INDUCED INFRINGEMENT**

171.    R+L repeats and realleges the allegations contained in Paragraphs 1-170 above as if fully set forth herein.

32

172.     R+L first filed its original complaint against ACS on or around November 5, 2009 and served the complaint by certified mail shortly thereafter.

173.     Thus, the reasonable inference to be drawn from the facts set forth in Paragraphs 171-172 of the Amended Complaint is that ACS was aware of the '078 Patent as of November 2009, if not sooner.

174.     Nevertheless, ACS continues to take active steps to market and sell TripPak SERVICES to potential customers in the trucking and transportation industry.

175.     ACS continued to advertise on its website, after November 2009, the effectiveness of TripPak SERVICES in practicing the process taught in the '078 Patent.

176.     ACS continued to issue press releases, after November 2009, to encourage potential trucking customers to purchase TripPak SERVICES to practice the process taught in the '078 Patent.

177.     ACS continued to participate in trade shows and conferences, after November 2009, to encourage potential trucking customers to view and purchase TripPak SERVICES to practice the process taught in the '078 Patent.

178.     ACS continued to post Twitter messages, after November 2009, promoting TripPak SERVICES to potential customers in the trucking and transportation industry.

179.     ACS maintained strategic partnerships and alliances, after November 2009, to promote and cross-sell TripPak SERVICES to practice the process taught in the '078 Patent.

180.     Based upon the facts and reasonable inferences asserted herein, ACS's trucking customers continue to use TripPak SERVICES to scan and wirelessly transmit bills-of-lading from the truck cab to their back offices where the data is used to prepare advance loading manifests in a manner that directly infringes the process taught in the '078 Patent.

181.    The reasonable inference to be drawn from the facts set forth in Paragraphs 171-180 of the Amended Complaint is that ACS knowingly and actively induces infringement of the '078 Patent.

**D.    ACS'S ACTIVE INDUCEMENT OF INFRINGEMENT CAUSES HARM TO R+L**

182.    R+L repeats and realleges the allegations contained in paragraphs 1-181 above as if fully set forth herein.

183.    Based upon the facts and reasonable inferences asserted herein, ACS knowingly sells, offers to sell, encourages, and intends for its customers to use TripPak SERVICES in conjunction with other applications and processes, and in a manner that infringes on the patented process claimed in the '078 Patent.  ACS's conduct amounts to active inducement of infringement in violation of 35 U.S.C. § 271(b).

184.    Upon information and belief, ACS has profited and will continue to profit from actively inducing the infringement of the '078 Patent.

185.    ACS's actions with regard to affirmatively intending to actively induce the infringement of the '078 Patent have caused and will continue to cause R+L substantial and irreparable injury, for which R+L is entitled to receive injunctive relief and adequate compensatory damages.

186.    Further, ACS's actions with regard to actively inducing infringement of the '078 Patent are willful such that R+L is entitled to treble damages under 35 U.S.C. § 284.

**COUNT III—DECLARATORY JUDGMENT OF JUSTICIABLE CONTROVERSY**

187.    R+L repeats and realleges the allegations contained in paragraphs 1-186 above as if fully set forth herein.

188.    R+L alleges that ACS indirectly infringes the '078 Patent today.

189.     ACS continues to deny any infringement of the '078 Patent today.

190.     Therefore, there remains a justiciable controversy over whether ACS infringes the '078 Patent.

191.     This Court may declare the rights and other legal relations of the parties and issue a declaratory judgment that ACS has infringed pursuant to 28 U.S.C. §§ 2201 and 2202 because this is a case of actual controversy within the Court's jurisdiction.

## Demand for Relief

WHEREFORE, R+L respectfully requests that this Court enter judgment as follows:

A.     Declare that R+L is the owner of the '078 Patent;

B.     Preliminarily and permanently enjoin ACS, its employees and agents, and any others acting in concert with ACS, from affirmatively intending to contribute to and/or actively induce the infringement of the '078 Patent;

C.     Award R+L its damages resulting from ACS's contribution to and active inducement of the infringement of the '078 Patent;

D.     Award R+L treble damages pursuant to 35 U.S.C. § 284 as a result of ACS's willfulness in contributing to and actively inducing the infringement of the '078 Patent;

E.     Declare that the nature of ACS's infringement is "exceptional" pursuant to 35 U.S.C. § 285 and award R+L its costs and attorney fees; and

F.     Grant R+L such other relief as is just and proper.

## Jury Demand

R+L demands a trial by jury to the extent permitted by applicable law.


_____/s/ Anthony C. White_____

Anthony C. White          (0062146)

35

Respectfully submitted,


      /s/ Anthony C. White
Anthony C. White         (0062146)
O. Judson Scheaf, III      (0040285)
Philip B. Sineneng        (0083406)
THOMPSON HINE LLP
41 South High Street, Suite 1700
Columbus, Ohio  43215-6101
Tel:    (614) 469-3200
Fax:    (614) 469-3361
Tony.White@ThompsonHine.com
Jud.Scheaf@ThompsonHine.com
Philip.Sineneng@ThompsonHine.com


Megan D. Dortenzo      (0079047)
Troy S. Prince          (0077443)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH  44114
Tel:    (216) 566-5500
Fax:    (216) 566-5800
Megan.Dortenzo@ThompsonHine.com
Troy.Prince@ThompsonHine.com

*Attorneys for Plaintiff*
*R+L Carriers, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2010, I electronically filed the foregoing *R+L Carriers, Inc.'s First Amended Complaint* with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record, including the following:

Thomas Shunk, Esq.
BAKER HOSTETLER LLP
3200 National City Center
1900 East 9th Street
Cleveland, OH  44114-3485

*Attorneys for Defendant Affiliated Computer Services, Inc.*

_____/s/ Philip B. Sineneng_____
Philip B. Sineneng

641888.3

37