## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

|  |  |
|---|---|
| **IN RE:  Bill of Lading Transmission and Processing System Patent Litigation** | ) )  MDL Docket No. 1:09-md-2050 ) )  JUDGE BECKWITH |
| This document relates to: | ) ) |
| **R+L CARRIERS, INC.,** | ) ) |
| Plaintiff/Counterclaim-Plaintiff, | ) ) |
| vs. | ) ) |
| **AFFILIATED COMPUTER SERVICES, INC., DRIVERTECH LLC, INTERMEC TECHNOLOGIES CORP., MICRODEA, INC., PEOPLENET COMMUNICATIONS CORP., and QUALCOMM, INC.,** | ) Case No. 1:09-cv-818 ) Case No. 2:08-cv-862 (D. Utah) ) Case No. 1:09-cv-532 ) Case No. 1:09-cv-179 ) Case No. 09-cv-144 (D. Minn.) ) Case No. 1:09-cv-445 ) |
| Defendants/Counterclaim-Defendants. | ) ) |

## R+L CARRIERS, INC.'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' JOINT MOTIONS TO DISMISS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iv

I.   INTRODUCTION ................................................................................ 1

II.  FACTUAL BACKGROUND .................................................................. 2

    *1.   The U.S. Patent and Trademark Office Duly Issued the '078 Patent* .................. 2

    *2.   R+L's Attempts to Gather Information Were Met by the Indirect Infringers' Lawsuits* ................................................................................ 3

III. ARGUMENT ...................................................................................... 4

  **A.   R+L Has Surpassed the Pleading Standards Set Forth in *Twombly*** ...................... 4

As this Court has held, R+L's Amended Pleadings are to be judged by the standards announced by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 US. 554 (2007), and its progeny.  This plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]."  550 U.S. at 556.

  **B.   Certain of Indirect Infringers' Arguments Demonstrate their Motion's Utter Lack of Credibility** ................................................................................ 5

    *1.   The Indirect Infringers Implicitly Dismiss R+L's Obligation to Police its Patent In the Face of Their Public Statements* ................................................ 6

A patentee's obligation to police its patent upon constructive knowledge of infringement lies in stark contrast to the heightened pleading standard urged by the Indirect Infringers, which would forbid any claims founded upon that knowledge. *Wanless v. General Elec. Co.*, 148 F.3d 1334, 1338 (Fed. Cir. 1998).

    *2.   The Indirect Infringers Offer Up A Seventh Circuit Case Chastising R+L's Motives When the Sixth Circuit Requires R+L to Plead as It Has* ...................... 7

The Indirect Infringers' reliance on Seventh Circuit precedent is misplaced when the law applicable here establishes that an amended pleading supersedes the original complaint in all respects.  *Moore v. Hayes*, 83 F.3d 422 (6th Cir. 1996).

    *3.   R+L's Claims Against PeopleNet and Microdea Are Built on Direct Allegations of Infringement and Require No Inferences* ........................................ 8

R+L has alleged specific facts, and initiated lawsuits against, their known customers who are directly infringing the '078 Patent.  Neither PeopleNet nor Microdea make any effort to challenge the sufficiency of those direct allegations, essentially

i

conceding that the Amended Pleadings as to them properly state a claim. Moreover, neither PeopleNet nor Microdea have challenged the sufficiency of the claims made against them, and none of the direct infringers have sought to dismiss R+L's complaint.

4. *The Indirect Infringers' Challenge to R+L Declaratory Judgment Claims Are Disingenuously Hypocritical and Demonstrably Wrong* .................................... 12

R+L's declaratory relief claims allege a substantial controversy that is of "sufficient immediacy and reality" that it surpasses the declaratory judgment standard set by the U.S. Supreme Court. *MedImmune, Inc. v. Greentech, Inc.*, 127 S. Ct. 764 (2007). To that point, PeopleNet, DriverTech and Intermec have each asserted declaratory judgment claims against R+L that, although not supported by any factual allegations whatsoever, nevertheless concede that there is "sufficient immediacy and reality" to them.

**C. R+L Plead Sufficient Factual Allegations and Draws Reasonable Inferences To Support Its Complaint for Patent Infringement** .................................................... 14

1. *The Indirect Infringers Eliminate the "Inference" from "Reasonable Inferences" By Insisting That R+L Prove Its Claims On the Pleadings* ........... 14

Throughout their motion, the Indirect Infringers advocate for an unprecedented standard regarding "reasonable inferences" that would eliminate all but the most obvious conclusions available to a plaintiff at the pleading stage. They dismiss R+L's pleaded inferences as nothing more than conclusions. The flaw in this criticism is, of course, that this is exactly what inferences are: <u>conclusions or deductions drawn from facts</u>.

2. *The Correct Standard Regarding Reasonable Inferences* ................................ 15

If an inference could be accepted by a reasonable fact-finder as true, it must be accepted by the court at the pleading stage as true. *City of Monroe Employees Retirement Sys. v. Bridgestone Corp.*, 399 F.3d 651 (6th Cir. 2005); *Imperial Hotels Corp. v. Dore*, 257 F.3d 615 (6th Cir. 2001). Inferences are nothing more than <u>deductions</u> and <u>conclusions</u> from the evidence that are based on reason and common sense. Fed Jury. Prac. & Inst. § 104.20; *Williams v. Eau Claire Public Schools*, 397 F.3d 441 (6th Cir. 2005).

3. *R+L's Reasonable Inferences Are Amply Supported by Specific Facts* ............ 19

R+L Amended Pleadings present facts and reasonable inferences that "raise a reasonable expectation that discovery will reveal evidence of [infringement]." These facts are largely the Indirect Infringers own words, admissions of their actions and intent. R+L's inferences arise straight from these facts.

**D.** **The Law Could Not Be Any Clearer that As Adapted, the Indirect Infringers' Products Have No Substantial Non-Infringing Use** ................................................ 30

The question of whether an accused device has a substantial non-infringing use is a fact-intensive inquiry that is determined on a case-by-case basis. *Cross Med. Prods., Inc. v. Medtronic Sofamor Danke, Inc.*, 424 F.3d 1293 (Fed Cir 2005); *Mentor H/S Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365 (Fed. Cir. 2001); *Imagexpo, LLC v. Microsoft Corp.*, 284 F. Supp. 2d 365 (E.D. Va. 2003).  To answer the question of whether there is a substantial non-infringing use, the court must necessarily complete claim construction to determine what constitutes infringement. *Wyeth v. Sandoz, Inc.*, No. 5:07-cv-234, 2010 WL 1404064 at *13 (E.D.N.C. Mar. 12, 2010).

*1.* *The Federal Circuit's Holding in* Hodosh *and Its Progeny Establishes That Once Individual Products Are Combined with Others to Practice a Method Patent, Those Products Have No Substantial Noninfringing Use* .................... 31

*2.* *The Indirect Infringers' Products, when Adapted and Bundled to Perform the '078 Patent, Have No Substantial Noninfringing Use* ...................................... 33

**E.** **Only One Actor—the Indirect Infringer's Customer—Is Needed to Directly Infringe the '078 Patent** ............................................................................................ 35

Despite their insistence on being direct infringers, R+L has always maintained that the *Indirect* Infringers are liable for contributory infringement and active inducement of infringement.  Their customers, on the other hand, such as Berry & Smith Trucking Ltd., Interstate Distributor Co., Pitt Ohio Express, Inc., Cargo Transporters, Inc., and Frozen Foods Industries Express, Inc., as alleged in the Amended Pleadings, are each directly infringing the '078 Patent.  Those customers are the sole actors who provide the portable image processors to their fleet and who place packages on the transporting vehicle.

IV.    CONCLUSION ............................................................................................................ 36

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*ADC Telecomm, Inc. v. Switchcraft, Inc.*, No. 07-1423, 2008 WL 2415375 at *2 (Fed. Cir. June 16, 2008) ........................................................................................................................ 30

*Adrian Energy Assocs. v. Michigan Pub. Serv. Comm'n*, 481 F.3d 414, 422 (6th Cir. 2007 ....... 13

*Aquatex Indux., Inc. v. Techniche Solutions,* 419 F.3d 1374 (Fed. Cir. 2005) ............................ 30

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ................................................................................ 4, 5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ passim

*City of Monroe Employees Retirement Sys. v. Bridgestone Corp.*, 399 F.3d 651 (6th Cir. 2005) ...................................................................................................................... 15, 16, 17

*Courie v. Alcoa Wheel & Forged Prods.,* 577 F.3d 625 (6th Cir. 2009).................................... 18

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danke, Inc.*, 424 F.3d 1293, 132 (Fed. Cir. 2005) ........................................................................................................................................ 30

*Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098 (Fed. Cir. 2003)........................................ 8

*Ferron v. Metareward, Inc.*, Nos. 2:09-cv-430, 2:09-cv-440, 2:09-cv-512, 2:09-cv-520, 2010 WL 1009772, *5 (S.D. Ohio Mar. 15, 2010) .................................................................... 17

*Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) ........................................ 4

*Fulst v. Thompson*, No. 2:09-cv-725, 2009 WL 4153222, *3 (S.D. Ohio Nov. 20, 2009) .......... 16

*Glaxo Group Ltd. v. Apotex, Inc.*, 376 F.3d 1339 (Fed. Cir. 2004) ...................................... 12, 13

*Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562 (Fed. Cir. 1997).............................................. 13

*Glimcher Co. v. Deavers*, No. 2:09-cv-797, 2010 WL 1610709, *3 (S.D. Ohio Apr. 19, 2010) . 21

*Hodosh v. Block Drug Co.*, 833 F.2d 1575 (Fed. Cir. 1987) ................................................ passim

*Imagexpo, LLC v. Microsoft Corp.*, 284 F. Supp. 2d 365 (E.D. Va. 2003) ................................ 30

*Imperial Hotels Corp. v. Dore*, 257 F.3d 615 (6th Cir. 2001) ........................................ 15, 16, 17

*In re Scrap Metal Antitrust Litig.*, 2006 WL 2850453 at *18 n.46............................................ 18

*In re Travel Agent Commission Anti-Trust Litig.*, 583 F.3d 896 (6th Cir. 2009) .......................... 4

*Kline v. Mtg. Electronic Registration Systems, Inc.*, No. 3:08cv408, 2010 WL 1267809, *3 (S.D. Ohio Mar. 30, 2010) ........................................................................................................ 16

*Lang v. Pacific Marine & Supply Co.*, 895 F.2d 761 (Fed. Cir. 1990)........................................ 12

*MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764 (2007)...................................................... 12

*Mentor H/S Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365 (Fed. Cir. 2001) ................... 30

