UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: Bill of Lading Transmission and Processing System Patent Litigation. | : : : : : : : : : : : : : : : : : | MDL  Docket No. 1:09-md-2050 |
| _____ |  |  |
| THIS DOCUMENT APPLIES TO: |  | Case No. 2:10-cv-90 |
| R&L Carriers, Inc., |  |  |
|        Plaintiff, |  |  |
| v. |  |  |
| Pitt Ohio Express, Inc., |  |  |
|        Defendant. |  |  |

**ORDER**

This matter is before the Court on Defendant Pitt Ohio Express, Inc.'s motion for

summary judgment (Doc. No. 239).  For the reasons that follow, Defendant's motion for

summary judgment is well-taken and is **GRANTED.**

**I. <u>Background</u>**

Plaintiff R&L Carriers, Inc. ("R&L") is the owner of U.S. Patent No. 6,401,078 ("the

'078 Patent").  The '078 Patent claims a method for improving the efficiency of operations for

less-than-a-load ("LTL") carriers[1] centered on scanning and transmitting bills of lading from the

_____

[1]        The specification explains in general how LTL carriers operate.  '078 Patent
(Doc. No. 1-1), col. 1, ll. 32-48.  Essentially a local driver picks up many individual packages
from a number of customers and returns them to a distribution center.  There, the packages are
unloaded from the truck and grouped with other packages heading in the same general direction

cab of a truck.  The claimed method has six steps, which the Court paraphrases here for purposes of the instant motion: 1) placing a package on a transporting vehicle; 2) scanning an image of the package's documentation data with a portable document scanner; 3) providing a portable image processor capable of wirelessly transmitting the image of the documentation data image, 4) wirelessly sending an image of the documentation data to a remote processing center; 5) receiving an image of the documentation data at a remote processing center; and 6) prior to the package being removed from the transporting vehicle, using the documentation data received at the remote processing center to prepare a loading manifest which includes the package for further transport on another vehicle.  '078 Patent col. 13, ll. 40-48, col. 14, ll. 1-13.  The gist of the claimed method is to "automate[] the process of receiving transportation documentation and producing advance loading manifests therefrom to optimize load planning and dynamic product shipment and delivery control."  '078 Patent, Abstract.

R&L has sued Defendant Pitt Ohio Express, Inc. ("Pitt Ohio"), another LTL carrier, for direct infringement of the '078 Patent.  To prevail on a claim for direct infringement of a method patent, the patentee must prove that the defendant practiced each step of the claimed method. *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1333 (Fed. Cir. 2008) ("Infringement of a method claim occurs when a party performs all of the steps of the process[.]") (internal quotation marks omitted).  Pitt-Ohio argues that it is entitled to summary judgment because there is no evidence that it has practiced the last step of the '078 Patent, i.e., using the documentation data received at the remote processing center to prepare a loading manifest which includes the package for further transport on another vehicle.

---

and re-loaded on a different truck for transportation and ultimately delivery.

The Court described Pitt-Ohio's normal method of operation in its recent order denying

R&L's motion to defer ruling on the motion for summary judgment:

> The record reflects that Pitt Ohio uses Peoplenet g3 onboard computers in its trucks. When a Pitt Ohio driver picks up a package from a customer, he keys the relevant shipping data into the computer and a message is transmitted to the distribution center. Based on the message, the distribution center prepares a "stripping sheet" which the dock workers use to plan the next movement of the package. When the driver arrives at the distribution center, he scans the bill of lading into Pitt Ohio's imaging system. The image is then transmitted to the billing department where an invoice is prepared and sent to the customer. Sullivan Dep. at 28-31. As described, this process does not infringe the '078 Patent because it does not practice several of the claimed steps. The shipping data is keyed into the computer system, not scanned, and thus there is no scanning, processing, and transmitting of images of the documentation data to the remote processing center.

