UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|  |  |  |
|---|---|---|
| | : | MDL  Docket No. 1:09-md-2050 |
| IN RE: Bill of Lading Transmission and | : | |
| Processing System Patent Litigation. | : | |
| _____ | : | |
| | : | Case No. 2:10-cv-90 |
| THIS DOCUMENT APPLIES TO: | : | |
| | : | |
| R&L Carriers, Inc., | : | |
| | : | |
|      Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| Pitt Ohio Express, Inc., | : | |
| | : | |
|      Defendant. | : | |

## ORDER

This matter is before the Court on Defendant Pitt Ohio Express, Inc.'s motion for

attorney's fees and costs (Doc. No. 260).  For the reasons that follow, Defendant's motion for

fees and costs is well-taken and is **GRANTED.**

## I. Background

In February 2010, Plaintiff R&L Carriers, Inc. ("R&L") sued Defendant Pitt Ohio

Express, Inc. ("Pitt Ohio") for infringement of U.S. Patent No. 6,401,078 ("the '078 Patent").

The '078 Patent claims a method for improving the efficiency of operations for less-than-a-load

("LTL") carriers centered on scanning and transmitting bills of lading from the cab of a truck.

The claimed method has six steps:  1) placing a package on a transporting vehicle; 2) scanning

an image of the package's documentation data with a portable document scanner; 3) providing a

portable image processor capable of wirelessly transmitting the image of the documentation data image, 4) wirelessly sending an image of the documentation data to a remote processing center; 5) receiving an image of the documentation data at a remote processing center; and 6) prior to the package being removed from the transporting vehicle, using the documentation data received at the remote processing center to prepare a loading manifest which includes the package for further transport on another vehicle. '078 Patent col. 13, ll. 40-48, col. 14, ll. 1-13. The gist of the claimed method is to "automate[] the process of receiving transportation documentation and producing advance loading manifests therefrom to optimize load planning and dynamic product shipment and delivery control." '078 Patent, Abstract.

In August 2011, Pitt Ohio moved for summary judgment on R&L's claim of infringement on the grounds that there was no evidence that it had ever performed every step of the claimed method. Specifically, Pitt Ohio argued that there was no evidence that it had performed the last step of the claimed method, using documentation data from a scanned image of a bill of lading to prepare a loading manifest. Once briefing was completed, the evidence showed that in the course of its normal operations, Pitt Ohio uses a PeopleNet g3 onboard computer in its trucks. When the driver picks up a package for further delivery, he types a message into the computer that contains all of the relevant shipping information and sends the message to the distribution center. At the distribution center, a "strip sheet" is created and used to prepare the further movement of the package. The Court held that this process does not infringe the '078 Patent because it does not involve scanning and transmitting images of a bill of lading. Doc. No. 257, at 7. The Court noted further that R&L essentially conceded that Pitt Ohio's normal operating method does not infringe the '078 Patent. *Id.*

The evidence also showed that in February and March 2009, Pitt Ohio tested the concept of implementing in-cab scanning of bills of lading into its operations. Pitt Ohio had actually scanned images of bills of lading from a cab and transmitted them to a remote processing center. The evidence showed, however, that Pitt Ohio did not create loading manifests with the bills of lading. Instead, the purpose of the test was to evaluate image quality. Pitt Ohio abandoned the idea of using in-cab scanning altogether a few months later. Thus, the Court ruled that Pitt Ohio was entitled to summary judgment because the evidence showed that it had not performed the last step of the claimed method. *See id.* at 4, 7-8.

The evidence R&L submitted to try to establish a genuine dispute about infringement had little or no probative value. There was a "white paper" authored by PeopleNet in 2007 which disclosed that Pitt Ohio had converted to using g3 computers to send messages - not scanned images - with shipping data to the distribution center. R&L submitted an inadmissible hearsay statement that Pitt Ohio had implemented in-cab scanning into its operations. R&L tendered an expert's opinion that was inadmissible because he merely concluded that Pitt Ohio "may have" infringed the '078 Patent, and that was otherwise speculative. Finally, R&L submitted a clip art image of a laptop computer from a Power Point presentation created by Pitt Ohio's chief financial officer, Scott Sullivan. R&L claimed that the clip art image was in fact a picture of its Mobile Data Terminal ("MDT"), which it uses for in-cab scanning, and argued that this image showed that Pitt Ohio was infringing the patent. The Court, however, characterized the notion that the image was R&L's MDT as "fanciful," particularly in light of Pitt Ohio's evidence that Sullivan's use of the image predated his employment with Pitt Ohio. Furthermore, the Court concluded that even if the image was the MDT, it did not show infringement because the MDT

-3-

involved the scanning and transmitting steps of the claimed process, and not the preparation of a loading manifest step, which was the basis of Pitt Ohio's motion.  Doc. No. 257, at 7-13.

Pitt Ohio now moves the Court to declare the case exceptional pursuant to 35 U.S.C. § 285 and grant an award of its attorney's fees.  Pitt Ohio also moves the Court for an award of costs pursuant to Fed. R. Civ. P. 54 and 28 U.S.C. § 1920.  Pitt Ohio seeks attorney's fees of approximately $315,000 and costs of $3,848.05.  Pitt Ohio's motion is now ready for disposition.