*Metabolite Labs., Inc. v. Lab. Corp. of America Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004) ........................................................................................................................................ 16

*Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325 (1960)........................................................... 17

*Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317 (Fed. Cir. 2007) ............................................ 30

*Moore v. Hayes*, 83 F.3d 422 (6th Cir. 1996) .......................................................................... 7, 8

*MSI Regency Ltd. v. Jackson, M.D.*, No. 1:07-cv-900, 2008 WL 5130420, *4 (S.D. Ohio Dec. 4, 2008) ........................................................................................................................................ 18

*Neitzke v. Williams*, 490 U.S. 319 (1989) .................................................................................. 18

*Pharmanet Inc. v. DataSci, LLC*, 2009 U.S. Dist. LEXIS 11661, *30-31 (D.N.J. Feb. 17, 2009) ........................................................................................................................................ 13

*Ricoh v. Quanta Computer, Inc.*, 550 F.3d 1325 (Fed. Cir. 2008) .................................. 33, 34, 35

*Scanner Technologies Corp. v. ICOS Vision Systems Corp. N.V.*, 528 F.3d 1365 (Fed. Cir. 2008) ........................................................................................................................................ 16

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) .................................................................................... 18

*SEC v. Sierra Brokerage Services, Inc.*, 608 F.Supp.2d 923, 967 (S.D. Ohio 2009) ................... 16

*Seil v. Keystone Automotive, Inc.*, 678 F.Supp.2d 643 (S.D. Ohio 2010)..................................... 17

*Sitta v. American Steel and Wire Div. of U.S. Steel Corp.*, 254 F.2d 12 (6th Cir. 1958) ............. 17

*Tacket v. M & G Polymers, USA, LLC*, 561 F.3d 478 (6th Cir. 2009) ........................................... 4

*Tamraz v. BOC Group, Inc.*, No. 1:04-cv-18948, 2008 WL 2796726, *4 (N.D. Ohio July 18, 2008) ........................................................................................................................................ 16

*Trustees of Columbia Univ. v. Roche Diagnostics*, 272 F. Supp. 2d 90 (D. Mass. 2002)............. 7

*Wanlass v. General Elec. Co.*, 148 F.3d 1334 (Fed. Cir. 1998) ............................................... 1, 6

*Williams v. Eau Claire Public Schools*, 397 F.3d 441 (6th Cir. 2005)........................................ 15

*WSB-TV v. Lee*, 842 F.2d 1266 (11th Cir. 1988) ........................................................ 17

*Wyeth v. Sandoz, Inc.*, ___, F. Supp. 2d ___, No. 5:07-cv-234, 2010 WL 1404064 at *13
  (E.D.N.C. Mar. 12, 2010) ...................................................................................... 30

## **Statutes**

15 C.F.R. § 30.45 (2008) ............................................................................................ 22

35 U.S.C. § 271(c) ...................................................................................................... 31

## **Other Authorities**

Fed. Jury Prac. & Inst. § 101.42 ................................................................................ 16

Fed. Jury Prac. & Inst. § 104.05 ................................................................................ 16

Fed. Jury Prac. & Inst. § 104.20 ................................................................................ 15

*Hearings on H.R. 3760 Before Subcomm. 3 of the House Comm. on the Judiciary, 82nd Cong.,*
  *1st Sess., 155-156* (1955)...................................................................................... 32

R+L Carriers, Inc. ("R+L") submits this memorandum in opposition to Affiliated Computer Services, Inc. ("ACS"), Microdea, Inc. ("Microdea"), Qualcomm, Inc.'s ("Qualcomm"), DriverTech LLC ("DriverTech"), Intermec Technologies Corp. ("Intermec"), and PeopleNet Communications Corp.'s ("PeopleNet") (collectively "the Indirect Infringers") Joint Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion").

## I. **INTRODUCTION**

Each of the moving parties has made statements which, on their face, were calculated to entice trucking companies to use their products together, or in combination with others, in a manner that can reasonably be inferred to infringe the process patented in U.S. Patent 6,401,078 (the "'078 Patent"). In the midst of that advertising deluge, R+L did what it had to do: it policed its patent. *Wanless v. Gen. Elec. Co.*, 148 F.3d 1334 (Fed. Cir. 1998).

Rather than simply taking action to assuage R+L's legitimate concerns (for example, meet and confer with R+L and explain why they are not infringing the patent), some of the Indirect Infringers initiated lawsuits, and all of them belatedly joined in motion practice challenging the sufficiency of R+L's allegations, feigning indignation that they were haled into Court based upon their public statements that they do not deny making. As to two of those Indirect Infringers (PeopleNet and Microdea), the claims against them are direct, and even if stripped of the reasonable inferences to which R+L is entitled as a matter of law, they easily satisfy any reasonable pleading standard. That is likely why both PeopleNet and Microdea are virtually silent in the Motion in response to key allegations such as their Pitt Ohio conduct—they have no plausible challenge to the Amended Pleadings as to them. Their motions must be denied out-of-hand.

As to the others, they do not refute the direct factual allegations made against them. Instead, the gist of their motion is that R+L is not entitled to the inferences that flow directly

from those allegations.  That is a backwards notion.  *Movants* have the burden of demonstrating

that no reasonable fact-finder could reach any of the inferences that R+L has reasonably made,

and which R+L enjoys at this stage as a matter of law.  Having utterly failed that burden, their

motions must be denied.

II.     **FACTUAL BACKGROUND**

1.     *The U.S. Patent and Trademark Office Duly Issued the '078 Patent*

After years of R+L's extensive research and development, and a significant investment of

time and money, the U.S. Patent and Trademark Office ("USPTO") awarded R+L a patent for its

revolutionary and novel process for wirelessly transmitting images from inside a truck cab to a

remote processing facility for the advance preparation of a loading manifest.  On June 4, 2002,

the USPTO issued the '078 Patent entitled "Bill of Lading Transmission and Processing System

for Less than a Load Carriers."  R+L owns all rights and interests in the '078 Patent.

Beginning in 2008, the Indirect Infringers began making public statements encouraging

trucking companies to use their products to practice the process taught in the '078 Patent.

Keenly aware of its duty to police its patent rights, R+L conducted an investigation, and

discovered the public statements thoroughly detailed in the Amended Pleadings.  Those

statements led R+L, as they would any reasonable patentee, to be significantly concerned that the

movants were indirectly infringing the '078 Patent.  As a result, R+L sent cease-and-desist letters

to these Indirect Infringers, informing them of the '078 Patent, relaying its infringement

concerns, and requesting that the Indirect Infringers provide information to allay R+L's

legitimate apprehension.  R+L had intended to exchange information and engage in productive

discussions with the Indirect Infringers to resolve any conflicts, hopefully short of litigation.

2

2.   *R+L's Attempts to Gather Information Were Met by the Indirect Infringers' Lawsuits*

R+L's reasonable requests for information were thwarted by certain Indirect Infringers. In PeopleNet's case, in lieu of responding to R+L's inquiry, it immediately filed a conclusory, 13-paragraph declaratory judgment action in the District of Minnesota.  The clear and sole purpose of that lawsuit was to seize jurisdiction of any litigation in PeopleNet's home district. Prior to filing its lawsuit, PeopleNet made no attempt to address with R+L whether it was infringing, or provide to R+L information defusing R+L's infringement concerns.  Indeed, PeopleNet did not even deny that it or its customers were infringing the '078 Patent before launching its pre-emptive lawsuit.  Nor did PeopleNet seek any information from R+L about the '078 Patent before it summarily asserted that the patent was invalid.

DriverTech employed the same tactic.  It filed an equally conclusory, and even more perfunctory 10-paragraph declaratory judgment action against R+L in the District of Utah, its home district.  Like PeopleNet, DriverTech made no effort to take R+L up on its offer to discuss the matter before launching its pre-emptive complaint to seize jurisdiction.  And like PeopleNet, DriverTech asserts in its bare-bones amended complaint that the '078 Patent is invalid.  To this day, despite R+L's repeated requests, none of the Indirect Infringers have provided R+L with <u>any</u> publicly-verifiable information that would allow R+L to assess their position that they are not infringing the '078 Patent.  Instead, they have refused or blocked all of R+L's efforts to obtain information, whether informally or through discovery.

We are now before the Court on the Indirect Infringers' assertion that R+L's Amended Pleadings fail to satisfy the pleading standard established by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Each of the challenged Amended Pleadings is hundreds of paragraphs in length, and contains numerous exhibits that are the Indirect Infringers' own public statements

that support each of R+L's infringement allegations.  Nevertheless, rather than provide R+L with information establishing their alleged lack of infringement, the Indirect Infringers half-heartedly challenge R+L's Amended Pleadings, thereby further delaying the day that they will be required to detail in discovery their actions.

In reality, the Amended Pleadings surpass any reasonable interpretation of the pleading standard announced in *Twombly*.  To hold otherwise would make it impossible, or at best nearly so, for patentees to police their patent rights absent a bald, public admission of infringement by savvy infringers who are not likely to make such a mistake.  What follows is a detailed discussion of the correct, objective standard that R+L's Amended Pleadings must satisfy, and the analysis showing that R+L's Amended Pleadings easily exceed that standard.

## III.    ARGUMENT

### A.     R+L Has Surpassed the Pleading Standards Set Forth in *Twombly*

As this Court has held, R+L's Amended Pleadings are to be judged by the standards announced by the United States Supreme Court in *Twombly* and its progeny.  Thus, R+L's Amended Pleadings "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), quoting *Twombly*, 550 U.S. at 570.  This plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]."  *Twombly*, 550 U.S. at 556; *see also In re Travel Agent Commission Anti-Trust Litig.*, 583 F.3d 896, 912 (6th Cir. 2009).  Thus, complaints need not contain every potential fact allegation, nor must a plaintiff allege sufficient facts to *prove* its case.  *See Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Tacket v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009).  Rather, R+L's Amended Pleadings must only allege "facts suggestive of illegal conduct," *Twombly*, 550 U.S. at

4

564 n.8, and must be more than "an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. Without question, *Twombly* did not impose a heightened pleading standard, it merely required "factual enhancements" to support the claims asserted. *Twombly*, 550 U.S. at 557 n.14. R+L's detailed Amended Pleadings exceed this standard.

Since the Indirect Infringers' Motion contends that R+L's Amended Pleadings fail this pleading standard, it is their burden to prove that fact. Stated in the language of *Twombly* and its progeny, the Indirect Infringers bear the burden of proving that the Amended Pleadings do not contain facts that "raise a reasonable expectation that discovery will reveal evidence of [infringement]." Stated another way, the Indirect Infringers must prove that no reasonable fact-finder could (i) believe that R+L has alleged "facts suggestive of illegal conduct," or (ii) form the inferences asserted by R+L. The Indirect Infringers fail to satisfy this burden.