Doc. No. 255, at 2-3. The Court then described what is essentially is the only infringing activity

alleged on the part of Pitt Ohio:

> It is not disputed that in February and March 2009 Pitt Ohio explored the feasibility of using in-cab scanners in its operations. According to Scott Sullivan, Pitt Ohio's Rule 30(b)(6) witness, Pitt Ohio obtained a Microdea in-cab scanner from Peoplenet. Pitt Ohio first set up the scanner in an office cubicle and scanned some bills of lading into a test database. The purpose of this test was to evaluate image quality. Sullivan Dep. at 34. On March 26, 2009, Pitt Ohio conducted what might be called a "live test" of in-cab scanning. While a Pitt Ohio driver was going about his normal route, another Pitt Ohio employee rode along with the Microdea scanner in his lap. This employee scanned bills of lading in the cab and transmitted them to another Pitt Ohio employee in the IT department, Brendan Piovesan. Sullivan Aff. (Doc. No. 239-1) ¶¶ 3-5. According to Sullivan, the purpose of this test was to determine the feasibility of transmitting bills of lading to the billing department. Id. ¶ 4; Sullivan Dep. at 34. Otherwise, the Pitt Ohio driver followed the normal procedures and Sullivan avers that Pitt Ohio did not use the scanned images to create loading manifests. Sullivan Dep. at 33; Sullivan Aff. (Doc. No. 239-1) ¶ 5. Pitt Ohio then prepared a feasibility report which indicated that image quality from scanning was acceptable and recognized some advantages that could accrue from implementing in-cab scanning. Doc. No. 243-1. In June 2009, however, Pitt Ohio decided not to implement in-cab scanning and returned the Microdea scanner to Peoplenet. Sullivan Aff. (Doc. No. 239-1) ¶ 6. According to R&L's own evidence, Pitt Ohio scanned a total of 140 pages of documents during the entire period it was evaluating in-cab scanning. Ruskin Aff. (Doc. No. 253-6) ¶ 16. Pitt Ohio has provided the Court and R&L with affidavits swearing that it never has used in-cab scanning in its regular operations and has no future intention of implementing in-cab scanning. Sullivan Aff.

-3-

(Doc. No. 239-1) ¶¶ 8-12.

*Id.* at 3-4.  In summary, Pitt Ohio's evidence shows that it explored using in-cab scanning of bills of lading in a discrete and limited fashion.  Pitt Ohio actually scanned and transmitted bills of lading to a remote processing center, but it did not use the documentation data from the transmitted bills of lading to prepare a loading manifest.  Pitt Ohio's evidence shows, therefore, that it did not perform the final step of the '078 Patent.  As the Court explains further in Part V, *infra*, R&L has not adduced any evidence which creates a genuine issue of fact whether Pitt Ohio has ever performed the final step of the claimed method.

## II. <u>Summary Judgment Process in a Patent Infringement Case</u>

Patent infringement analysis comprises of two steps: (1) claim construction to determine the scope and meaning of the asserted claims, and (2) a comparison of the properly construed claims with the allegedly infringing device or method to determine whether the device or method embodies every limitation of the claims.  *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429 (Fed. Cir. 2000).

## III. <u>Claim Construction</u>

This case has not proceeded through completion of the formal claim construction process.  Pitt Ohio argues, however, that R&L cannot prove that it has performed the last step of the claimed method under *any* construction of the '078 Patent.  In ruling on Pitt Ohio's motion for summary judgment, therefore, it is appropriate for the Court to adopt the definitions of the terms at issue proposed by R&L in its opening claim construction brief.  *See* Doc. No. 255 at 5 ("Thus, if in ruling on the motion for summary judgment, the Court utilizes R&L's proposed construction of the claims or terms at issue, it cannot be prejudiced if the ruling on the motion

precedes the completion of the formal claim construction process.") (citing *Cybersource Corp. v. Retail Decision, Inc.*, 620 F. Supp.2d 1068, 1073 (N.D. Cal. 2009)).

The last step of the claimed method states:

> prior to the package being removed from the transporting vehicle, utilizing said documentation data at said remote processing center to prepare a loading manifest which includes said package for further transport of the package on another transporting vehicle.

'078 Patent, col. 14, ll. 7-11. The relevant terms in this claim are "package," "transporting vehicle," "documentation data," "remote processing center," and "loading manifest." R&L's definitions for these terms, which the Court adopts for purposes of Pitt Ohio's motion for summary judgment, are as follows:

"**package**" - any item or cargo to be shipped, including an individual item or group of items that together constitute a shipment with a bill of lading or shipping contract.

"**transporting vehicle**" - any truck, trailer, container, vessel or craft used for the movement of the shipment.