## II. Standard of Review

The district court may award the prevailing party in a patent case its attorney's fees in an "exceptional case."  35 U.S.C. § 285.  Declaring a case exceptional and awarding attorney's fees is a two-step process.  *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 915 (Fed. Cir. 2012).  First, the prevailing party must demonstrate by clear and convincing evidence that the case is exceptional.  *Id.*  Second, if the prevailing party proves that the case is exceptional, the district court must determine whether an award of attorney's fees is justified.  *Id.* at 916.

A case may be declared exceptional if it involves willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Rule 11 of the Federal Rules of Civil Procedure, or other similar infractions.  *Id.*  If the prevailing party is the alleged infringer, other relevant considerations are "the closeness of the question, the plaintiff's pre-filing investigation and discussions with the defendant, and litigation behavior."  *Id.*  Absent litigation misconduct, a district court can award fees under § 285 only of the case was brought in subjective bad faith and was objectively baseless.  *Id.*  Litigation misconduct includes filing an infringement lawsuit that the patentee knew, or by conducting a reasonable investigation, should have known, was

-4-

baseless or frivolous. *Forest Lab., Inc. v. Abbott Lab.,* 339 F.3d 1324, 1329-30 (Fed. Cir. 2003).

Clear and convincing evidence is "that weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of precise facts of the case." *Neutrino Dev. Corp. v. Sonosite, Inc.*, 512 F. Supp.2d 1004, 1007 (S.D.Tex. 2007). And, contrary to R&L's brief in opposition, which contends that this Court cannot declare the case exceptional and award attorney's fees without first holding an evidentiary hearing and giving it an opportunity to be heard, R&L's right to due process has been satisfied by Pitt Ohio's filing of a motion for fees and R&L's filing of a memorandum in opposition to the motion. *In re Perry*, 918 F.2d 931, 935 (Fed. Cir. 1990). The district court is not required to hold a formal evidentiary hearing before ruling on a motion for attorney's fees. *Id.*

Finally, while the trial court has discretion to defer ruling on a motion for attorney's fees pending resolution of the losing party's direct appeal, the preferred practice is to rule on a motion for fees immediately after ruling on the merits of the case. *Pfizer Inc. v. Teva Pharm. USA, Inc.*

___ F. Supp.2d___, No. 2:10-CV-128, 2011 WL 4943984 at *3 (E.D.Va. Oct. 17, 2011) (citing Fed. R. Civ. P. 54(d), Advisory Committee Notes (1993 Amendments)); *Klein v. Central States, Southeast & Southwest Areas Health & Welfare Plan*, 621 F. Supp.2d 537, 540 (N.D. Ohio 2009). The Court recognizes that it stayed ruling on motions for Rule 11 sanctions filed by several of the alleged indirect infringing Defendants in this case pending the outcome of R&L's appeal. Doc. No. 221. R&L's appeal from the dismissal of its claims against the alleged indirect

infringers pursuant to Rule 12(b)(6), however, involves new and important questions concerning the proper application of the pleading standards enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Aschroft v. Iqbal*, 556 U.S. 662 (2009). The Court observed that the Federal Circuit Court of Appeals' resolution of R&L's appeal would very likely affect its determination of the propriety of awarding fees and sanctions. Doc. No. 221, at 2. Consequently, the Court determined "that under the unique circumstances of this case, in the interests of judicial economy and doing substantial justice to all of the parties, the best course of action is to defer ruling on these motions until the merits of Plaintiff's appeals are resolved by the Federal Circuit Court of Appeals." *Id.* The considerations that led the Court to defer ruling on the alleged indirect infringers' motions for sanctions are not implicated by Pitt Ohio's motion for attorney's fees. As opposed to the novel and important legal questions involving R&L's pleading of indirect infringement claims, R&L has presented a run-of-the-mill direct infringement claim against Pitt Ohio. The Court sees no benefit in deferring ruling on Pitt Ohio's motion for fees. Any appeal from the Court's order on attorney's fees and costs can easily be consolidated with R&L's appeal from the summary judgment order. Accordingly, the Court will not defer ruling on Pitt Ohio's motion for attorney's fees and costs.

### III. Analysis

Initially, it should be noted that, having prevailed on its motion for summary judgment on non-infringement, Pitt Ohio is the prevailing party in this case for purposes of 35 U.S.C. § 285. *See Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005) ("[W]hen Brooks established its non-infringement of the Dutailier patent, it prevailed in the litigation."). In its motion, Pitt Ohio argues that this case is exceptional within the meaning of §

285 because R&L failed to conduct an adequate pre-suit investigation, filed and maintained a baseless and frivolous infringement claim, and engaged in vexatious, unjustified, and bad faith litigation conduct.  The Court generally agrees with Pitt Ohio's characterization of R&L's conduct in this case.  Some of these concepts are interrelated, for instance, the failure to conduct an adequate pre-filing investigation also implicates filing and maintaining a baseless and frivolous infringement claim.