## B. Certain of Indirect Infringers' Arguments Demonstrate their Motion's Utter Lack of Credibility

The lack of any tangible basis for the Indirect Infringers' motion is aptly captured by the frivolity of their arguments, as demonstrated by:

(1) their failure to harmonize R+L's patent policing obligations with the heightened pleading standard to which they would hold R+L, and all other infringement plaintiffs, accountable;[1]

(2) their reliance upon authority from another circuit that is counter to Sixth Circuit law;

(3) the fact that Microdea and PeopleNet ignore the direct claims against them; and

(4) their suggestion that no case or controversy exists when they have filed claims against R+L that admit and prove otherwise.

---

[1] A standard that the Indirect Infringers failed to achieve in their own pleadings.

1.    *The Indirect Infringers Implicitly Dismiss R+L's Obligation to Police its Patent In the Face of Their Public Statements*

A patentee's obligation to police its patent upon constructive knowledge of infringement lies in stark contrast to the heightened pleading standard urged by the Indirect Infringers, which would forbid any claims founded upon that knowledge.  *Twombly* did not re-write decades of patent law, and is not a license for the Indirect Infringers to infringe the '078 Patent until they choose to openly admit their infringement.

The sheer volume of the Indirect Infringers' public statements imposed an obligation on R+L to police its patent.  Indeed, in the face of those statements touting to the trucking industry product characteristics clearly within the zone of the '078 Patent, R+L had the affirmative obligation to police its patent and protect its valuable intellectual property from any possible infringement.  *See Wanlass,* 148 F.3d at 1338  (every patentee has an affirmative "duty to police their rights").  If R+L had delayed in policing its rights, it ran the substantial risk of forever losing those rights under the laches doctrine.  *See id.* at 1337.  "The period of delay begins at the time the patentee has actual or constructive knowledge of the defendant's <u>potentially</u> infringing activities."  *Id.* (emphasis added).  R+L's obligations to enforce its patent rights, and inquire into potentially infringing activities, begins when an infringer's conduct is so open and notorious "that a reasonable patentee would suspect" infringement.  *Id.* at 1338.  This includes "sales, marketing, publication, or public use of a product similar to or embodying the patented invention."  *Id.*  The Indirect Infringers know that.  Fulbright & Jaworksi, counsel for PeopleNet, Microdea and Qualcomm, have elsewhere asserted laches against a patentee that supposedly had

6

notice of claims against Fulbright's client without complying with its policing obligations.  *See*

*Trustees of Columbia Univ. v. Roche Diagnostics*, 272 F. Supp. 2d 90, 116 (D. Mass. 2002).[2]

The Indirect Infringers' heightened pleading arguments ignore those policing obligations.

Their public statements, marketing materials, and promotional strategies, all as detailed in R+L's

Amended Pleadings, lead a reasonable patentee to believe that its patent is being infringed.  It

cannot be that courts simultaneously require patentees to police their rights, and at the same time

close the courtroom doors when a patentee diligently pursues potential infringers based upon that

constructive knowledge.  Yet, that is the dilemma that the Indirect Infringers would foist upon

R+L.

> 2. *The Indirect Infringers Offer Up A Seventh Circuit Case Chastising R+L's Motives When the Sixth Circuit Requires R+L to Plead as It Has*

The Indirect Infringers malign R+L's motive for amending claims contrary to the

February 23, 2010 Order (Docket No. 113, "the February 23 Order"), and suggest that R+L is

somehow disrespecting or "agitating" the Court.  That is wrong.  The fact is, as R+L expressed

during the last conference (without objection), R+L's only motive is to preserve arguments for

appeal as required by the Sixth Circuit.  The Indirect Infringers' reliance on a Seventh Circuit

case is misplaced when the law applicable here establishes that an amended pleading supersedes

the original complaint in all respects.  *Moore v. Hayes*, 83 F.3d 422 (6th Cir. 1996).

---

[2] Fulbright represented defendant Roche Diagnostics in this active inducement infringement case. Specifically, plaintiff claimed that Roche induced or collaborated with Genetics Institute to produce the drug Erythropoietin using the plaintiff's patented methods and products.  Fulbright asserted that laches barred plaintiff's claims against Roche, because the plaintiff had waited almost 10 years since the patent was issued to file its lawsuit, and because a series of events and statements should have put plaintiff on notice of its claims.  The court rejected the defense, noting that defendant was relying on non-public statements for notice to the patentee, and non-public statements were insufficient in this context. *Columbia Univ.*, 272 F. Supp. 2d at 95.

The lesson of this case is that the Indirect Infringers' counsel, experienced and diligent, has argued that far less than the public admissions contained in the Amended Pleadings are sufficient to trigger the patentee's obligation to police its patent.  We can rest assured that had R+L not taken steps to enforce its patent rights in the face of the Indirect Infringers' public admissions, R+L would be presented with a phalanx of assertions that it is barred by the doctrine of laches.

In *Moore*, the plaintiff claimed malicious prosecution and violations of constitutional rights.  The court dismissed the claims with leave to appeal.  In the amended complaint, the plaintiff alleged malicious prosecution, but did not reassert violations of his constitutional rights.  The amended complaint was also dismissed.  On appeal, the Sixth Circuit held that the "[p]laintiff failed to preserve his [constitutional rights] claims under section 1983 in his second complaint by realleging them.  Therefore, those claims are not properly before us." *Id.*  Under Sixth Circuit precedent, and as R+L informed this Court during the April 6 Status Conference, R+L alleges its claims based on offer to sell liability against the Indirect Infringers to preserve its right to appeal.[3]

Though the Indirect Infringers accuse R+L of  "annoyance" and "agitating" this Court, they themselves have repeated the same arguments this Court has previously rejected as premature.  The Court was quite clear that "the issue of whether the method of the patent requires one or more actors is not properly determined in a Rule 12 context, but is a question for claim construction." *See* February 23 Order at p. 6.  Despite the Court's unequivocal mandate, the Indirect Infringers persist in advancing a divided theory of infringement, which begs the Court to determine whether the patent requires multiple actors. *See* Motion at pp. 13-15.  This is yet another example of the Indirect Infringers improperly and hypocritically imposing a burden on R+L that they themselves fail to observe.

### 3. R+L's Claims Against PeopleNet and Microdea Are Built on Direct Allegations of Infringement and Require No Inferences

PeopleNet and Microdea suggest that the reasonable inferences taken against them are somehow improper.  Yet this Court is not required to "infer" anything with respect to them to find the Amended Pleadings sufficient.  R+L has alleged specific facts, and initiated lawsuits

---

[3] The Federal Circuit follows regional case law on procedural issues. *See Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1106 (Fed. Cir. 2003).

against, their known customers (e.g., Berry & Smith Trucking, Ltd. and Pitt Ohio Express, Inc. (collectively, the "Direct Infringers")) who are directly infringing the '078 Patent. None of the Direct Infringers have challenged the sufficiency of the claims made against them, and none have sought to dismiss R+L's complaint.

For example, PeopleNet's CEO has stated that PeopleNet and Microdea are working together to provide Pitt Ohio Express, Inc. with technology that is used to infringe the '078 Patent. *See* R+L's Amended Counterclaim as to PeopleNet, Docket No. 125 at ¶ 57. PeopleNet's own website corroborates these admissions, including a whitepaper touting Pitt Ohio's use of the g3 to improve its efficiency. *Id.* at ¶ 58. The whitepaper includes statements that Pitt Ohio has used the g3 to improve underlined_dispatching efficiency and for underlined_load planning. *Id.* at ¶¶ 58-60. Using the g3, Pitt Ohio has "improve[d] underlined_load planning and asset management by determin[ing] the number of trucks waiting for dock doors and . . . figur[ing] out how long it takes the driver to log out after arriving in the yard." *Id.* at ¶ 60 (internal quotations omitted) (emphasis added). The whitepaper makes clear that Pitt Ohio's use of the g3 is actual, not potential or contemplated. Based on PeopleNet's own factual statements, and Pitt Ohio's corroborating admissions, a reasonable fact-finder has direct evidence that Pitt Ohio is infringing the '078 Patent with the assistance and encouragement of PeopleNet and Microdea. That same fact-finder could also infer that Pitt Ohio is practicing each step of the '078 Patent, including the preparation and use of a loading manifest.

Microdea has advertised Berry & Smith Trucking Ltd.'s ("Berry & Smith") infringing conduct. Similar reasonable inferences can be drawn from Microdea's and Berry & Smith's public statements regarding its use of Microdea's Synergize OnRamp solutions. *See* R+L's Amended Complaint as to Microdea, Docket No. 122 at ¶¶ 41-48. For example, Dorothy

Vankougnett, Berry & Smith's controller and IT manager, stated that Berry & Smith was "looking to In-Cab Scanning to improve driver efficiency by expediting document flow to and from the vehicle." *Id.* at ¶ 41.  Microdea published that statement its Synergize OnRamp In-Cab Scanning marketing materials. *Id.* at ¶ 42.  According to a 2007 press release, Berry & Smith is using Microdea's technology to scan and transmit documents, including bills-of-lading, wirelessly from its truck cabs. *Id.* at ¶¶ 43-44.  Furthermore, the press release touts that "with documents in hand, <u>dispatch</u> will be able to more <u>quickly and surely dispatch loads and assign drivers</u>." *Id.* at ¶ 44 (internal quotation omitted) (emphasis added).  Microdea specifically recognized that documents scanned and transmitted included ***cargo manifests*** and billing orders. *Id.* at ¶ 45.  Finally, there is no dispute that Berry & Smith is actually using Microdea's technology – its use was not merely contemplated or potential. *Id.* at ¶ 46.  From these well-pleaded fact allegations, a reasonable fact-finder could easily infer that Berry & Smith, using Synergize OnRamp In-Cab Scanning, "scan[s] and wirelessly transmit[s] bills-of-lading from inside the truck cab to the back office where advance loading manifests are prepared." *Id.* at ¶ 48.  PeopleNet and Microdea have encouraged the Direct Infringers to practice the '078 Patent. Neither PeopleNet nor Microdea have addressed the direct allegations against them, despite the fact that the inferences to which R+L is entitled are not even needed for us to know that PeopleNet and Microdea squarely belong in these proceedings.