"**documentation data**" - the information pertaining to the shipment (whether in paper or electronic form), including but not limited to the "**shipping documentation data**." R&L defines "**shipping documentation data**" as "the information contained in the shipment paperwork (whether in paper or electronic form), including but not limited to the bill of lading."

"**remote processing center**" - A physical location, other than the "**transporting vehicle,**" that receives and processes data transmission information. This can be a trucking company location or a third-party location.

"**loading manifest**" - The document(s) or instructions to workers at a destination, informing the workers that a particular "**package**" needs to be placed on a particular "**transporting vehicle**"

for further shipment.  *See* Doc. No. 238, at 4-5.

IV. <u>Summary Judgment Standard of Review</u>

The law of the regional circuit applies to motions for summary judgment in a patent infringement case.  *Arthur A. Collins, Inc. v. Northern Telecom, Inc.*, 216 F.3d 1042, 1047-48 (Fed. Cir. 2000).

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An assertion of a undisputed fact must be supported by citations to particular parts of the record, including depositions, affidavits, admissions, and interrogatory answers.   The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation omitted).

The Court is not duty bound to search the entire record in an effort to establish a lack of material facts.  *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 404 (6th Cir. 1992).  Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment," *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute.  *Anderson,* 477 U.S. at 250.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor.  *United States v. Diebold Inc.*, 369

U.S. 654, 655 (1962).

The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The court must assess "whether there is the need for trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. "If the evidence is merely colorable, ... or is not significantly probative, ... the court may grant judgment." *Anderson,* 477 U.S. at 249-50 (citations omitted).

V. <u>Analysis</u>

It is plain that when Pitt Ohio follows its normal operating procedures it does not literally infringe the '078 Patent, most obviously because Pitt Ohio uses the PeopleNet g3 computer to send typed messages containing the package's shipping data to the remote processing center instead of scanning and transmited an image of the documentation data to the remote processing center. R&L concedes as much in its memorandum in opposition. *See* Doc. No. 241, at 13 ("[B]efore implementing in-cab scanning, Pitt Ohio was using PeopleNet's g3 to practice *most* of the steps of the '078 Patent, *with the exception of in-cab scanning*.") (emphasis added). It is further evident that, absent sufficient rebuttal evidence from R&L, Pitt Ohio did not literally infringe the '078 Patent during its in-cab scanning tests in February and March 2009. Pitt Ohio scanned and transmitting images of shipping documentation data and transmitted said images to a remote processing center during the test, but Pitt Ohio did not in turn use the shipping documentation data to create a loading manifest. Sullivan Dep. at 33; Sullivan Aff. (Doc. No. 239-1) ¶ 5. Thus, the in-cab scanning test did not perform the last step of the claimed method.

While the test was carried out using real bills of lading collected when Pitt Ohio's driver was going about his actual pickup and delivery route, the driver followed Pitt Ohio's normal procedures in transmitting the package's shipping information to the remote processing center. *See id.* As already stated, in Pitt Ohio's normal or standard operating procedure, the driver keys the shipping data into the on-board computer and a message with the information is transmitted to the remote processing center. Sullivan Dep. at 28-31. Thus, Pitt Ohio's evidence shows that it has not infringed the '078 Patent because it has not performed each step of the claimed method.

None of the evidence proffered by R&L creates a genuine issue of material fact whether Pitt Ohio performed the last step of the claimed method. The Court takes up this evidence seriatim.

A. The White Paper

At some time in or around 2007, PeopleNet published a white paper touting Pitt Ohio's conversion to PeopleNet's g3 on-board computer to improve the efficiency of its trucking operations. Doc. No. 243, at 38-45. A "sidebar" to the white paper notes the "process improvement steps" for Pitt Ohio by using the g3 system. R&L calls this white paper a "road map to Pitt Ohio's efforts to practice the '078 Patented Process." Doc. No. 241, at 7. The white paper, however, is not literally a road map to practicing the '078 Patent and, moreover, it cannot even be reasonably construed as a road map to practicing the patent.