The Court finds that this case is exceptional because considered as whole, counsel for R&L's entire course of conduct in prosecuting an infringement claim against Pitt Ohio constituted litigation misconduct for purposes of § 285.   As the Court views the case, counsel for R&L engaged in litigation misconduct by: 1) conducting a wholly inadequate pre-suit investigation before suing Pitt Ohio for infringement; 2) maintaining a patently baseless and frivolous infringement claim; 3) drawing objectively unreasonable inferences from the evidence; 4) opposing Pitt Ohio's motion for summary judgment with inadmissible or non-probative evidence; and 5) in opposing Pitt Ohio's motion for attorney's fees, exaggerating or mischaracterizing the record and failing to cite controlling authority.  These findings also indicate to the Court that R&L instituted and maintained this lawsuit in bad faith.  *See Forest Lab.,* 339 F.3d at 1329-30 (stating that for purposes of § 285 bad faith includes "vexatious, unjustified, or frivolous litigation"); *Eltech Sys. Corp. v. PPG Ind., Inc.,* 903 F.2d 805, 811 (Fed. Cir. 1990) (district court may infer bad faith where "the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court").

A. <u>Pre-suit Investigation</u>

It is fairly clear at this point that, despite its protestations to the contrary, counsel for

R&L conducted a wholly inadequate pre-suit investigation, if indeed, it conducted one at all. R&L contends that its pre-suit investigation was adequate, but then goes on to state that it does not matter whether it was adequate or not because the adequacy of its investigation *has no relevance* in determining whether the case is exceptional. Doc. No. 262, at 15, n. 6. In support of this contention, R&L cites *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300-02 (Fed. Cir. 2004) and *Ulead Sys., Inc. v. Lex Computer & Mmgt. Corp.*, 351 F.3d 1139, 1150 (Fed. Cir. 2003). R&L miscites both of these cases.

The *Q-Pharma* Court specifically and extensively discussed the adequacy of the plaintiff's pre-filing investigation in the context of Rule 11 in the very pages cited by R&L. *Q-Pharma*, 360 F.3d at 1300-02. The Court relied on that discussion in ruling whether the case was exceptional. *Id.* at 1304. The *Ulead* Court did not hold that the adequacy of a party's pre-suit investigation is irrelevant to determining whether a case is exceptional. 351 F.3d at 1550. Rather, the Court stated that it would not impose a *requirement* to conduct an adequate pre-suit investigation outside of Rule 11. *Id.* In other words, the *Ulead* Court indicated that if the only consideration at issue is the adequacy of the pre-suit investigation, then Rule 11 is the sole authority for imposing sanctions. It was, however, the law of the Federal Circuit prior to *Ulead* that the adequacy of the plaintiff's pre-suit investigation is a relevant and important consideration in determining whether the case is exceptional. *See, e.g., Fantasy Sports Prop., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1120 (Fed. Cir. 2002); *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1035 (Fed. Cir. 2002); *Superior Fireplace Co. v. Majestic Prod. Co.*, 270 F.3d 1358, 1378 (Fed. Cir. 2001). Thus, the *Ulead* Court could not have held that the adequacy of the pre-suit investigation is irrelevant to the exceptional case analysis because to

have done so would have violated the "one panel rule," which holds that "decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned *in* [sic] *banc*." *Newell Co., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988). Additionally, it was the law of the Federal Circuit prior to *Ulead* that a Rule 11 violation can serve as a basis for finding that a case is exceptional. *E.g., Eltech,* 903 F.2d at 810-11 (affirming district court's determination that case was exceptional because "abuse of the courts through manifestly unreasonable lawsuits based on uninvestigated allegations, would constitute a blot on the escutcheon of the law and a violation of Rule 11, Fed.R.Civ.P."). Therefore, R&L's contention that *Ulead* stands for the proposition that the adequacy of its pre-suit investigation is irrelevant to determining whether the case is exceptional is wholly without support.

"The presence of an infringement analysis plays the key role in determining the reasonableness of the pre-filing inquiry made in a patent infringement case[.]" *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000). "[A]n infringement analysis can simply consist of a good faith, informed comparison of the claims of a patent against the accused subject matter." *Q-Pharma*, 360 F.3d at 1302. In this case, it is evident that R&L did not make a good faith comparison of the patented claims versus Pitt Ohio's accused method. Counsel for R&L does not aver that such an analysis took place and there is no indicia in the record that a claims analysis took place. *Compare with MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,* 420 F.3d 1369, 1381-82 (Fed. Cir. 2005) (pre-filing investigation was adequate; attorneys reviewed patent and construed claims according to standard canons of claim construction, then compared claims to accused product); *Q-Pharma*, 360 F.3d at 1301 (pre-filing investigation was adequate; attorneys filed affidavits stating that they reviewed claims, written

description, and prosecution history and interpreted individual claim terms).