Perhaps all of this is why the Court will find no mention by PeopleNet and Microdea anywhere in the motion about their Pitt Ohio conduct, Microdea's Berry & Smith admissions, or R+L's allegations detailing them.  Instead, PeopleNet and Microdea ignore these well-pleaded facts, as if that might cause the Court to forget that R+L has plead facts which directly establish infringing conduct by PeopleNet and Microdea in connection with Pitt Ohio, and by Microdea in

connection with Berry & Smith. PeopleNet and Microdea cannot lurk in the crowd of Indirect Infringers and hope that no one notices their lack of response. To the contrary, the fact that PeopleNet and Microdea can make no challenge to the sufficiency of R+L's Pitt Ohio and Berry & Smith allegations proves loud and clear that PeopleNet and Microdea have no basis to challenge the Amended Pleadings as to them. [4]

What's more, R+L's Amended Counterclaim as to PeopleNet and its Amended Complaint as to Microdea are not limited to the direct evidence of infringement set forth above. For example, PeopleNet advertises its g3 and PACOS technology to trucking companies as lowering "overall communication costs and increas[ing] <u>dispatcher effectiveness</u> with communications and reporting." *See* Docket No. 125 at ¶ 41 (emphasis added). PeopleNet also states through PACOS, "<u>load and route information</u> is automatically delivered to the driver upon arrival through an <u>automated manifest that is integrated with [the trucking company's] dispatch system</u>." *Id.* at ¶ 42 (emphasis added). Similarly, Microdea specifically offers less-than-truckload ("LTL") customers document solutions that include "scanning, imaging, workflow, process management and print rendition billing to increase . . . productivity" and "data retrieval from the <u>dispatch solution</u>." *See* Docket No. 122 at ¶¶ 30-31 (emphasis added). Microdea advertises that "[i]nstead of waiting for drivers to reach their home terminal, cabs are equipped with an easy to use scanning solution enabling the driver to scan [bills-of-lading] documents and send them through the existing mobile communications system directly to [the] billing center for

---

[4] This is likely why the Indirect Infringers chose to file a joint motion, rather than set forth individually their attacks against the Amended Pleadings. Standing alone, the Indirect Infringers are much more vulnerable to careful scrutiny, an examination which would only reveal the weakness of their assertions. No Indirect Infringer is more vulnerable than PeopleNet and Microdea, especially as to these direct allegations. A joint motion allows each Indirect Infringer to camouflage its individual weaknesses, while giving the appearance of strength in numbers. This tactic should not succeed.

immediate processing." *Id.* at ¶ 14. All of these publicly documented statements of PeopleNet and Microdea provide further evidence of their infringing activities.

4. <u>The Indirect Infringers' Challenge to R+L's Declaratory Judgment<br/>Claims Are Disingenuously Hypocritical and Demonstrably Wrong</u>

R+L's declaratory relief claims allege substantial controversies that are of "sufficient immediacy and reality" that they surpass the U.S. Supreme Court's declaratory judgment standard. *See MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 771 (2007). To that point, PeopleNet, DriverTech and Intermec have each asserted declaratory judgment claims against R+L that, although not supported by any factual allegations whatsoever, nevertheless concede that there is "sufficient immediacy and reality" to them.

The Indirect Infringers would nevertheless have this Court find that, while there currently is (and was when originally filed) adequate jurisdiction and sufficient basis for their declaratory judgment actions, those elements are lacking in R+L's mirror-image claims for declaratory relief. They offer absolutely no authority for the proposition that the standard for stating a declaratory judgment action is any different for a patentee than it is for an accused infringer. It is not. The Federal Circuit has held that there is "no reason why a patentee should be unable to seek a declaration of infringement against a future infringer when a future infringer is able to maintain a declaratory judgment action for noninfringement under the same circumstances." *Lang v. Pacific Marine & Supply Co.*, 895 F.2d 761, 764 (Fed. Cir. 1990).[5]

Even without the Indirect Infringers' declaratory judgment claims, R+L is entitled to seek declaratory relief where infringement is occuring or is likely to occur. *See, e.g., Glaxo Group*

---

[5] This point is particularly apt with respect to DriverTech and PeopleNet. They both filed Declaratory Judgment actions in the first instance in an attempt to force R+L to litigate in their home courts. It is simply implausible that there would be sufficient jurisdiction for their actions based on a reasonable apprehension of lawsuit, yet there would not be sufficient jurisdiction for R+L's counterclaim based on a reasonable apprehension of infringement. If DriverTech and PeopleNet were not infringing, one would expect them to have discussions with R+L before spending money to launch lawsuits in jurisdictions foreign to R+L.

*Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1344 (Fed. Cir. 2004) (upholding award of declaratory judgment of infringement based on infringer's application to the FDA for approval to engage in the manufacture, use or sale of the generic form of the patentee's patented drug); *Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1570-71 (Fed. Cir. 1997) (finding an Article III case or controversy where there was imminent threat of the defendant infringing on plaintiff's patent). R+L has alleged sufficient facts and reasonable inferences to show that the Indirect Infringers have already infringed the '078 Patent.

Indeed, the Indirect Infringers' suggestion that R+L has not yet proven infringement simply begs the jurisdictional question. Federal courts have held that a patentee need only demonstrate that the accused infringer "is producing an allegedly infringing product, not prove that its product is in fact infringing" for jurisdiction to be proper. *Pharmanet Inc. v. DataSci, LLC*, 2009 U.S. Dist. LEXIS 11661, *30 (D.N.J. Feb. 17, 2009). The court in *Pharmanet* determined that the possibility "[t]hat it might ultimately be determined that the complained of services do not infringe on the patent does not deny relief under the Declaratory Judgment Act." *Id.* Therefore, the Indirect Infringers' mere denials of infringement do not divest this Court of subject-matter jurisdiction over R+L's claim for declaratory relief.

The Sixth Circuit has counseled that where, as here, "a plaintiff seeks relief in addition to a declaratory judgment, such as damages or injunctive relief, both of which a court must address, then the entire benefit derived from exercising discretion not to grant declaratory relief is frustrated[.]" *Adrian Energy Assocs. v. Michigan Pub. Serv. Comm'n*, 481 F.3d 414, 422 (6th Cir. 2007). R+L's declaratory claims for relief are closely intertwined with its patent infringement actions <u>and</u> the Indirect Infringers' own declaratory actions. There is a justiciable case or controversy.

**C.  R+L Plead Sufficient Factual Allegations and Draws Reasonable Inferences To Support Its Complaint for Patent Infringement**

> *1.  The Indirect Infringers Eliminate the "Inference" from "Reasonable Inferences" By Insisting That R+L Prove Its Claims On the Pleadings*

Throughout their Motion, the Indirect Infringers advocate for an unprecedented standard regarding "reasonable inferences" that would eliminate all but the most obvious conclusions available to a plaintiff at the pleading stage.  Their approach, unwise and without support in any court anywhere, is wholly inconsistent with the law.  Though the Indirect Infringers recognize that "the Court is required to draw all reasonable inferences in plaintiff's favor," (*see* Motion at p. 10), they seemingly pay only lip-service to this important, guiding principle.  Indeed, the Indirect Infringers' Motion is filled with attempts to avoid any inferences against them by casually dismissing R+L's reasonable inferences as nothing more than conclusions drawn from facts.  *See id.* at p. 12.

The flaw in this criticism is, of course, that this is exactly what inferences are: conclusions or deductions drawn from facts.  In their zeal to advocate for the dismissal of the Amended Pleadings, the Indirect Infringers in effect advocate for the rejection of all inferences that are not supported by specific facts.  If a reasonable inference must be proven at the pleading stage by specific, concrete facts that establish the truth of the inference, then there would be nothing left for the plaintiff, this Court, or a reasonable fact-finder to "infer."  Because it is necessary to their motion, the Indirect Infringers ask this Court to adopt a standard that would swallow whole the concept of reasonable inferences at the pleading stage, rejecting all such inferences that were not proven by specific facts in the complaint.  No court has ever adopted such an approach, because it would eliminate inferences from pleadings entirely, and force plaintiffs to prove their case the moment it is filed.

14

In the end, the Indirect Infringers' proposed standard nullifies the concept of "reasonable inference" and renders discovery a completely theoretical exercise, since few plaintiffs will ever be able to muster the concrete <u>proof</u> required in a complaint by the Indirect Infringers' standard to obtain it.  This perversion was never intended by the Supreme Court in *Twombly* when it announced a standard requiring merely "enough facts to raise a reasonable expectation that discovery will reveal evidence of [infringement]."  550 U.S. at 556.  While we should understand why the Indirect Infringers advocate for such a harsh departure from *Twombly*, we should not accept it.  Instead, this Court should apply the traditional rules of interpreting and analyzing reasonable inferences, which are detailed below.

2.     <u>The Correct Standard Regarding Reasonable Inferences</u>

In reality, the law regarding reasonable inferences is as follows.  If an inference could be accepted by a reasonable fact-finder as true, it must be accepted by the court at the pleading stage as true.  *See City of Monroe Employees Retirement Sys. v. Bridgestone Corp.*, 399 F.3d 651, 683 (6th Cir. 2005) (reversing in part the district court's dismissal of complaint, reasoning that a reasonable fact-finder could find certain statements were actionable); *see also Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 621 (6th Cir. 2001) (reversing where court failed to construe facts and inferences in favor of the plaintiff).  Inferences are nothing more than <u>deductions</u> and <u>conclusions</u> from the evidence that are based on reason and common sense.  *See* Fed. Jury Prac. & Inst. § 104.20 (defining "inferences" as "deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case"); *see also Williams v. Eau Claire Public Schools*, 397 F.3d 441, 444 (6th Cir. 2005) (regarding a jury instruction that "[i]f your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion").  Thus, in considering R+L's Amended Pleadings, if a reasonable person, relying on his or her experience and common sense, can form the conclusion reached by

15

R+L, the inference is reasonable.  *See Kline v. Mtg. Electronic Registration Systems, Inc.*, No. 3:08cv408, 2010 WL 1267809, *3 (S.D. Ohio Mar. 30, 2010); *Fulst v. Thompson*, No. 2:09-cv-725, 2009 WL 4153222, *3 (S.D. Ohio Nov. 20, 2009).