The first problem that R&L has, however, is that the white paper is hearsay as to Pitt Ohio. R&L is offering the white paper as evidence that Pitt Ohio has practiced the claimed method. Pitt Ohio, however, did not author the white paper, and there is no evidence that Pitt

-8-

Ohio adopted the white paper as being true, so it cannot be considered the statement of a party-opponent. Fed. R. Evid. 801(d)(2). The white paper, therefore, is hearsay, Fed. R. Evid. 801(c), and the Court is unaware of any exception to the hearsay rule that might make the white paper admissible as substantive evidence that Pitt Ohio practiced the claimed method. R&L cannot withstand Pitt Ohio's motion for summary judgment by relying on hearsay. *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997) (in ruling on a motion for summary judgment "hearsay evidence . . . must be disregarded.").

Even if the white paper could clear the hearsay hurdle, it does not remotely suggest that Pitt Ohio used or uses the g3 computer to practice the '078 Patent. Indeed, the sidebar specifically states that a Pitt Ohio driver "*sends a message* that contains load information - PRO number, pieces, weight, destination, zip, and any miscellaneous remarks at the time of loading. This information is used to populate the dispatch assistant program for linehaul planning purposes." Doc. No. 243, at 44 (emphasis added). In other words, the white paper indicates, consistent with Scott Sullivan's testimony, that Pitt Ohio creates loading manifests based on messages keyed into the on-board computer by the driver. Similarly, in his deposition, PeopleNet CEO Ron Konezny confirmed that the white paper does not address on-board scanning of bills of lading. Konezny Dep. at 60 (Doc. No. 241-4, at 10). The claimed method, however, requires both scanning an image of the documentation data and transmitting the image of the documentation data to the remote processing center. '078 Patent, col. 13, ll. 46-48, col. 14, ll. 4-5. According to R&L's proposed claim construction, "scanning an image" requires "convert[ing] a physical document, in whole or in part, into an electronic reproduction of the document." *See* Doc. No. 238, at 5. R&L has not produced any evidence that "sending a

message" with the shipping documentation data included in the message is the same as converting a physical document into an electronic reproduction of the document itself or that it otherwise falls within the claim construction proposed by R&L. Thus, the white paper does not describe practicing the claimed method.

## B. The Paramount Meeting

R&L has submitted the affidavit of Paramount Transportation Logistics Services, L.L.C. Vice President Robert A. Bowman as evidence that Pitt Ohio has infringed the '078 Patent. According to Bowman, in February 2009, he attended a sales meeting with PeopleNet CEO Ron Konezny and PeopleNet regional sales manager Rich Kurtz in which they were promoting using the Microdea in-cab scanner in combination with the PeopleNet g3 on-board computer to Paramount. Bowman Aff. (Doc. No. 241-1) ¶ 7. Bowman claims that during this meeting Kurtz and Konezny identified Pitt Ohio as a PeopleNet client who was using the g3 computer and the Microdea scanner to scan documents, including bills of lading. *Id.* Bowman's affidavit, which R&L offers to prove that Pitt Ohio practiced in-cab scanning, is classic hearsay and not admissible to prove that Pitt Ohio infringed the '078 Patent. Fed. R. Evid. 801(c); *U.S. Structures*, 130 F.3d at 1189.

## C. The Power Point Presentation

Scott Sullivan, Pitt Ohio's CFO, created some power point presentations. One of the slides of the presentation shows a circular flow chart depicting what could be called core elements of Pitt Ohio's business. *See e.g.*, Doc. No. 249-1, at 76. These core elements are represented by symbols within balloons denominated "Strategy," "Technology," "Organization," and "Business Processes." The symbol for the "Technology" balloon is a computer. Sullivan

and Pitt Ohio state that the computer symbol is nothing more than a clip art representation of a laptop computer that comes standard in the Microsoft Office 1997 software package. R&L is persuaded, however, that this computer icon is actually a photograph of its Mobile Data Terminal ("MDT"), which its drivers use for in-cab scanning.  According to R&L's computer expert, Microsoft Office 1997 does not include this computer image.  R&L contends further that there are a number of points of comparison between the clip art image and its MDT which indicate that the clip art image is really a photograph of its MDT. *See* Crandall Dec.  (Doc. No. 241-6).  Pitt Ohio counters that Sullivan's use of this clip art image predates his employment with Pitt Ohio, going back in fact to 2001 when he was employed by Kellogg Company. Sullivan Dec. (Doc. No. 239-3) ¶¶ 22-26.