It is not disputed that R&L did not try to contact Pitt Ohio before filing suit to inquire about its advanced planning method.  *See* Doc. No. 260-1, at 6; Doc. No. 264 at 3 (both noting that R&L sued Pitt Ohio without sending a cease and desist letter).  Nor does it appear that R&L ever attempted to determine whether Pitt Ohio used scanners in its trucks.  This could have been accomplished relatively easily by hiring private investigators who could have tried to look into the cab of Pitt Ohio trucks at truck stops or rest areas.  Alternatively, it seems likely that R&L's drivers and Pitt Ohio's drivers would cross paths from time to time; R&L could have instructed its drivers to ask Pitt Ohio's drivers how they process their packages for further distribution or delivery.  Any one of these obvious modes of investigation would have taken little or no effort.

Thus, this case is distinguishable from *Hoffman-LaRoche, Inc. v. Invamed, Inc.*, 213 F.3d 1359 (Fed. Cir. 2000), which R&L cites for the proposition that it was not required to make a comparison of the patent claims to the accused product.  Doc. No. 262, at 13.  The key to *Hoffman-LaRoche*, as R&L appears to recognize, is that the patentee made a good faith effort to obtain the accused manufacturing process from the defendant, who refused to disclose it.  *See* 213 F.3d at 1363-65.  In this case, however, R&L made no effort whatsoever to obtain information from Pitt Ohio about its process for handling packages before filing suit for infringement.  Thus, *Hoffman-LaRoche* supports a finding that R&L's pre-suit investigation was inadequate because R&L made no attempt to discover Pitt Ohio's package handling process.

R&L also argues that it was reasonable for it to rely on the opinion of its expert, Mr. Clair, in filing suit against Pitt Ohio. Doc. No. 262, at 11-13.  It is apparent, however, that Mr. Clair developed his opinion on infringement *after* R&L filed suit.  As Pitt Ohio points out, Mr.

Clair's opinion is based almost entirely on materials Pitt Ohio provided to R&L during

discovery.  *See* Doc. No. 243, at 3.  His opinion declaration is dated September 12, 2011 and

neither he nor R&L have stated on what date he was first retained.  For an expert's opinion to

support a finding that the pre-suit investigation was reasonable, the expert must provide his

infringement opinion *before* the suit is filed.  *See Judin v. United States*, 110 F.3d 780, 784-85

(Fed. Cir. 1997); *id.* at 785 ("Because Rule 11 is not about after-the-fact investigation, Judin and

Van Der Wall's violation of Rule 11 was not cured by the fact that, after filing the complaint,

Judin consulted with an expert and was able to make 'colorable' arguments in response to a

motion for summary judgment of noninfringement.").  The primary case cited by R&L in

support of the reasonableness of its investigation indicates that the patentee obtained the expert's

opinion before filing suit.  *See Brooks*, 393 F.3d at 1382 (patentee consulted two experts before

sending cease and desist letter and filing infringement counterclaim).

The other cases cited by R&L are inapposite.  In *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d

1245 (Fed. Cir. 2000), the court reviewed a judgment of non-infringement entered after a ten-day

trial, and the trial court's denial of attorneys fees under 35 U.S.C. § 285 to the defendant.

During the trial, the plaintiff found and produced an invoice that established that the invention

covered by one of the patents-in-suit had been sold more than one year before plaintiff filed its

patent application.  The trial court therefore found the patent invalid under the on-sale bar rule.

Defendant argued that the patentee failed to reasonably investigate its records regarding the first-

sale date, which justified an award of fees.  The court of appeals found that the cases in which

fees had been awarded based on findings that a patentee knew or "on reasonable investigation"

should have known that its suit was unfounded were all premised on much more extreme

conduct. It cited several cases affirming an award of fees based on evidence that the patentee actually knew its action was unfounded either factually or legally. In the pending case, however, the Court noted that the patentee's attorneys prepared for trial by engaging a qualified expert on infringement issues, and that the late discovery of the invoice was not the sort of egregious conduct that compelled a conclusion of exceptional case status. In the context of the opinion, the Court's reference to the plaintiff's expert implies that absent the issue of the on-sale bar date, plaintiffs did not pursue an unfounded claim, as it is illogical to conclude that a party with knowledge of an on-sale bar would engage an infringement expert and undertake expensive trial preparations on infringement issues. *See id* at 1260. In other words, in *Speedplay*, the patentee was not saved from the imposition of exceptional case fees because he had obtained an expert on infringement issues at trial, as R&L appears to contend. Rather, the patentee's failure to discover the subject invoices before trial did not render its pre-suit investigation insufficient in light of the fact that it otherwise had a good faith basis for alleging infringement. In contrast, in this case, R&L's pre-suit investigation of infringement by Pitt Ohio was objectively inadequate and the fact that it later obtained an infringement opinion from Mr. Clair does not cure that insufficiency. *See Judin, supra.*