R+L's reasonable inferences in the Amended Pleadings are properly based on direct and circumstantial evidence.  *See SEC v. Sierra Brokerage Services, Inc.*, 608 F.Supp.2d 923, 967 (S.D. Ohio 2009).[6]  Circumstantial evidence is, itself, a broad concept.  *See* Fed. Jury Prac. & Inst. § 101.42 ("'Circumstantial evidence' is proof of one or more facts from which you could find another fact."); *id.* § 104.05 ("'Indirect or circumstantial' evidence is proof of a chain of facts and circumstances indicating the existence or nonexistence of a fact."); *see also Metabolite Labs., Inc. v. Lab. Corp. of America Holdings*, 370 F.3d 1354, 1364-65 (Fed. Cir. 2004) (holding that the record contained sufficient evidence to infer direct infringement because "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.") (internal quotations and citations omitted) (emphasis added). Because reasonable inferences are based on experience and common sense, and are drawn from direct and circumstantial evidence, their permissible scope is necessarily broad.

And when it reviews R+L's Amended Pleadings, this Court must construe all reasonable inferences in R+L's favor.  *See Bridgestone*, 399 F.3d at 655; *see also Imperial Hotels*, 257 F.3d at 621; *Scanner Technologies Corp. v. ICOS Vision Systems Corp. N.V.*, 528 F.3d 1365, 1376 (Fed. Cir. 2008) ("Whenever evidence proffered to show either materiality or intent is susceptible of multiple reasonable inferences, a district court clearly errs in overlooking one

---

[6] *See also Tamraz v. BOC Group, Inc.*, No. 1:04-cv-18948, 2008 WL 2796726, *4 (N.D. Ohio July 18, 2008) (denying motion for judgment notwithstanding the verdict, reasoning that "circumstantial evidence (and inferences reasonably reached therefrom) can supply the 'legally sufficient evidentiary basis' necessary to fend off a motion for judgment notwithstanding the verdict.").

inference in favor of another equally reasonable inference.").[7]  In *Imperial Hotels*, the Sixth Circuit held that it was improper to construe fact allegations against the plaintiff because resolution of conflicting inferences is reserved for fact-finders.  257 F.3d at 621 ("At this stage of litigation, both parties draw extravagant conclusions from an ambiguous record.  Although one side may be drawing inferences consistent with the actual intent of the parties, a trier of fact must ultimately decide that question.").

Similarly, in *Bridgestone*, the Sixth Circuit reversed dismissal when some of the defendants' public statements would permit a jury to find that the defendants made material misstatements regarding their products.  399 F.3d at 671-73.  Though there were conflicting inferences that could be drawn from the defendants' statements, the court did not rule on which inference was proper.  *Id.* at 672-73.  Rather, it determined the motion to dismiss could not be properly granted because it was possible that the statements "could be deemed a material misrepresentation by a reasonable fact-finder."  *Id.* (emphasis added).

Accordingly, the Court's assessment of R+L's Amended Pleadings does not include any determination of the credibility or truth of R+L's well-pleaded fact allegations and reasonable inferences drawn therefrom.  *See Bridgestone*, 399 F.3d at 655; *Ferron v. Metareward, Inc.*, Nos. 2:09-cv-430, 2:09-cv-440, 2:09-cv-512, 2:09-cv-520, 2010 WL 1009772, *5 (S.D. Ohio Mar. 15,

---

[7] In this regard, the inquiry is similar to a court's decision to permit a case to go to the jury.  *See, e.g.*, *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330-31 (1960) (reversing directed verdict, reasoning that jury could have made reasonable inferences in favor of the respondent and that "[i]t does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes" (internal citations and quotations omitted)); *Seil v. Keystone Automotive, Inc.*, 678 F.Supp.2d 643, 652 (S.D. Ohio 2010) (holding summary judgment was inappropriate in discrimination case as to FMLA retaliation claim, reasoning that a reasonable juror could conclude that the reason provided for discharge was pretext, given the credibility issues of the person making the decision to discharge the plaintiff, the plaintiff's good performance evaluations, and the timing of the decision); *WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir. 1988) ("The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts.  When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one." (internal citations omitted)); *Sitta v. American Steel and Wire Div. of U.S. Steel Corp.*, 254 F.2d 12, 16 (6th Cir. 1958) (reversing direct verdict, reasoning that "it was a reasonable inference from the proven facts and testimony in this case, although not necessarily the only one or the correct one, that the rope broke because of a defect in its manufacture," therefore, the case should have gone to the jury for decision).

2010) ("It simply does not matter at this stage whether this Court] believes the inferences…
Instead, all that is required is enough factual content, necessarily accepted as true, to raise a
reasonable expectation that discovery will reveal evidence of illegality."); *see also In re Scrap
Metal Antitrust Litig.*, 2006 WL 2850453 at *18 n.46 ("Again, it is not this Court's role to decide
whether *it* finds room to criticize Letzinger's testimony, or even whether it could have rendered a
verdict in favor of Plaintiffs on the strength of that testimony; the only question is whether the
evidence would allow reasonable minds to reach such a verdict, after drawing all reasonable
inferences from that evidence in Plaintiffs' favor.").  R+L's claims must be permitted to proceed,
even if the Court might find itself skeptical at this early stage of the case that R+L will ultimately
prevail at trial.  *Twombly*, 550 U.S. at 556 ("And, of course, a well-pleaded complaint may
proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a
recovery is very remote and unlikely." (internal quotation omitted)); *Courie v. Alcoa Wheel &
Forged Prods.,* 577 F.3d 625, 630 (6th Cir. 2009) (same); *MSI Regency Ltd v. Jackson, M.D.*,
No. 1:07-cv-900, 2008 WL 5130420, *4 (S.D. Ohio Dec. 4, 2008) ("[W]hen a complaint
adequately states a claim, it may not be dismissed based on a district court's assessment that the
plaintiff will fail to find evidentiary support for his allegations or prove his claim to the
satisfaction of the factfinder."); *see also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule
12(b)(6) does not countenance. . . dismissals based on a judge's disbelief of a complainant's
factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (overruled on other grounds)
(dismissal of complaint is improper even where "recovery is very remote and unlikely").

This well-settled case law reveals that determining what inferences are reasonable at the
pleading stage is not the wooden, stern analysis that the Indirect Infringers are forced to seek.  It
is a flexible, broadminded inquiry that has no formulaic application.  Each person reviewing the

pleaded facts can and likely will come to different conclusions and deductions about what they

mean.  And in the case of R+L, unless its pleaded conclusions and deductions are ones that no

reasonable fact-finder could make, they must be accepted.  Filled with these reasonable

inferences and copious facts, R+L's Amended Pleadings are much more than "an unadorned, the

defendant-unlawfully-harmed-me accusation."

       3.      *R+L's Reasonable Inferences Are Amply Supported by Specific Facts*

There should be no doubt that R+L's Amended Pleadings present facts and reasonable

inferences that "raise a reasonable expectation that discovery will reveal evidence of

[infringement]."  *Twombly*, 550 U.S. at 556.  These facts are largely the Indirect Infringers' own

words, admissions of their actions and intent.  R+L's inferences arise straight from these facts.

In an effort to avoid the consequences of their words, the Indirect Infringers offer a series of

disjointed and simplistic arguments designed to diminish them.

For example, the Indirect Infringers suggest that, because their promotional and

marketing materials do not use the exact term "advanced loading manifest," no reasonable

inference can be had that discovery would lead to evidence that the Indirect Infringers are liable

for infringement.  In short, the Indirect Infringers would have this Court rule that unless R+L can

prove here and now that they used the words "advanced loading manifest" when encouraging

their trucking company customers to use their products to infringe the '078 Patent, R+L can

assert no claim of infringement.  That position is without merit.

The law mandates no magic words that must be uttered before a plausible claim of

infringement can be made.  To the contrary, R+L's obligation to police its patent is invoked

merely if R+L "suspects" or should have suspected that infringement is occuring.  Yet, to avoid

the Amended Pleadings, the Indirect Infringers advocate for a standard that requires the utterance

of a bald admission of infringement before a complaint can be properly filed.  No court,

anywhere, has ever adopted such a rule because it would be flawed in the extreme.  Such a standard would make it nearly impossible for a patentee to protect its patent rights, and would tip the balance of justice away from the injured patentee and heavily in favor of the infringers.

Rather, the law only requires that the Amended Pleadings contain facts and inferences that "raise a reasonable expectation that discovery will reveal evidence of [infringement]." These "facts suggestive of illegal conduct" abound throughout the Amended Pleadings for each and every Indirect Infringer, compelling the reasonable inference that the Indirect Infringers products and services are used, as a result of their encouragement, for dispatching and cross-docking, which includes the preparation of advanced loading manifests.  For example, as to Intermec, R+L plead as follows:

- "Intermec offers a variety of Transportation and Logistics Solutions to help companies improve overall operation performance and increase[] workflow through distribution systems.  According to Intermec, [s]treamlining the movement of drivers and shipments, allows for greater utilization of assets and resources.  The availability of real-time information from the road also improves planning and scheduling of operations on all fronts.  **Instantly available information means faster invoicing, more accurate route planning, scheduling and dispatching and less time in the cab for drivers**." (Docket No. 126 at ¶ 29) (internal quotations omitted);

- "Pick Up and Delivery Options are one of Intermec's Transportation and Logistics solutions.  Intermec advertises that by deploying Intermec's pickup and delivery solutions, fleets are becoming more responsive, improving company performance and customer service.  Intermec solutions are designed to help companies handle more shipments, **improve load and route planning**, eliminate shipment issues, and streamline the dispatcher and driver relationship with real-time wireless communications." (*Id.* at ¶ 30) (internal quotations omitted);

The same is true as to PeopleNet:

- "PeopleNet also advertises to its customers and potential customers, including trucking companies, that PACOS combines with the g3 to increase efficiency of automated paper-based manifest processes.  Through PACOS, **load and route information** is automatically delivered to the driver upon arrival through an

**automated manifest that is integrated with [the trucking company's] dispatch system**. (Docket No. 125 at ¶ 42) (internal quotations omitted);[8] and

And as to Microdea:

- "According to the September 2007 Press Release, In-Cab Scanning is designed to enable drivers to scan and transmit critical transportation documents, such as **bills-of-lading** and signed delivery receipts, immediately from virtually anywhere. Furthermore, with documents in hand, dispatch will be able to more **quickly and surely dispatch loads and assign drivers**." (*Id.* at ¶ 52) (internal citations and quotations omitted).