The idea that Sullivan somehow obtained a photograph of R&L's MDT and decided to use it in a number of Power Point presentations is fanciful at best, particularly in light of Pitt Ohio's evidence that Sullivan has been using the same image for many years, and in fact prior to his employment with Pitt Ohio.  The theory raises a number of unanswered questions, not the least of which is where would Sullivan have obtained a photograph of R&L's MDT in the first place?  It is, frankly, a highly implausible scenario.

The Court, nevertheless, will credit R&L's theory that the image in Sullivan's Power Point presentation is R&L's MDT.  Giving R&L the benefit of the doubt on this point, however, does not save it from summary judgment.  As Crandall's declaration indicates, R&L's MDT is used to execute the scanning and transmitting steps of the '078 Patent.  Crandall Dec. (Doc. No. 241-6) ¶ 5.  Pitt Ohio's motion for summary judgment, however, is addressed to the final step of the patented process, using the scanned image of the bill of lading to prepare a loading manifest.

The fact that Pitt Ohio depicted a scanner and transmitter in a Power Point presentation does not create a reasonable inference that Pitt Ohio created loading manifests as claimed by the last step of the method, particularly in light of Pitt Ohio's undisputed evidence that, except for brief testing in 2009, it has never used in-cab scanning in its operations. Indeed, it would take an impermissible stacking of inferences to conclude that Pitt Ohio performed the last step of the process based on the image of the MDT. A factfinder would have to infer that because Pitt Ohio used an image of the MDT in Power Point presentations, it therefore - despite all evidence to the contrary - employed in-cab scanning in its operations. The factfinder would have to then infer further that because Pitt Ohio used in-cab scanning it also used the scanned images to create loading manifests. These leaps of logic are simply too great. *Gregg v. Ohio Dept. of Youth Serv.*, 661 F. Supp.2d 842, 859 (S.D. Ohio 2009) ("While courts are required to draw every reasonable inference in favor of the party opposing summary judgment, they are not permitted to stack inference upon inference to preserve an issue for the jury."). A reasonable factfinder could not conclude, nor would it be permitted to conclude, that Pitt Ohio practiced the final step of the method based on Pitt Ohio's alleged use of the image of the MDT in Power Point presentations.

### D. The Expert's Report

R&L has submitted the affidavit of its transportation and logistics expert, Lee Clair, in opposition to Pitt Ohio's motion for summary judgment. Doc. No. 243, at 2-11. After reviewing Mr. Clair's affidavit, the Court concludes that it fails to create any issue of material fact as to whether Pitt Ohio practiced the last step of the claimed method. Clair's affidavit for the most part is simply a recitation of facts and the contents of documents not really in dispute in this case. Clair also unreasonably interprets the white paper as describing in-cab scanning. The

-12-

primary flaw with Clair's affidavit, however, is that he just speculates that Pitt Ohio practiced the final step of the method.  Indeed, his overall opinion is only that Pitt Ohio "may" have practiced the claimed method.  Clair Aff. ¶ 105.  Frankly, there is nothing helpful to the trier of fact in this affidavit.  Fed. R. Evid. 702; *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671 (6th Cir. 2010)("No matter how good 'experts' 'credentials' may be, they are not permitted to speculate." ) (quoting in part *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir.2000) (internal brackets and some quotation marks omitted); *Taylor v. Consolidated Rail Corp.*, No. 96-3579, 1997 WL 321142 at *6 (6th Cir. June 11, 1997) (holding that an expert must state his opinion as a probability, not a mere possibility in order for it to be admissible); *Soldo v. Sandoz Pharm. Corp.*, 244 F. Supp.2d 434, 526 (W.D.Pa. 2003)("Opinions merely expressing 'possibilities' do not suffice to support the admissibility of expert testimony.").

## Conclusion

The record rather convincingly demonstrates that Pitt Ohio has never created loading manifests from scanned images of shipping documentation data.  R&L has not shown a genuine issue of material fact whether Pitt Ohio has performed the last step of the '078 Patent.   Pitt Ohio, therefore cannot be held liable for infringing the '078 Patent.  Pitt Ohio is entitled to summary judgment.

Accordingly, Pitt Ohio's motion for summary judgment is well-taken and is **GRANTED.**

**IT IS SO ORDERED**

Dated: December 13, 2011                         s/Sandra S. Beckwith

                                                             Sandra S. Beckwith
                                                             Senior United States District Judge

-13-