*Ultrak, Inc. v. Radio Eng'g Ind., Inc.*, Nos. 97-1523, 97-1543, 1999 WL 197173 (Fed. Cir. Apr. 8, 1999), is inapt because it did not involve consideration of the patentee's pre-suit investigation. Rather, in *Ultrak*, the Court held that the plaintiff was not entitled to damages for willful infringement or attorney's fees as an exceptional case because the defendant had a good faith basis for believing that its activities did not infringe the patent-in-suit based on the opinion of its expert, even though his opinion ultimately was incorrect. *Id.* at *1, *6. *Corwin v. Walt*

*Disney World Co.*, No. 6:02-cv-1377-Orl-19KRS, 2008 WL 754697, at \*19 (M.D.Fla. Mar. 18, 2008), is somewhat similar to *Ultrak* and fails to support R&L because the adequacy of the plaintiff's pre-suit investigation was not at issue there. Rather, in *Corwin*, a copyright infringement suit, the district court held that counsel did not engage in vexatious conduct under 28 U.S.C. § 1927 for relying on expert opinions which were struck at the summary judgment stage. Indeed, the district court, relying on an earlier opinion it had issued, ruled that although the defendant alleged that the plaintiff did not have a good faith basis for filing suit, § 1927 sanctions are not available for filing a frivolous complaint. *Id.* at \*16-\*18. Thus, *Corwin* does not support R&L's position because it was not a patent case and did not consider the adequacy of the plaintiff's pre-suit investigation in the context of § 285.

In summary, Mr. Clair's opinion, which was obtained after R&L filed suit against Pitt Ohio, does not support R&L's contention that its pre-suit investigation was reasonable.

R&L notes that in determining whether to file a patent infringement suit, it is entitled to rely on publicly available information and the alleged infringer's public statements which indicate that infringement is taking place. R&L then argues that its pre-suit investigation was reasonable because of the "sheer volume" of public statements and admissions by Pitt Ohio indicating infringement. Doc. No. 262, at 14. Courts have indicated that a pre-filing investigation will be deemed reasonable where substantial publicly available information indicates infringement of the patent. In *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 398 F. Supp.2d 305, 314 (D.Del. 2005), for instance, the alleged infringer had disclosed the functionality of the alleged accused device in an industry conference and in its sales literature. Additionally, the patentee obtained a copy of the accused device's source code and had received

information on the accused device from field engineers, marketing representatives, and customers. *Id.* at 314. The patentee then referred all of this information to both inside and outside counsel, who recommended that the patentee file suit for infringement. *Id.*

In this case, however, the record does not reflect that substantial public information indicated that Pitt Ohio was infringing the '078 Patent or that Pitt Ohio made any statements which reasonably can be interpreted as indicating infringement. The PeopleNet "white paper," which the Court has discussed several times before, does not reasonably indicate infringement by Pitt Ohio. As stated, the white paper discloses sending messages to the remote processing center, not scanning images of bills of lading. Doc. No. 243, at 44. Indeed, R&L's proposed claim construction interprets the claimed method to require "convert[ing] a physical document, in whole or in part, into an electronic reproduction of the document" Doc. No. 238, at 5, and then transmitting the image to the remote processing center. *Id.*; *see also* '078 Patent, col. 14, ll.4-5 (independent claim 1, which requires "wirelessly sending the image to a remote processing center."). In other words, R&L's proffered claim construction contradicts its contention that the white paper indicates infringement of the '078 Patent. Thus, according to R&L's own construction of the patent, the white paper does not reasonably indicate infringement by Pitt Ohio. Moreover, this is additional evidence that R&L did not attempt to construe the patent and apply it to the accused method before filing suit against Pitt Ohio. A good faith effort to do so would have indicated that the white paper points away from infringement.

R&L also includes Robert Bowman's hearsay statement from PeopleNet CEO Ron Konezny that Pitt Ohio had implemented in-cab scanning across its fleet as publicly available information indicating infringement of the patent. R&L cites cases standing for the proposition

that a party is entitled to rely on hearsay as part of its pre-suit investigation.  But R&L's single hearsay statement, which R&L never attempted to verify with either Peoplenet[1] or, more importantly, Pitt Ohio, before filing suit, is an insufficient basis upon which to launch an expensive patent infringement suit.  This is particularly true in light of R&L's failure to attempt to obtain what information it could from Pitt Ohio about its package handling system and failure to conduct a pre-suit infringement analysis.

The only other public statements *by Pitt Ohio* reflected in the record are two comments made by its business systems director, Kent Szalla, during a radio show in December 2008 in which he indicated that Pitt Ohio has an integrated system to process pick-ups and deliveries. Clair Aff. (Doc. No. 243) ¶¶ 81-83.[2]  These statements, however, are fairly vague and only indicate infringement of the '078 Patent if one assumes that the only way a competing LTL carrier can improve the efficiency of its operations using electronic equipment is to practice each and every step of the '078 patent.  The Court, however, has previously rejected such an assumption as unreasonable.  The other public statements identified in Mr. Clair's affidavit are statements by PeopleNet and Microdea about *their* products, and not *by Pitt Ohio* about its method of operations.  These statements by third parties about their products do not reasonably

---

[1]    In his deposition, Konezny denied making this statement to Bowman.