Indeed, R+L's Amended Pleadings are replete with numerous facts and inferences establishing that all of the Indirect Infringers have encouraged their trucking company customers to use their products to generate advanced loading manifests that infringe upon the '078 Patent. *See also* Docket No. 126 at ¶¶ 13, 16, 18, 23, 32-33, 35, 38-40 (Amended Complaint as to Intermec); Docket No. 124 at ¶¶ 20, 36, 38-39, 46, 54-56, 63, 75, 86, 89 (Amended Complaint as to ACS); Docket No. 125 at ¶¶ 16, 26, 31, 39-41, 58-62, 67 (Amended Counterclaim as to PeopleNet); Docket No. 121 at ¶¶ 11, 16, 39, 48, 51, 67 (Amended Counterclaim as to DriverTech); Docket No. 123 at ¶¶ 20-21, 26-27, 38-43, 52-53, 68 (Amended Complaint as to Qualcomm); Docket No. 122 at ¶¶ 14, 31-33, 44-45, 50 (Amended Complaint as to Microdea).  That is all that was required of R+L.  Surely a reasonable fact-finder could infer that the Indirect Infringers are encouraging the use of advance loading manifests to infringe the '078 Patent from these pleaded facts.

The Indirect Infringers' arguments to the contrary are a perversion of the *Twombly* holding designed to serve their short-term interests.  If R+L was required to plead its claims with

---

[8] PeopleNet's attempt to explain away its references to "manifests" on its website is wholly improper at the motion to dismiss stage. *See* Attachment Six to Joint Motion to Dismiss, "The Allegations Against PeopleNet" at p. 6. As PeopleNet is fully aware, the Court is limited to consideration of the pleadings in ruling on the Joint Motion to Dismiss.  Therefore, it cannot consider PeopleNet's explanation for its website advertisements in determining whether R+L has stated a claim.  Rather, it must accept R+L's allegations as true, regardless of PeopleNet's "explanation." *See, e.g.*, *Glimcher Co. v. Deavers*, No. 2:09-cv-797, 2010 WL 1610709, *3 (S.D. Ohio Apr. 19, 2010) ("Simply arguing their own version of the facts, which is what Defendants have done here, is insufficient to obtain dismissal under Rule 12(b)(6).")

the level of detail advocated by the Indirect Infringers, there would be no need for inferences or discovery because R+L would have **_proved_** its case in its initial pleadings. Thus, the Indirect Infringers' pleading standard leaves no room for inferences to be drawn from the evidence, both direct and circumstantial, or for additional facts to be developed during discovery. Put simply, it cannot be that the standard of proof at the pleading stage is higher than the standard of proof at summary judgment and equal to that at trial, both of which are decided after having an opportunity to take discovery.[9]

Judged against the proper standard for pleading set forth in *Twombly* and affirmed in *Iqbal*, R+L has more than sufficiently plead claims against the Indirect Infringers. As stated above, despite their attempts to hide in the crowd, PeopleNet and Microdea cannot avoid the ramifications of their concerted Pitt Ohio conduct, and Microdea cannot avoid its plead Berry & Smith conduct. Those facts, combined with the numerous other facts and proper inferences in the Amended Pleadings as to them, establish that R+L has "raise[d] a reasonable expectation that discovery will reveal evidence of [infringement]" by PeopleNet and Microdea.

The same is true for all of the remaining Indirect Infringers. For example, Qualcomm advertises its in-cab scanning function as enabling "transportation companies [to] close the loop on paperwork associated with pick-ups and deliveries." Docket No. 123 at ¶ 21 (emphasis added). Qualcomm's in-cab scanning service improves back office efficiency, productivity and

---

[9] The Indirect Infringers would have this Court believe that their customers do not use loading manifests. *See* Motion at pp. 12-13. Yet loading manifests are as critical to the trucking and transportation industry as the truck and the trailer. It defies reason and common sense that any trucking company would be able to accurately, pick up, haul, and deliver packages without using a loading manifest to keep track of the package. In fact, under certain circumstances, carriers are required to file their loading manifest with authorities. *See, e.g.*, 15 C.F.R. § 30.45 (2008) (requiring carriers to file manifests, or other commercial loading document, with Customs and Border Patrol when transporting goods across U.S. borders). With the common sense understanding that the Indirect Infringers' trucking company customers use loading manifests daily in their business, the suggestion that R+L must identify a "specific manifest" again demonstrates the Indirect Infringers attempt to transform R+L's pleading standard into a concrete proof requirement.

helps reduce <u>wasted time</u>.  *Id.* at ¶ 25.[10]  Qualcomm's in-cab scanning function is included with

the Mobile Computing Platform 200 Series ("MCP 200"), which Qualcomm advertises as

providing <u>in-cab scanning</u>, increasing productivity, and enabling scanned documents to be sent to

the back office.  *Id.* at ¶¶ 38-42.  The MCP 200 provides a service that "integrates with <u>dispatch</u>

<u>systems</u> to [increase] <u>driver operational efficiency</u> for leading businesses worldwide.  By

automating functions [such] as <u>load assignments</u>, event triggers, and work process forms, [the

service] helps to lower operational costs, reduce errors made by manual entry, and <u>improve on-</u>

<u>time fulfillment</u> across entire fleets."  *Id.* at ¶ 43 (internal quotations omitted) (emphasis added).

  The inferences (deductions and conclusions) from these facts nearly leap off the page.

Qualcomm specifically directs its trucking company customers to use the MCP 200 to make the

"back office" in relation to "pickups and deliveries" more efficient and "productive," meaning

that those trucking companies will not be "wasting time."  How are they to do that according to

Qualcomm?  Simple.  Integrate the product's in-cab scanning features "with <u>dispatch systems</u> to

[increase] <u>driver operational efficiency</u>".  What kind of "operational efficienc[ies]"?  Easy.

Efficiencies dealing with "load assignments," in other words, <u>where freight brought in on a truck</u>

<u>should be taken to make sure it gets to the customer as quickly as possible</u>, i.e. "improve on-time

fulfillment."  And of course, trucking companies use loading manifests to make load

assignments.

  This one example should sound all too familiar to the Court:  <u>it is the process taught by</u>

<u>the '078 Patent</u>.  Qualcomm lays it out for its customers to see, and then encourages them to use

Qualcomm's products to practice that process.  To make its motion stick, Qualcomm must

convince this Court that no reasonable fact-finder could take these statements and believe that

---

[10] R+L respectfully asks this Court to recall its presentation of the '078 Patent, and the clock used to symbolize the ultimate efficiency brought by the '078 Patent process:  no more wasted time due to waiting.

they are "suggestive of illegal conduct."  Qualcomm must establish that only the unreasonable person would form the "expectation that discovery will reveal evidence of [Qualcomm's infringement]" from these facts.  R+L respectfully asserts that Qualcomm cannot meet this burden on these facts.

R+L's Amended Pleadings also reveal one of Qualcomm's trucking customers as a likely direct infringer.  R+L alleges that Cargo Transporters advertises that each of its tractors is equipped with the MCP 200.  *Id.* at ¶ 67.  R+L also alleged that Cargo Transporters has been using the scanning function of the MCP 200 as of at least December 2, 2009, as publicly reported.  *Id.* at ¶ 65.  Furthermore, Cargo Transporters publicly stated that, using the MCP 200 to include its scanning functions, it can remain in constant contact with its drivers and can provide its "customers with up to the minute information regarding the status of their shipments."

Clearly then, Cargo Transporters is using the MCP 200 to benefit their trucking business.  And not just in a general sense, but the scanning functions of the MCP 200 as trumpeted by Qualcomm to enhance Cargo Transporters' ability to track its freight shipments at every stage of the delivery process.  One of those MCP 200 scanning functions that Qualcomm encourages its trucking company customers like Cargo Transporters to use is paired "with dispatch systems to [increase] driver operational efficiency," specifically "load assignments."  It is entirely reasonable for a fact-finder to deduce from these facts that one of the scanning functions that Cargo Transporters has publicly admitted it uses is the scanning function encouraged by Qualcomm that infringes the '078 Patent:  paired "with dispatch systems to [increase] driver operational efficiency," specifically "load assignments,"  to increase "back office" efficiency and productivity in relation to "pickups and deliveries."  To succeed at this stage, Qualcomm must

prove that no reasonable fact-finder could so conclude. To do so, that same fact-finder would have to ignore Cargo Transporters' public statements of scanning function success, and disregard her common-sense belief that businesses who successfully use the MCP 200's scanning function will use it to the fullest extent applicable to their business and certainly as encouraged by the seller (Qualcomm). Only by divorcing ourselves from our common-sense can we believe that a reasonable person could <u>never conclude</u> from these facts that Cargo Transporters is using the MCP 200 scanning functions exactly as Qualcomm encouraged: to infringe the '078 Patent.

R+L's facts and inferences pertaining to ACS are similarly reasonable and compelling. ACS offers its TripPak Mobile Scanning, which partners with PeopleNet's PACOS and BLU to transmit transportation documents wirelessly from within the truck cab. *See* Docket No. 124 at ¶¶ 35-37. ACS's TripPak Mobile Scanning has "seamless back office integration" to "eliminate[] manual sorting or filing of bills of lading." *Id.* at ¶ 39. In addition, ACS's TripPak ENTERPRISE integrates with "all major <u>dispatch system</u> vendors" and its ACS TripPak SERVICES document capture and processing options. *Id.* at ¶ 54 (emphasis added). These services allow ACS's trucking customers to "supply orders, customer, driver, and invoice data directly from <u>dispatch</u> and accounting systems." *Id.* at ¶ 56 (emphasis added). ACS's products provide its customers with a "better utilization of resources" to improve customer service (*id.* at ¶ 46), by putting documents right at the driver's fingertips. *Id.* at ¶ 56. And their trucking customers use ACS's products to "view, route and control all varieties of documents and information." *Id.* at ¶ 55.

And it appears that at least one of ACS's trucking company customers has accepted ACSs' encouragement to use ACS's products to infringe on the '078 Patent. R+L alleged that Frozen Foods Express ("FFE") publicly stated that it actually uses TripPak, along with

PeopleNet BLU, to perform in-cab scanning "to assist in the important <u>pre-planning and routing</u> <u>of LTL shipments</u>."  *Id.* at ¶¶ 62-63 (internal quotations omitted) (emphasis added).  These are powerful facts in the language of infringement.  "[P]re-planning and routing of LTL shipments" is exactly the focus of the '078 Patent process.  Through the '078 Patent, trucking companies can more effectively "pre-plan[]" their freight shipments and more quickly "rout[e]" those shipments, saving tremendous time and money.  <u>A trucking company pre-plans and routes</u> <u>shipments using advance loading manifests</u>.  Thus, FFE has publicly acknowledged using ACS's and PeopleNet's products to do just what is taught by the '078 Patent:  use in-cab scanning to streamline "pre-planning and routing of LTL shipments."  ACS must prove that no reasonable fact-finder could conclude that these facts are "suggestive of illegal conduct."  Whether as to these specific allegations or the numerous other facts and inferences detailed in the Amended Complaint, ACS cannot do so, and therefore its motion fails.