[2]    Szalla stated: "Pickups and deliveries are integrated through the PeopleNet end-to-end solution and to our back office" and "What is really interesting is we try to plug into the whole electronic inventory into our dock operation, so if a driver is 2 hours out and he says he is coming back for the day , the dock knows well in advance as to what is coming in to [sic] his dock so he can start planning the cross-dock operations.  And then of course we start loading that information into our outbound projections so we know how many trailers and line haul units to schedule that evening."  *See id.*

indicate infringement by Pitt Ohio.

This case is fairly indistinguishable from *View Engineering*, in which the Court held that the party's pre-suit investigation was insufficient where it failed to perform a claim construction and instead relied solely on the publicly available information about the accused device and the alleged infringer's sales literature and advertisements.  208 F.3d at 984-86.  Similarly, R&L failed to conduct a pre-suit infringement analysis and did not contact Pitt Ohio about its method of operations.  Nor it did obtain any pre-suit infringement analysis from an independent expert. Instead, R&L largely if not entirely based its infringement lawsuit against Pitt Ohio upon a number of statements by third parties that do not plausibly suggest infringement of the patent by Pitt Ohio.

Accordingly, the Court concludes that R&L's pre-suit investigation was wholly inadequate and that this factor favors finding that the case is exceptional under § 285.

### B. The Infringement Question Was Not Close

As *MarcTec* indicates, another factor in the exceptional case analysis is whether the case for infringement was close.  664 F.3d at 916.  The Court's order granting Pitt Ohio's motion for summary judgment speaks for itself on this issue.  Succinctly put, the question of infringement was not close.  R&L adduced virtually no admissible evidence that Pitt Ohio practiced the last step of the claimed method, and the evidence that was admissible was nearly devoid of probative force.

R&L's brief implies that the Court ruled on Pitt Ohio's motion for summary judgment before it had a fair opportunity to complete discovery.  *See* Doc. No. 262, at 5 ("R&L was in the midst of further developing these facts [concerning the in-cab scanning test] when Pitt Ohio

sought summary judgment. R&L had not yet completed its discovery when Pitt Ohio's motion was granted."); *id.* at 11 ("Given the limited merits discovery that occurred prior to summary judgment . . . ."). Pitt Ohio, however, was free to move for summary judgment at any time, Fed. R. Civ. P. 56(b), and, as the Court ruled, R&L failed to meet its burden under Rule 56(d) to establish that it needed more discovery to respond adequately to Pitt Ohio's motion. Doc. No. 255. As that order stated, Pitt Ohio had already produced the information R&L claimed it needed or R&L was seeking additional discovery on issues generally unrelated to whether Pitt Ohio created loading manifests during the in-cab scanning test. *See id.*

Accordingly, this factor favors finding that this case is exceptional under § 285.

### C. R&L Maintained an Objectively Baseless Lawsuit Against Pitt Ohio

As amply recounted by this point, R&L adduced no evidence that Pitt Ohio ever practiced every step of the claimed method. The evidence that it did submit was either inadmissible or wholly lacking in probative value. Even Mr. Clair's opinion, upon which R&L relies so heavily to sustain the basis for this lawsuit, merely states that Pitt Ohio *may have* infringed the patent, and left open the only issue Pitt Ohio raised in its motion for summary judgment: whether it had ever prepared loading manifests with scanned images of bills of lading. *See* Clair Aff. (Doc. No. 243) ¶¶ 99-104 (noting a number of "unanswered questions," including whether "document images from the Microdea/PeopleNet solution were viewed by the load planners.").

R&L rejected reasonable assurances from Pitt Ohio, in the form of two affidavits from Pitt Ohio's CFO, Scott Sullivan, as well as in its responses to requests for admissions, averring that Pitt Ohio had not used in-cab scanning and did not intend to implement in-cab scanning.

Instead of objectively viewing the record and voluntarily dismissing its infringement claim, R&L unreasonably and vexatiously sought additional reassurances from Pitt Ohio and persisted in prosecuting a claim that lacked a realistic chance of success.[3]  It is not clear to the Court what specifically motivated R&L to proceed in this fashion; perhaps it was seeking metaphysical certainty that Pitt Ohio had not infringed the patent.  In any event, its maintenance of the suit in light of nearly overwhelming evidence of non-infringement was unreasonable and tantamount to litigating in bad faith.[4]