The same analysis applies to Intermec.  For example, Intermec advertises its Transportation and Logistics Solutions as providing real-time information, which, according to Intermec, improves <u>route planning</u>, scheduling and <u>dispatching</u>.  Docket No. 126 at ¶ 29.[11]  The Transportation and Logistics Solutions include "Pick Up & Delivery Options," which Intermec advertises as being "designed to help companies handle more shipments, <u>improve load and route</u>

---

[11] Intermec has repeatedly represented to the Court that its vehicle mount computers and scanners, as alleged by R+L in its Amended Complaint, are only for use in forklifts and similar 'vehicles' and are not used, sold or advertised for use with trucking vehicles.   In reality, Intermec continues to advertise the software and hardware that R+L specified in its Amended Complaint for use with trucks and tractor-trailers.  For example: (a) the introduction to Intermec's Pickup and Delivery brochure highlights the use of its products for recording and tracking bills of lading, "*Tracking pickup* and securing timely proof of delivery is as important as successfully delivering the shipment on time…" (emphasis added) (Docket No. 126, Exhibit J); (b) Intermec then highlights the value of tracking pickup information to " help companies […] *improve load and route planning…*" (emphasis added) (*Id.*); (c) Intermec specifies that its CV60 computers are specifically designed for installation in not only vehicles but also trailers (Docket No. 126, Exhibit F); (d) Intermec sells its SR61ex handheld scanner to trucking companies to "capture images, signatures and documents" and specifically highlights the SR61ex's "Industry Applications" to include "Transportation and Logistics" (Docket No. 126, Exhibit H); (e) Intermec highlights In-Transit Visibility as a key part of its Transportation and Logistics Solutions for customers that specifically provides "*real-time information from the road*" to improve planning and scheduling operations (Docket No. 126, Exhibit I).   None of these advertised uses are suitable for forklifts, and clearly contemplate use in trucks and tractor-trailers.

planning, eliminate shipment issues, and streamline the dispatcher and driver relationship with real-time wireless communications." *Id.* at ¶ 30 (internal quotations omitted). The Transportation and Logistics Solutions also include "In-Transit Visibility" which enables drivers to "record deliveries, maintain a running status of delivery activity and communicate that information to their back office systems in real time." *Id.* at ¶ 33. Both the Pick Up & Delivery Options and In-Transit Visibility services are designed to provide customers with dispatch and route optimization, load management, and package pickup and delivery status. *Id.* at ¶¶ 32, 35. Finally, Intermec's Transportation and Logistics Solutions also includes "Cross Dock & Logistics" services, which "integrate dock workers and freight management systems, allowing companies to significantly reduce the number of times operators handle the shipments." *Id.* at ¶ 38 (emphasis added). This service provides Intermec's customers with applications for load management, asset utilization, cross dock supervision, labor productivity, and loading/unloading of trucks. *Id.* at ¶ 40.

It takes little effort to reveal Intermec's words of encouragement as the process taught by the '078 Patent. Intermec encourages its customers to use its product for route planning and dispatching so that those "load and route planning" functions can be streamlined. One way Intermec encourages its trucking customers to do that is to send that "load and route planning" information to "their back office systems in real time," i.e. in-cab scanning. Using Intermec's products this way allows both dispatch and route optimization and improved load management. A trucking company's "load" is its freight, and freight "management" in the context of "dispatch and route optimization" means where does each piece of freight need to go to get to its ultimate destination, and how do I most efficiently get it there.

Indeed, Intermec specifically encourages the use of its product in a process focused on "Cross Dock & Logistics" services.  Cross Dock services in the context of a trucking company means <u>how and when do I get this piece of freight across the dock to the next truck on which it must be transported</u>.  The "logistics" of "Cross Dock" services is the method by which a trucking company tells its employees which box must go on which truck and when, i.e. loading and unloading trucks using loading manifests.  Accordingly, a reasonable fact-finder could conclude that Intermec's Transportation and Logistics Solutions are specifically made or adapted for use in practicing the '078 Patent.  To have this Court rule otherwise, Intermec would be required to prove that no reasonable person could conclude from these facts that Intermec is encouraging its trucking company customers to use its Transportation and Logistics Solutions to practice the '078 Patent.  R+L respectfully suggests that such a conclusion would be error.[12]

R+L's Amended Counterclaim as to DriverTech also steadfastly alleges facts and inferences from which a reasonable person could form an "expectation that discovery will reveal evidence of [infringement]."  As but one example, R+L alleges that the DT4000 Truck PC, along with DTScan In-Cab Scanning Solution provides in-cab scanning of proof of delivery and other documents and wireless transmission of those documents via wi-fi or cellular networks.  *See* Docket No. 121 at ¶¶ 24-25, 29.  DriverTech's products are designed to "improve asset utilization" and "driver productivity" by allowing truck drivers to "work more efficiently and save [the customer] money."  *Id.* at ¶ 15.  Furthermore, DriverTech partners with McLeod Software ("McLeod"), which DriverTech describes as "the leading provider of dispatch,

---

[12] As R+L has previously advised the Court, it cannot at this time identify in good faith a specific direct infringer that uses Intermec's product.  While R+L believes that it has alleged sufficient facts from which a reasonable person could infer the existence of a direct infringer, R+L respects this Court's ruling that this direct infringer must be specifically identified.  Nonetheless, the lack of an identified direct infringer as to Intermec does not affect the fact that R+L has plead facts and reasonable inferences from which a reasonable person could conclude that Intermec is encouraging infringement of the '078 Patent.  If the Court agrees, R+L respectfully asks for such a ruling so that the issues on appeal can be subsequently narrowed.

accounting and imaging software to the trucking industry." *Id.* at ¶ 47.  R+L also alleges that, according to public statements made by DriverTech, Interstate Distributor Company uses DriverTech DTScan In-Cab Scanning, in combination with dispatch software from its partner McLeod, in its fleet to scan documents and to "[e]liminate wait time." *Id.* at ¶¶ 58-59.  As DriverTech's CEO points out, "[s]canning proof of delivery documents with DTScan . . ., transmitting images and invoicing customers as the vehicle departs can result in a dramatic reduction in [days sale outstanding]." *Id.* at ¶ 50.  He further adds that "[t]he ability to scan documents in the cab of the truck provides carriers with a significant operational efficiency." *Id.* at ¶ 68.

The reasonable inference drawn by R+L from these facts is that Interstate Distributor has used DriverTech's DTScan In-Cab Scanning with McLeod software to practice the '078 Patent. It is more than reasonable to conclude that the "wait time" eliminated by Interstate Distributor's use of DriverTech's In Cab Scanning combined with McLeod dispatch software is due to the preparation of advance dispatch loading manifests.  Indeed, DriverTech openly advocates for its trucking company customers to use its In Cab Scanning to scan "proof of delivery documents" to improve "operational efficiency."  It is entirely reasonable to infer from these statements that the scanned "proof of delivery documents" that DriverTech encourages its customers to transmit using its product will improve "operational efficiency" through the use of dispatch software from DriverTech's partner McLeod to prepare advance loading manifests to eliminate "wait time."

These inferences are only bolstered by the fact that Interstate Distributor has not denied using DriverTech's technology, nor has it sought to dismiss R+L's patent infringement action. Furthermore, Interstate Distributor has never attacked the sufficiency of R+L's allegations of

direct infringement.[13] A reasonable fact-finder could infer that Interstate Distributor is directly infringing the '078 Patent with the use of DriverTech's products and services, and with DriverTech's encouragement.

**D.    The Law Could Not Be Any Clearer that As Adapted, the Indirect Infringers' Products Have No Substantial Non-Infringing Use**

At the outset, the question of whether an accused device has a substantial non-infringing use is a fact-intensive inquiry that is determined on a case-by-case basis. *See Cross Med. Prods., Inc. v. Medtronic Sofamor Danke, Inc.*, 424 F.3d 1293, 1321 (Fed. Cir. 2005); *Mentor H/S Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365, 1379 (Fed. Cir. 2001); *Imagexpo, LLC v. Microsoft Corp.*, 284 F. Supp. 2d 365, 367-68 (E.D. Va. 2003). For each accused device, the fact-finder must determine whether there is substantial non-infringing use that is "not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2007). Furthermore, to answer the question of whether there is a substantial non-infringing use, the court must necessarily complete claim construction to determine what constitutes infringement. *See, e.g.*, *ADC Telecomm, Inc. v. Switchcraft, Inc.*, No. 07-1423, 2008 WL 2415375 at *2 (Fed. Cir. June 16, 2008); *Aquatex Indux., Inc. v. Techniche Solutions*, 419 F.3d 1374, 1380 (Fed. Cir. 2005); *Wyeth v. Sandoz, Inc.*, ___, F. Supp. 2d ___, No. 5:07-cv-234, 2010 WL 1404064 at *13 (E.D.N.C. Mar. 12, 2010). Accordingly, the Indirect Infringers' argument is premature, at best.

As the Court has recognized, liability under Section 271(c) is predicated, in part, on the use of the Indirect Infringers' products in "practicing a patented process . . . [that is] not a staple

---

[13] This is important context to the DriverTech motion. DriverTech argues that the Amended Counterclaim does not sufficiently allege facts to conclude that Interstate Distributor is a direct infringer. Yet, at the same time, R+L is pursuing a claim of direct infringement against Interstate Distributor that all have accepted as sufficiently plead. DriverTech would have this Court rule that despite this pending and ongoing sufficiently plead litigation against its direct infringer, no direct infringer is sufficiently identified in the Amended Counterclaim. As the end-result of DriverTech's arguments, this bizarre outcome only proves that DriverTech is singularly focused on getting out of this case, not on logically applying the law.

article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c). Though R+L recognizes that scanners, processors, and software have uses separate and apart from practicing the '078 Patent, the proper inquiry does not stop there. The law is absolutely clear that when products capable of other uses—such as the ones at issue here—are specifically adapted by combining them with other devices to infringe a process patent, those products have no substantial non-infringing uses. *Hodosh v. Block Drug Co.*, 833 F.2d 1575, 1579-80 (Fed. Cir. 1987).

Indeed, adaptation can take many forms, and is itself a factual intensive inquiry. Whether a product has been adapted by changing its internal operating structure or components, or whether a product has been adapted by externally marrying it to other things that allow the product to do something that it cannot do standing alone, <u>the product has been adapted</u>. Then, the focus is not on the original product, but on the product so adapted. This is the principle taught by *Hodosh*, and it utterly defeats the Indirect Infringers' argument.