---

[3]      In April 2011, R&L submitted a proposed affidavit for Pitt Ohio to complete and return concerning Pitt Ohio's testing of in-cab scanning.  Doc. No. 262-1.  The outline of affidavit left blank spaces for Pitt Ohio to complete with details of the test and included other paragraphs for affirming that Pitt Ohio had not ever used in-cab scanning and had no current plans or intentions of implementing in-cab scanning.  On May 19, 2011, Pitt Ohio provided R&L with Scott Sullivan's signed declaration (Doc. No. 249-1 at 55-57) that is not materially different from the draft declaration proposed by R&L.  R&L then requested a second declaration from Pitt Ohio stating that it had never used technology from EBE Technologies, Inc. for any purpose, including in-cab scanning and declaring that the statements that Robert Bowman claimed that PeopleNet had made about Pitt Ohio implementing in-cab scanning were false.  Doc. No. 249-1, at 59.  Pitt Ohio provided another sworn declaration from Sullivan averring that Pitt Ohio had never used EBE Technology's equipment to scan documents from trucks.  Doc. No. 249-1, at 64-66.  Pitt Ohio declined to address the statements Bowman attributed to PeopleNet on the grounds that it was not privy to the conversation.  Doc. No. 249-1, at 64.  Although R&L now complains that Pitt Ohio modified these affidavits without consulting it, and thus needlessly prolonged the resolution of the case, the contemporaneous correspondence between the parties does not indicate that R&L was dissatisfied with Sullivan's two declarations at the time.  Doc. No. 249-1, 104-22.  Indeed, Sullivan's two declarations, under the penalty of perjury, should have been sufficient to assure R&L that Pitt Ohio had not infringed the patent in any fashion. Then the parties discussed whether Pitt Ohio might submit a third declaration in lieu of a Rule 30(b)(6) deposition.  However, the third declaration R&L proposed to obtain from Pitt Ohio, Doc. No. 249-1, at 124-27, was little more than a reiteration of the contents of Sullivan's first two declarations.  The Court concludes that R&L's request for multiple and repetitive declarations from Pitt Ohio was unreasonable and vexatious, and that R&L, not Pitt Ohio, unnecessarily prolonged the resolution of this case.

[4]      The Court also notes that throughout the litigation, R&L has placed great emphasis on the fact that Pitt Ohio practiced some, or even a majority, of the steps of the claimed method, as if that were sufficient, without more, to sue Pitt Ohio for infringement.  This is not

-18-

D. R&L Engaged in Litigation Misconduct

The Court finds that R&L engaged in litigation misconduct by drawing unreasonable inferences from the evidence, mischaracterizing the record, and misciting and/or failing to cite controlling authority.

The Court has discussed several times how PeopleNet's white paper does not remotely suggest that Pitt Ohio was practicing the claimed method, and it was objectively unreasonable for R&L to persist in arguing that the white paper is a "roadmap" to practicing the patent. This conclusion is particularly reinforced by R&L's own claim construction, which interprets the patent to scan and transmit images with the load information, not send messages with this information.

R&L also unreasonably inferred and argued that the clip art image from Scott Sullivan's Power Point presentation was an image of its MDT and that this image demonstrated infringement. Although the Court had to credit R&L's contention that the image was its MDT for purposes of summary judgment, the Court also stated this contention was fanciful. Doc. No. 257, at 11. An honest appraisal of this clip art image, which would have included asking and trying to answer the question where would Sullivan have obtained an image of its MDT, would have led a reasonable attorney to reject this theory as inherently incredible. It was objectively unreasonable for R&L to continue to contend that the clip art image was actually a photo of its MDT after Pitt Ohio provided discovery responses and documents which showed that Sullivan's

---

horseshoes, however, and suing Pitt Ohio because it practiced most of the steps of the claimed method is not good enough. R&L was required to have a reasonable basis for alleging, and was required to adduce evidence demonstrating, that Pitt Ohio practiced every step of the claimed method. *Ricoh Co., Ltd. v. Quanta Computer, Inc.*, 550 F.3d 1325, 1333 (Fed. Cir. 2008). R&L utterly failed to do so.

use of this image pre-dated his employment with Pitt Ohio.  *See* Doc. No. 249-1, at 98-99; Doc. No. 240-1, at 89.

The Court does not ordinarily sanction an attorney or party for submitting inadmissible hearsay in opposition to a motion for summary judgment because it happens in other cases from time to time.  Nevertheless, in the context of an otherwise unsupported claim of infringement, R&L's reliance on Bowman's affidavit to establish infringement by Pitt Ohio, which was the paradigm of hearsay evidence, was objectively unreasonable.

R&L's reliance on Mr. Clair's opinion to establish infringement by Pitt Ohio was unreasonable given that he could not and did not provide an opinion on the ultimate question raised by the motion for summary judgment.  *Compare with MarcTec*, 664 F.3d at 919-20 (holding that although exclusion of expert testimony under *Daubert* does not automatically warrant a finding of litigation misconduct, award of attorney's fees was appropriate in that case in part because patentee's expert's testimony did not meet even minimal standards of reliability).