1.  *<u>The Federal Circuit's Holding in Hodosh and Its Progeny Establishes
    That Once Individual Products Are Adapted to Practice a Method Patent,
    It Does Not Matter if The Product Has Other Non-Infringing Uses</u>*

The Federal Circuit's holding in *Hodosh* is directly on point. In *Hodosh*, the plaintiff developed a patented process for desensitizing teeth with toothpaste containing potassium nitrate. The plaintiff asserted contributory infringement against the defendant, who sold toothpaste with potassium nitrate so its customers could desensitize their teeth using the plaintiff's patented process. *Hodosh*, 833 F.2d at 1576-77. The defendant suggested that because potassium nitrate has other uses apart from desensitizing teeth, it could not be held liable for contributory infringement. *Id.* at 1579. The Federal Circuit rejected that argument.

Like the Indirect Infringers here, the defendant in *Hodosh* wanted the court to focus on the potassium nitrate, the "ingredient" in the toothpaste. But the "ingredients" were not at issue

31

in this context.  Instead, the proper issue was whether the "ingredients" were mixed and combined together to create a product that could be used to infringe the process patent.  For example, when the defendant mixed the otherwise non-infringing ingredient (the potassium nitrate) with other items, it created a toothpaste.  That toothpaste was used by customers to desensitize their teeth.  The customers' actions of desensitizing their teeth was a direct infringement of the *Hodosh* patent.  By providing the product that allowed its customers to infringe the *Hodosh* patent, the Federal Circuit found that there was a factual issue as to whether the defendant was liable for contributory infringement.  *See id.* at 1578.

In the course of announcing this holding, the Federal Circuit emphasized that the § 271(c) inquiry looks at the final product that is used to infringe the process patent, not the individual ingredients that make up the final product.  In *Hodosh*, the toothpaste was the final product that was used to directly infringe the process patent, not the potassium nitrate.  Put another way, the consumers of toothpaste directly infringed the *Hodosh* patent by desensitizing their teeth.  But it was the toothpaste that enabled them to directly infringe the patent.  Because the toothpaste assembled by the defendants and offered to their customers had no substantial non-infringing use, the defendant could be held liable for contributory infringement for providing the toothpaste and encouraging its customers to use it in an infringing manner.  *Id.* at 1578.  In coming to this holding, the Federal Circuit relied heavily upon the legislative intent behind § 271.  *See Hodosh*, 833 F.2d at 1578 n.10, citing *Hearings on H.R. 3760 Before Subcomm. 3 of the House Comm. on the Judiciary, 82nd Cong., 1st Sess., 155-156* (1955).  The Indirect Infringers liability is similarly a fact question in this case.

2.      *The Indirect Infringers' Products, when Adapted and Bundled to Perform the '078 Patent, Have No Substantial Noninfringing Use*

Though the Indirect Infringers endeavor mightily to confuse the issue with irrelevant arguments, they cite to no law contradicting *Hodosh*.  As described above, the proper inquiry is not whether the scanners, processors, and imaging software (e.g., the "ingredients") have other legitimate uses, but whether they are combined or adapted into a process that infringes the '078 Patent.  In other words, advocating for and knowing that the scanners, processors, and imaging software will be combined in a manner that direct infringers will use to specifically practice the '078 Patent, are the suppliers of the scanners, processors, and imaging software potentially guilty of a contributory infringement?  The answer is undeniably "yes."  At a minimum, that is a fact question to be addressed after claim construction.

The Indirect Infringers' contention that, because scanners or processors have other uses, they can never be liable for indirect infringement, even if they knowingly adapt their products through combination and actively encourage their customers to practice the '078 Patent, is just plain wrong.  That position turns patent law upside down, and nullifies the Federal Circuit's holding in *Hodosh* and the legislative intent behind § 271.  Under the Indirect Infringers' view, infringers would always have a way to escape liability simply by packaging and bundling devices capable of practicing a method patent with products that have non-related uses.  That is precisely the result that patent law tries to avoid.  *Ricoh v. Quanta Computer, Inc.*, 550 F.3d 1325, 1337-38 (Fed. Cir. 2008) (rejecting a rule that would allow a "competitor who wished to sell hardware that would enable infringement of a patent process . . . without incurring liability for contributory infringement by selling a device that simply embedded the hardware for practicing the patented process within other hardware that also performs another [noninfringing] process").  The Federal Circuit has agreed that "[u]nder such a rule, evasion of the protection

intended by enacting § 271(c) would become rather easy." *Id.* at 1337.

Once revealed, this strong legal principle defeats the Indirect Infringers' reliance on their ability to scan the pictures of their grandchildren on their products, or the ability to transmit receipts, to avoid liability. Those non-infringing uses do not defeat, at this stage of the case, the infringing use created by the adaptations specifically plead in the Amended Pleadings. According to the Federal Circuit, an intent to infringe can be inferred when a product has been adapted or includes a component that infringes a patent, even where combined into a device with other non-infringing uses. *Ricoh*, 550 F.3d at 1337. It therefore does not matter if any of the Indirect Infringers' products have non-infringing uses when those same devices have been adapted so as to enable the infringement of the '078 Patent. In that instance, there is contributory liability under section 271 regardless of their non-infringing attributes. As the court in *Ricoh* stated, giving credence to the Indirect Infringers' substantial non-infringing argument "would do what *Hodosh* forbade: it would insulate an infringing item by focusing only on its non-infringing component." *Id.* at 1339.

Moreover, the Indirect Infringers try to confuse the issue by referring to the '078 Patent as if it was a patent over a device or product. It is not. The '078 Patent is a process patent. A process patent is infringed when others practice the method taught. Scanners, processors, and software do not infringe a method patent. But the use of scanners, processors, and software to practice the patent constitutes infringement. *See id.* at 1340 ("It does not follow from *Hodosh* that the inclusion of a component with substantial noninfringing uses in a product that contains *other* components useful only to infringe a process patent can or should defeat liability for contributory infringement under § 271(c)."). The Amended Pleadings, accusing the Indirect

34

Infringers actively encouraging their customers to use their products to specifically practice the '078 Patent, state a claim for contributory infringement.

"The drafters of [section 271] explicitly recognized that without protection from contributory infringers, owners of method patents, [like R+L], would have no effective protection."[14] *Hodosh*, 833 F.2d at 1575. The relevant factual inquiry is whether the Indirect Infringers' respective products (scanners, software, etc…) "constitute[] a material part of the invention and is known by the accused to be especially made or adapted for use in infringing the patent." *Id*. at 1578. Moreover, whether, as alleged in the amended pleadings, any of the accused devices were especially adapted to practice the '078 Patent, regardless of their other non-infringing uses, is a question of fact. *Ricoh*, 550 F.3d at 1340. It is therefore not possible at the pleading stage to reach those conclusions for two important reasons. First, the inquiry is a factual one. Second, the patent terms must be construed by this Court before a determination can be made concerning what is "material" to practicing the patent.

**E.      Only One Actor—the Indirect Infringer's Customer—Is Needed to Directly Infringe the '078 Patent**

Despite their insistence on being direct infringers, R+L has always maintained that the *Indirect* Infringers are liable for contributory infringement and active inducement of infringement. Their customers, on the other hand, such as Berry & Smith Trucking Ltd., Interstate Distributor Co., Pitt Ohio Express, Inc., Cargo Transporters, Inc. and Frozen Foods Industries Express, Inc., as alleged in the Amended Pleadings, are each directly infringing the '078 Patent. Those customers are the sole actors who provide the portable image processors to

---

[14] The court's observation was made in response to a suggestion, much like has been made in this case, that the patentee should simply find and sue all practitioners of the practiced method. Referring to the legislative history of section 271, the court aptly recognized that such a suggestion was both impractical and undesirable. *Hodosh*, 833 F.2d at 1578, nn. 10-11. Indeed, as the *Ricoh* court further recognized, it is impossible to enforce rights effectively against all direct infringers, and the only practical alternative is to enforce them against contributory infringers, which is the fundamental purpose of contributory infringement liability. *Ricoh*, 550 F.3d at 1338.

their fleet (purchased from the Indirect Infringers) and who place packages on the transporting vehicle. *See* R+L's Memorandum in Opposition to Motions to Dismiss, dated January 25, 2010 (Docket No. 101) at p. 12. It is simply not true that the sole independent claim of the '078 Patent requires at least two actors. R+L's position is, and always has been, that the Indirect Infringers' customers individually perform all of the steps of the '078 Patent.

The Indirect Infringers disingenuously obfuscate R+L's position by relying on a purely semantic argument. Though the Indirect Infringers sell their products to their customers and, therefore, in a sense, "provide" the products to their customers, the act of selling those products does not amount to the underlying act of direct infringement. Rather, the customers who buy from the Indirect Infringers are the direct infringers who "provid[e] a portable image processor capable of wirelessly transferring the image from the transporting vehicle." By way of analogy, a supermarket does not provide food for a family. Rather, the heads of a household provide food for their family by buying food from the supermarket. Even assuming that the Indirect Infringers' argument is not entirely pretext, it, at the very least, underscores the need and importance of claim construction to resolve these actions. In any event, this re-cast argument is no more now a proper grounds to dismiss the Amended Pleadings than when it was previously offered by the Indirect Infringers and rejected by the Court.

IV.    <u>**CONCLUSION**</u>

For the foregoing reasons, R+L respectfully requests that the Court deny in its entirety the Indirect Infringers' Joint Motion to Dismiss, and grant any such further relief as the Court deems just and proper.

Respectfully submitted,


_____/s/ Anthony C. White_____
Anthony C. White          (0062146)
O. Judson Scheaf, III      (0040285)
Philip B. Sineneng         (0083406)
THOMPSON HINE LLP
41 South High Street, Suite 1700
Columbus, Ohio  43215-6101
Tel:    (614) 469-3200
Fax:    (614) 469-3361
Tony.White@ThompsonHine.com
Jud.Scheaf@ThompsonHine.com
Philip.Sineneng@ThompsonHine.com


Megan D. Dortenzo          (0079047)
Troy S. Prince             (0077443)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH  44114
Tel:    (216) 566-5500
Fax:    (216) 566-5800
Megan.Dortenzo@ThompsonHine.com
Troy.Prince@ThompsonHine.com


*Attorneys for Plaintiff/Counterclaim-Defendant*
*R+L Carriers, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 11, 2010, I filed the foregoing *R+L Carriers Inc.'s*

*Memorandum of Law in Opposition to Defendants' Joint Motion to Dismiss* with the Clerk of

Court through the CM/ECF System, which will provide notification to all counsel of record.


               /s/ Philip B. Sineneng
               Philip B. Sineneng