R&L also mischaracterized and exaggerated the state of the record in its brief in opposition to Pitt Ohio's motion for attorney's fees.   Most notably, as Pitt Ohio correctly observes, R&L asserts that this Court agreed with its expert, Mr. Clair, and concluded that Pitt Ohio created a strip sheet using in-cab scanning during the feasibility study.  Doc. No. 262, at 12 n.4 (citing the Court's order denying R&L's Rule 56(d) motion, Doc. No. 255, at 7).   Had the Court actually come to that conclusion, then it seems obvious that it would have denied Pitt Ohio's motion for summary judgment, since this would have been evidence that Pitt Ohio practiced the last step of the patent.  In actuality, in the section of the order cited by R&L, the Court was addressing R&L's contention that it needed more time to discover whether Pitt Ohio

-20-

had created a strip sheet during the in-cab scanning road test before responding to Pitt Ohio's motion for summary judgment. In denying R&L's motion, the Court pointed out that Scott Sullivan testified that Pitt Ohio's normal procedure includes preparing a strip sheet based on messages sent from the driver and that during the road test the driver followed the normal procedures. Doc. No. 255, at 7. Thus, the Court concluded, "the only logical inference is that a strip sheet was created." *Id.* The Court, however, unequivocally did not state or conclude that Pitt Ohio created a strip sheet using in-cab scanning. R&L's contention that the Court agreed with Mr. Clair on this point is a misrepresentation of the record.

R&L also misstated Mr. Clair's opinion in its opposition to Pitt Ohio's motion. R&L states that "Mr. Clair determined it was reasonable to conclude that Pitt Ohio is practicing the '078 Patent." Doc. No. 262, at 12. That statement is incorrect, however. Mr. Clair opined that Pitt Ohio *may have* practiced the '078 Patent. Moreover, as previously stated, Mr. Clair completely left open the only issue raised in Pitt Ohio's motion - whether it practiced the last step of the patent. Indeed, Mr. Clair's opinion was essentially nothing more than speculation that Pitt Ohio practiced every step of the patent. *See* Doc. No. 257, at 12-13.

The Court finds that R&L misstates the record when it argues its lawsuit was reasonably grounded because its evidence shows that Pitt Ohio scanned documents after March 26, 2009, the date when Pitt Ohio averred it terminated the in-cab scanning test. *See* Doc. No. 262, at 5. As the Court pointed out in denying R&L's Rule 56(d) motion, *R&L's own witness confirmed that Pitt Ohio's last activity scanning and transmitting images occurred on March 26, 2009.* Doc. No. 255, at 10; Doc. No. 253-6, ¶ 16.

Elsewhere R&L exaggerates the strength of its case by calling the evidence of

-21-

infringement "overwhelming" and stating the "sheer volume" of Pitt Ohio's public statements indicated that infringement was taking place. In fact, R&L's evidence of infringement was practically non-existent. There was a paucity of public statements identified by R&L and even those did not reasonably suggest infringement by Pitt Ohio.

R&L miscited and failed to cite controlling authority in opposing Pitt Ohio's motion. Most egregiously, as indicated, R&L argued that the adequacy of its pre-suit investigation is irrelevant to the exceptional case determination and failed to cite a host of cases holding that it is a relevant consideration. *See supra*. R&L also miscited and/or failed to cite controlling authority in implying or arguing that it would be denied due process without notice and an evidentiary hearing**.** R&L's misuse, miscitation of, and failure to cite controlling authority are all indicative of a bad faith effort to avoid sanctions under § 285.

Conclusion

Having reviewed the record and the pleadings, the Court is persuaded by clear and convincing evidence that this case is exceptional within the meaning for 35 U.S.C. § 285 for the reasons stated herein. A district court is not required to grant an award of attorney's fees after determining that a case is exceptional under § 285. *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1344 (Fed. Cir. 2001)("[T]he amount of attorney fees awarded may be zero, even though the case is exceptional."); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1128 (Fed. Cir. 1993) ("[N]ot every exceptional case warrants the award of attorney fees."). Attorney's fees should be awarded to an accused infringer under § 285 only if necessary to prevent a "gross injustice." *Forest Lab.*, 339 F.3d at 1329. The Court concludes that it would be grossly unjust if Pitt Ohio were not awarded its reasonable attorney's fees and costs in this case. Due to opposing

counsels' failure to conduct a reasonable pre-suit investigation, and their filing of and prosecuting a baseless and frivolous infringement claim, Pitt Ohio was required to incur substantial litigation expenses.  An award of attorney's fees is necessary to deter similar unprofessional and frivolous conduct in future cases and to provide just compensation to Pitt Ohio.

Section 285 contemplates a two-step process in which the trial court first determines whether the case is exceptional and whether the prevailing party should be awarded its reasonable attorney's fees.  If the district court determines that an award of attorney's fees is appropriate, the prevailing party then submits a fee petition based on the lodestar amount, *i.e.*, a reasonable number of hours expended billed at a reasonable hourly rate. *Special Devices*, 269 F.3d at 1344-45*;  Maxwell v. Angel-Etts of Ca., Inc*., 53 Fed. Appx. 561, 568 (Fed. Cir. 2002).

Accordingly, Pitt Ohio is ordered to submit a properly supported fee petition using the lodestar method within thirty-day (30) days of the date of this order.  Further briefing on Pitt Ohio's fee petition, *i.e.*, a brief in opposition and a reply brief, shall be according to the schedule provided by S.D. Ohio Civ. R. 7.2(a)(2).

**IT IS SO ORDERED**.

Dated: March 6, 2012                            _____s/Sandra S. Beckwith_____
                                                                  Sandra S. Beckwith
                                                        Senior United States District Judge