**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

|  |  |  |
|---|---|---|
|  | ) | |
|  | ) | |
|  | ) | |
| **IN RE:   Bill of Lading Transmission and** | ) | |
| **Processing System Patent** | ) | **MDL Docket No. 1:09-md-02050-SSB** |
| **Litigation** | ) | |
|  | ) | |
|  | ) | |
|  | ) | |

**DEFENDANTS PEOPLENET COMMUNICATIONS CORPORATION'S AND
MICRODEA, INC.'S
LODESTAR PETITION FOR ATTORNEYS' FEES**

1.      On January 24, 2017, the Court granted Defendants PeopleNet Communications Corporation's ("PeopleNet") and Microdea, Inc.'s ("Microdea") (collectively, "Defendants") Motion for Attorneys' Fees and Costs.  Dkt. No. 430 ("Fee Motion Order").

2.      In that January 24, 2017 Order, the Court directed that Defendants submit a properly supported fee petition using the lodestar method within thirty (30) days, or no later than February 23, 2017 (*id.*); that deadline was extended to March 16, 2017 (*see* Notation Order on docket dated February 9, 2017, granting unopposed motion for extension of time to file fee petition, submitted at Dkt. No. 431).

3.      Defendants, therefore, submit their Lodestar Petition for Attorneys' Fees and the accompanying Memorandum and Declaration of Richard S. Zembek, attached hereto as Exhibit A (hereafter "Ex. A, Zembek Dec.").

4.      PeopleNet was responsible for and paid all requested Attorneys' Fees.

WHEREFORE, Defendants respectfully request that the Court award PeopleNet attorneys' fees in the amount of $1,430,817.20.

Date: March 16, 2017

/s/ Richard S. Zembek
Richard S. Zembek
richard.zembek@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Tel: (713) 651 5151 / Fax: (713) 651 5246

**COUNSEL FOR DEFENDANTS MICRODEA, INC. AND PEOPLENET COMMUNICATIONS CORPORATION**

## TABLE OF CONTENTS

I.    THE LODESTAR METHOD ............................................................................................. 1

*This Court granted Defendants' motion for attorneys' fees and directed Defendants to use a lodestar method in submitting the instant fee petition.*

*Authorities Cited*
*Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*, 707 F. Supp. 2d 737 (N.D. Ohio 2010)
*Hensley v. Eckerhart*, 461 U.S. 424 (1983)
*Blum v. Stenson*, 465 U.S. 886 (1984)
*Mathis v. Spears*, 857 F.2d 749 (Fed. Cir. 1988)
*Homeland Housewares, LLC v. Sorensen Research & Dev. Trust*, 581 F. App'x 877 (Fed. Cir. 2014)
*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014)
*Bendix Commercial Vehicle Sys., LLC v. Haldex Brake Prods. Corp.*, No. 1:09-cv-176, 2011 WL 871413 (N.D. Ohio Mar. 1, 2011)
*Reed v. Rhodes*, 179 F.3d 453 (6th Cir. 1999)
*Paschal v. Flagstar Bank, FSB*, 297 F.3d 431 (6th Cir. 2002)
*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381 (Fed. Cir. 2009)
*Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339 (Fed. Cir. 2000)
*Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496 (6th Cir. 2011)

II.   THE AMOUNT SOUGHT IS REASONABLE AND HAS BEEN WELL
      DOCUMENTED ........................................................................................................... 2

*Defendants' fee petition is based upon careful, daily documentation by the lawyers involved, the use of lawyers at levels appropriate for the tasks involved, and lodestar formula application. Defendants' request for $1,430,995.20 in attorneys' fees is reasonable as it excludes fees for timekeepers who spent fewer than 30 hours on the matter, and certain fees incurred for work done on behalf of defendant Berry & Smith Trucking Ltd. Defendants' request is also reasonable as it takes into account the outcomes over the course of this litigation and excludes certain fees, as explained in the below eight phases of this litigation.*

A.    Phase 1 (Initial Investigation): Attorneys' Fees Incurred by PeopleNet From MDL
      Consolidation up to Filing Motion for Judgment on the Pleadings ....................... 4

*From January 22, 2009 through December 29, 2009, Defendants incurred $408,976.95 in attorneys' fees for activities including (1) initial factual investigation, including review of the patent-in-suit, the patent history, and Defendants' operations, (2) prior art investigations, and (3) coordinating with counsel of other defendants to establish the joint defense group. However, Defendants do not seek the attorneys' fees incurred prior to MDL consolidation*

*on June 12, 2009, and thus seek only the remaining $298,902.50 in attorneys' fees incurred from June 12, 2009 through December 29, 2009.*

B.      Phase 2 (Motion for Judgment on the Pleadings): Attorneys' Fees Incurred by PeopleNet From the Filing Through the Grant of Motion for Judgment on the Pleadings ............................................................................................................... 5

*From December 30, 2009 through February 23, 2010, Defendants incurred and seek $150,694.13 in attorneys' fees for activities including those related to preparing and filing a motion for judgment on the pleadings and corresponding hearing.*

C.      Phase 3 (Motion to Dismiss): Attorneys' Fees Incurred by PeopleNet From Grant of Motion for Judgment on the Pleadings Through Grant of Motion to Dismiss... 6

*From February 24, 2010 through July 15, 2010, Defendants incurred $165,073.31 in attorneys' fees for activities including those related to preparing and filing joint motions to dismiss. Due to the Federal Circuit's subsequent affirmation-in-part and reversal-in-part of the order dismissing R+L's claims, Defendants seek only two-thirds of the incurred amount, or $110,048.87.*

D.      Phase 4 (First Appeal): Attorneys' Fees Incurred by PeopleNet in Connection with R+L's Appeal of the Motion to Dismiss Have Been Excluded ...................... 8

*From July 16, 2010 through June 7, 2012, Defendants incurred but do not seek $202,374.30 in attorneys' fees for activities in connection with the appeal. During this time period, Defendants incurred and seek $136,056.45 in attorneys' fees for activities unrelated to the appeal, including (1) coordinating the activities of the joint defense group, including joint defense group calls, (2) preparing for and participating in conferences with the Court, including several status conferences, (3) discovery, and (4) development of claim construction strategy and positions.*

E.      Phase 5 (Claim Construction): Attorneys' Fees Incurred by PeopleNet From the Date R+L's First Appeal Concluded Through the Date the PTO Issued a Notice of Intent to Issue a Reexamination Certificate ........................................................... 9

*From June 8, 2012 through February 26, 2014, Defendants incurred and seek $410,939.65 in attorneys' fees for activities including development of claim construction positions, including extensive briefing, and preparing for and participating in a Markman hearing.*

F.      Phase 6 (Post-Reexamination Briefing and Stay): Attorneys' Fees Incurred by PeopleNet From the Date the Court Ordered Briefing on the Effect of the Reexamination Through the Date the Federal Circuit Affirmed the Dismissal of R+L's Infringement Claims Against Qualcomm ................................................. 11

*From February 27, 2014 through September 17, 2015, Defendants incurred and seek $88,998.15 in attorneys' fees for activities including (1) analysis of reexamination claim amendments, (2) legal research in connection with briefing based on reexamination claim amendments, and (3) drafting of brief and supporting papers based on reexamination claim amendments.*

G.      Phase 7 (Summary Judgment): Attorneys' Fees Incurred by PeopleNet From the Date the Federal Circuit Affirmed the Dismissal of R+L's Infringement Claims Against Qualcomm Through Grant of Motion for Summary Judgment of Invalidity ........................................................................................................... 12

*From September 18, 2015 through August 29, 2016, Defendants incurred and seek $137,963.50 in attorneys' fees for activities including preparing and filing a motion for summary judgment of invalidity and supporting reply.*

H.      Phase 8 (Fee Motion and Second Appeal): Attorneys' Fees Incurred by PeopleNet in Connection with Motion to Declare the Case Exceptional Until Filing of the Instant Lodestar Petition ...................................................................................... 13

*From August 30, 2016 to the present, Defendants incurred $97,391.95 in attorneys' fees for activities including preparing and filing a motion for attorneys' fees and costs and supporting reply, preparing and filing the instant petition for attorneys' fees, and activities related to R+L's appeal of the order granting Defendants' motion for summary judgment of invalidity.*

III.    **THE HOURLY RATES SOUGHT AND OVERALL FEES INCURRED ARE REASONABLE IN VIEW OF SURVEY DATA REGARDING RATES AND FEES IN PATENT INFRINGEMENT CASES** ...................................................................... 14

*The billing rates of Defendants' attorneys and overall costs, along with the overall attorneys' fees request of $1,430,995.20, compare favorably with the American Intellectual Property Law Association's survey data for 2010, 2012, and 2014.*

<u>Authorities Cited</u>

Swaplease v. Sublease Exchange.com, No. 1:07-CV-45, 2009 WL 1119591 (S.D. Ohio Apr. 27, 2009)
West v. AK Steel Corp. Ret. Accumulation Pension Plan, 657 F. Supp. 2d 914 (S.D. Ohio 2009)
Bendix Commercial Vehicle Sys., LLC v. Haldex Brake Prods. Corp., No. 1:09-cv-176, 2011 WL 871413 (N.D. Ohio Mar. 1, 2011)
Mathis v. Spears, 857 F.2d 749 (Fed. Cir. 1988)
Fharmacy Records v. Nassar, 729 F. Supp. 2d 865 (E.D. Mich. 2010), aff'd, 465 F. App'x 448 (6th Cir. 2012)
Ultra Coachbuilders, Inc. v. Gen. Sec. Ins. Co., 229 F. Supp. 2d 284 (S.D.N.Y. 2002)
Water Techs. Corp. v. Calco, Ltd., 709 F. Supp. 821, 824 (N.D. Ill. 1989)
Blum v. Stenson, 465 U.S. 886 (1984)

**IV.    RELEVANT *HENSLEY* FACTORS ADD FURTHER SUPPORT TO THE REASONABLENESS OF THE LODESTAR NUMBER AND SUGGEST NO ADJUSTMENT TO THE FEES IS NECESSARY** ........................................................ 18

A.    Defendants' Counsel Served as Lead and Liaison Counsel in a Lengthy MDL .. 18

*Defendants' counsel served as lead and liaison counsel for several defendants in an MDL proceeding that has lasted over seven years, and such responsibility required Defendants' counsel to spend increased time and labor.*

<u>Authorities Cited</u>
*Armament Sys. & Procedures, Inc. v. IQ Hong Kong Ltd.*, 546 F. Supp. 2d 646 (E.D. Wis. 2008)

B.    The Excellent Results Obtained Support Defendants' Fee Petition ..................... 19

*Defendants' obtained a complete victory as the Court found all claims of R+L's patent invalid.*

<u>Authorities Cited</u>
*Hensley v. Eckerhart, 461 U.S. 424, 435 (1983)*

C.    Defendants' Lead Attorneys Possess a High Level of Competence in Complex Commercial and Intellectual Property Litigation Matters .................................... 19

*Defendants' lead lawyers have a high level of expertise in complex intellectual property litigation matters, and the firm Norton Rose Fulbright US LLP is a leading intellectual property firm.*

D.    Billing Charts and Related Statements Provide Sufficient Evidence to Support the Requested Fees ...................................................................................................... 20

*The documentation offered in support of the hours and fees charged provides sufficient detail and probative value to enable this Court to determine that the hours were actually and reasonably expended in defense of this litigation.*

<u>Authorities Cited</u>
*Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056 (Fed. Cir. 1983)
*Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*, 707 F. Supp. 2d 737 (N.D. Ohio 2010)
*Imwalle v. Reliance Med. Prods.*, 515 F.3d 531 (6th Cir. 2008)

E.    Ancillary Expenses to the Litigation Are Recoverable as Attorneys' Fees .......... 20

*Although Defendants have paid NRF's expenses, such as travel and the like, they have not included these expenses in their request of attorneys' fees.*

<u>Authorities Cited</u>
*Maxwell v. Angel-Etts of Cal., Inc.*, 53 F. App'x 561 (Fed. Cir. 2002)

*Cent. Soya Co. v. Geo A. Hormel & Co.*, 723 F.2d 1573 (Fed. Cir. 1983)
*Mathis v. Spears*, 857 F.2d 749 (Fed. Cir. 1988)
*Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*, 707 F. Supp. 2d 737
    (N.D. Ohio 2010)

F.    Time Spent on Fee Petition Is Compensable and Reasonable ............................. 21

*Fees incurred for time spent in establishing the right to the requested fee have been itemized and are reasonable.*

<u>Authorities Cited</u>
*West v. AK Steel Corp. Ret. Accumulation Pension Plan*, 657 F. Supp. 2d 914
    (S.D. Ohio 2009)

**V.    CONCLUSION** ................................................................................................. **21**

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Armament Sys. & Procedures, Inc. v. IQ Hong Kong Ltd.*,
    546 F. Supp. 2d 646 (E.D. Wis. 2008)................................................................................19

*Bendix Commercial Vehicle Sys., LLC v. Haldex Brake Prods. Corp.*,
    No. 1:09-cv-176, 2011 WL 871413 (N.D. Ohio Mar. 1, 2011)..............................1, 14, 15

*Blum v. Stenson*,
    465 U.S. 886 (1984)............................................................................................................1, 15

*Cent. Soya Co. v. Geo A. Hormel & Co.*,
    723 F.2d 1573 (Fed. Cir. 1983).............................................................................................20

*Fharmacy Records v. Nassar*,
    729 F. Supp. 2d 865 (E.D. Mich. 2010)................................................................................15

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)........................................................................................................1, 2, 19

*Homeland Housewares, LLC v. Sorensen Research & Dev. Trust*,
    581 F. App'x 877 (Fed. Cir. 2014) .........................................................................................1

*Imwalle v. Reliance Med. Prods., Inc.*,
    515 F.3d 531 (6th Cir. 2008) .................................................................................................20

*Lam, Inc. v. Johns-Manville Corp.*,
    718 F.2d 1056 (Fed. Cir. 1983).............................................................................................20

*Mathis v. Spears*,
    857 F.2d 749 (Fed. Cir. 1988).....................................................................................1, 15, 21

*Maxwell v. Angel-Etts of Cal., Inc.*,
    53 F. App'x 561 (Fed. Cir. 2002) .........................................................................................20

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    134 S. Ct. 1749 (2014).............................................................................................................1

*Paschal v. Flagstar Bank, FSB*,
    297 F.3d 431 (6th Cir. 2002) ...................................................................................................2

*Reed v. Rhodes*,
    179 F.3d 453 (6th Cir. 1999) ...................................................................................................2

*Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*,
    707 F. Supp. 2d 737 (N.D. Ohio 2010)....................................................1, 2, 20, 21

*Swapalease, Inc. v. Sublease Exchange.com, Inc.*,
    No. 1:07-CV-45, 2009 WL 1119591 (S.D. Ohio Apr. 27, 2009) ................................14, 15

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*,
    549 F.3d 1381 (Fed. Cir. 2009)...................................................................2

*Ultra Coachbuilders, Inc. v. Gen. Sec. Ins. Co.*,
    229 F. Supp. 2d 284 (S.D.N.Y. 2002)............................................................15

*Van Horn v. Nationwide Prop. & Cas. Ins. Co.*,
    436 F. App'x 496 (6th Cir. 2011) ............................................................2, 14

*Water Techs. Corp. v. Calco, Ltd.*,
    709 F. Supp. 821 (N.D. Ill. 1989) .............................................................15

*West v. AK Steel Corp. Ret. Accumulation Pension Plan*,
    657 F. Supp. 2d 914 (S.D. Ohio 2009) .....................................................14, 21

*Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*,
    231 F.3d 1339 (Fed. Cir. 2000)...................................................................2

## RULES AND STATUTES

28 U.S.C. § 1920.....................................................................................21

35 U.S.C. § 101......................................................................................12

Fed. R. Civ. P. 12..................................................................................5, 7

Fed. R. Civ. P. 54...................................................................................21

<u>**MEMORANDUM IN SUPPORT**</u>

## I.    <u>THE LODESTAR METHOD</u>

On January 24, 2017, the Court directed Defendants to use a lodestar method in submitting their fee petition.  Dkt. No. 430.  Under a lodestar method, the Court must first determine the "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  *See Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*, 707 F. Supp. 2d 737, 758 (N.D. Ohio 2010) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  The lodestar determination is strongly presumed to be a reasonable fee.  *See id.*; *see also Blum v. Stenson*, 465 U.S. 886, 897 (1984) (finding that when a party shows that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee contemplated by the relevant statute).  The presumption that all hours reasonably expended are recoverable applies with particular force where an attorney has obtained "excellent results." *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988) (citing *Hensley*, 461 U.S. at 435).  There is no requirement for a causal relationship between the conduct that supported an exceptional case finding and the fees incurred.  *Homeland Housewares, LLC v. Sorensen Research & Dev. Trust*, 581 F. App'x 877, 881 (Fed. Cir. 2014) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014)).

Once the lodestar figure is calculated, the district court may adjust the lodestar amount up or down to account for the unique circumstances of the case.[1]  A district court has wide

---

[1] Relevant factors include (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *See Hensley*, 461 U.S. at 432; *see also Bendix Commercial Vehicle Sys., LLC v. Haldex Brake Prods. Corp.*, No. 1:09-

discretion in determining the amount of attorneys' fees, and its determination will not be overturned absent an abuse of discretion. *See Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.,* 549 F.3d 1381, 1390 (Fed. Cir. 2009) (citing *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1346 (Fed. Cir. 2000)). In determining an appropriate award of attorneys' fees and costs, a court need not analyze or use all of these factors. *See Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 500 (6th Cir. 2011) (citing *Hensley*, 461 U.S. at 434 n.9). Many of the factors may be irrelevant in a case or may be included in the lodestar calculation itself. *Id.*

## II.  THE AMOUNT SOUGHT IS REASONABLE AND HAS BEEN WELL DOCUMENTED

Defendants' Lodestar Petition for Attorneys' Fees ("Petition") is based upon careful, daily documentation by the lawyers involved, the use of lawyers at levels appropriate for the tasks involved, and lodestar formula application. From the start of this lengthy, complex litigation over seven years ago, Defendants' attorneys have worked on significant tasks – including factual investigation, analysis of the patent-in-suit, prior art investigations, development of invalidity positions, analysis of claims based on alleged direct infringement by Pitt Ohio Express Inc. ("Pitt Ohio") and Berry & Smith Trucking Ltd. ("Berry & Smith"), preparation of motions for judgment on the pleadings and to dismiss, involvement in an appeal, preparation of an answer, defenses, and claims, claim construction, oral and written discovery, and briefing with respect to the effect of reexamination – culminating in a summary judgment motion that achieved a complete victory for Defendants, and now the instant Petition. Ex. A, Declaration of Richard Zembek ("Zembek Dec.") ¶ 5. And as lead and liaison counsel for nearly

---

cv-176, 2011 WL 871413, at *1 (N.D. Ohio Mar. 1, 2011) (citing *Reed v. Rhodes*, 179 F.3d 453, 471 n.3 (6th Cir. 1999)); *Saint-Gobain Autover USA*, 707 F. Supp. 2d at 758 (citing *Paschal v. Flagstar Bank, FSB*, 297 F.3d 431, 435 (6th Cir. 2002)).

a dozen defendants in this Multi-District Litigation ("MDL"), Defendants' attorneys necessarily billed more hours to ensure coordination among the defendants and efficiency throughout the proceeding.

The attorneys' fees requested by Defendants have been fully paid for (or will be fully paid for when due) by PeopleNet.[2]  Ex. A, Zembek Dec. ¶ 10.  PeopleNet has been responsible for the entire sum of incurred attorneys' fees for which recovery is sought.[3]  As of the filing of the instant petition, PeopleNet has paid to Norton Rose Fulbright US LLP ("NRF") approximately $1,900,000.00, of which $1,430,817.20 is requested in attorneys' fees in this Petition.  *Id*. ¶ 10.  Defendants further note that NRF did not bill Defendants for travel time incurred in connection with hearings, meetings, and client site visits.  *Id*. Attachment 3.  And Defendants have not sought fees for timekeepers who spent fewer than 30 hours on the matter. *Id.* ¶ 11.  In addition, PeopleNet incurred fees for work done by NRF on behalf of defendant Berry & Smith.  *Id.* ¶ 10.  A portion of those fees incurred on behalf of Berry & Smith is excluded from this Petition due to Berry & Smith's early settlement and dismissal with prejudice, but all of these fees are not excluded because R+L's infringement allegations against PeopleNet were predicated in part on Berry & Smith's alleged direct infringement.  *Id*. ¶ 11. Moreover, Defendants' Petition takes into account the outcomes over the course of this litigation. As detailed below, Defendants are not requesting certain incurred attorneys' fees – such as fees

---

[2] PeopleNet is not indemnified by another party.  PeopleNet has been responsible for Microdea's fees since December 30, 2009.  Ex. A, Zembek Dec. ¶ 10.

[3] PeopleNet and Qualcomm Incorporated ("Qualcomm"), another defendant in this case, were jointly represented by NRF.  Ex. A, Zembek Dec. ¶ 10.  PeopleNet paid fifty percent (50%) of NRF's fees billed relating to common activities (such as invalidity analysis, claim construction, and attendance at hearings) that were entered under a common matter number, and 100% of NRF's fees billed relating to PeopleNet-specific activities (such as client meetings, required reporting, and discovery responses) that were entered under separate, party-specific matter numbers.

incurred prior to MDL consolidation, a portion of the fees related to its motion to dismiss, and all fees relating to the first appeal – and these fees are shown as stricken in the attachment. *Id.*

For ease, the amount of attorneys' fees incurred by PeopleNet throughout this lengthy litigation is divided into the following eight phases.

A.     **Phase 1 (Initial Investigation): Attorneys' Fees Incurred by PeopleNet From MDL Consolidation up to Filing Motion for Judgment on the Pleadings**

This lawsuit began on January 22, 2009 (Dkt. No. 1 at 1:09-cv-00472), and MDL consolidation (including Defendants) occurred on June 12, 2009 (Dkt. No. 17, Letter and Transfer Order from MDL Panel).  The Court required each party to have a lead and liaison counsel who exhibited

> (1) willingness and ability to commit to a time-consuming process; (2) ability to work cooperatively with others; (3) professional experience in this type of litigation; and (4) access to sufficient resources to advance the litigation in a timely manner.

Dkt. No. 40.  Based on defendants' joint application (Dkt. No. 50), the Court at the Initial Conference appointed PeopleNet's primary counsel, Douglas J. Williams ("Mr. Williams"), as lead and liaison counsel for defendants.  Dkt. No. 61.  The designated lead and liaison counsel for all defendants in this case had to "work to insure avoidance of unnecessary duplication of efforts; control fees and expenses with a view to achieving efficiency and economy without jeopardizing fairness; conduct the principal examination of deponents; employ experts; arrange for support services; and see that schedules are met," and also "seek consensus among attorneys especially in regard to issues with potential critical impact on the litigation."  *Id.*  Throughout this proceeding, lead and liaison counsel has worked to meet these requirements, as well to (1) achieve consensus among defendants; (2) efficiently and succinctly present all defendants' views, positions, and arguments to the Court; and (3) avoid burdening the Court with what would otherwise have been redundant pleadings and arguments.

4

From January 22, 2009 through December 29, 2009, Defendants' counsel engaged in the following activities in defense of the lawsuit: (1) initial factual investigation, including review of the patent-in-suit, the patent history, and Defendants' operations; (2) prior art investigations; (3) preparing for and participating in the Initial Conference, including preparing a preliminary statement and conferring with opposing counsel regarding document preservation and other preliminary discovery issues; (4) coordinating with counsel of other defendants to establish the joint defense group; (5) coordinating the activities and submissions of the joint defense group, including the protective order and responses to counsel for R+L; and (6) drafting a motion for judgment on the pleadings.  Ex. A, Zembek Dec. ¶ 5 and Attachment 3.

From January 22, 2009 through December 29, 2009, PeopleNet incurred $408,976.95 in attorneys' fees from NRF.  *Id.* Attachment 3.  However, Defendants do not seek the $110,074.45 incurred in attorneys' fees prior to MDL consolidation on June 12, 2009, and associated time entries are therefore shown as stricken in the attachment.  *Id.* ¶ 11.  Defendants thus seek only the remaining $298,902.50 in attorneys' fees incurred from June 12, 2009 through December 29, 2009.  Consequently, the total amount of attorneys' fees that PeopleNet incurred from June 12, 2009 through December 29, 2009 are customary and typical attorneys' fees and costs that any defendant would incur in the course of defending a patent infringement lawsuit.

**B.**    **Phase 2 (Motion for Judgment on the Pleadings): Attorneys' Fees Incurred by PeopleNet From the Filing Through the Grant of Motion for Judgment on the Pleadings**

On December 30, 2009, PeopleNet and six other defendants filed a joint motion for judgment on the pleadings under FRCP 12(c), and Microdea and another defendant similarly joined with a motion to dismiss under FRCP 12(b)(6).  Dkt. No. 87.  R+L filed a joint response in opposition to the motions on January 25, 2010 (Dkt. No. 101), and a hearing was held on

February 2, 2010 (Dkt. No. 108). On February 23, 2010, the Court granted the defendants' motions, but gave R+L leave to amend its complaints. Dkt. No. 113.

From December 30, 2009 through February 23, 2010, Defendants' counsel engaged in the following activities in defense of the lawsuit: (1) preparing and filing a motion for judgment on the pleadings, including a hearing; (2) conferring with counsel for R+L regarding discovery issues; (3) coordinating the activities of the joint defense group, including joint defense group calls; (4) coordinating the submissions of the joint defense group, including agenda items for conferences with the Court, initial disclosure filings, joint reports on outstanding preservation issues, protective orders, and preservation order; (5) preparing for and participating in conferences with the Court, including a tutorial on technology issues; and (6) drafting and responding to discovery requests, including collection and review of documents for production and responding to R+L's alleged concerns regarding Defendants' discovery responses. Ex. A, Zembek Dec. ¶ 5 and Attachment 3.

From December 30, 2009 through February 23, 2010, PeopleNet incurred $150,694.13 in attorneys' fees from NRF. *Id.* Attachment 3. Consequently, the total amount of attorneys' fees that PeopleNet incurred from December 30, 2009 through February 23, 2010 are customary and typical attorneys' fees and costs that any defendant would incur in the course of defending a patent infringement lawsuit.

### C. Phase 3 (Motion to Dismiss): Attorneys' Fees Incurred by PeopleNet From Grant of Motion for Judgment on the Pleadings Through Grant of Motion to Dismiss

On February 26, 2010, defendant Berry & Smith served preliminary invalidity contentions on R+L identifying certain prior art references. As noted by the Court, R+L waited three years before submitting many of these same prior art references to the United States Patent and Trademark Office ("PTO") in a reexamination petition. *See* Dkt. No. 430 at 2; *see also* Dkt.

No. 413 at 5.  One of these prior art references, the N&M reference, was ultimately found to anticipate R+L's original claims in the ensuing reexamination proceeding.  Dkt. No. 425 at 10.

On April 6, 2010, R+L filed its amended complaints against all of the defendants, including Defendants.  Dkt. No. 125.  On April 27, 2010, the defendants jointly filed motions to dismiss R+L's amended pleadings (Dkt. No. 142), R+L filed an opposition (Dkt No. 146), and defendants jointly replied (Dkt. No. 147).  A hearing was held on the motions on May 25, 2010 (Dkt. No. 153), and on June 8, 2010, all parties in the MDL jointly moved to stay discovery and suspend claim construction deadlines until all of defendants' pending Rule 12 motions were decided.  Dkt. No. 157.  The motion to stay was granted by the Court on June 9, 2010.  Notation Order on docket dated June 9, 2010.  The Court granted defendants' joint motions to dismiss on July 15, 2010.  Dkt. No. 162.

From February 24, 2010 through July 15, 2010, Defendants' counsel engaged in the following activities in defense of the lawsuit: (1) review and analysis of R+L's amended complaint; (2) development of invalidity contentions, including preparation of detailed invalidity claim charts; (3) coordinating the activities of the joint defense group, including joint defense group calls; (4) coordinating the submissions of the joint defense group, including preparing and filing joint motions to dismiss and supporting reply and responding to R+L's proposed terms for claim construction; (5) preparing for and participating in conferences with the Court, including a hearing on defendants' joint motions to dismiss; and (6) conferring with all parties on a joint motion to stay discovery.  Ex. A, Zembek Dec. ¶ 5 and Attachment 3.

From February 24, 2010 through July 15, 2010, PeopleNet incurred $165,073.31 in attorneys' fees from NRF.  *Id.* Attachment 3.  Consequently, the total amount of attorneys' fees that PeopleNet incurred from February 24, 2010 through July 15, 2010 are customary and typical

attorneys' fees and costs that any defendant would incur in the course of defending a patent infringement lawsuit.  However, in light of the Federal Circuit's subsequent reversal of the dismissal of R+L's induced infringement claims, but affirmation of the dismissal of R+L's "offer to sell" liability claims and contributory infringement claims, Defendants seek only two-thirds of the attorneys' fees incurred during this time period, or $110,048.87.  *Id.* ¶ 11.

### D.  Phase 4 (First Appeal): Attorneys' Fees Incurred by PeopleNet in Connection with R+L's Appeal of the Motion to Dismiss Have Been Excluded

Within a month after Defendants' motion to dismiss was granted, R+L filed its Notice of Appeal as to Microdea on August 6, 2010 (Dkt. No. 168) and to PeopleNet on November 16, 2010 (Dkt. No. 198).  The Federal Circuit held that R+L failed to state a contributory infringement claim against the defendants, but adequately stated an induced infringement claim, and subsequently affirmed-in-part, reversed-in-part, and remanded on June 7, 2012.  Dkt. No. 274.  From July 16, 2010 through June 7, 2012, PeopleNet incurred $202,552.30 in attorneys' fees from NRF in connection with the appeal.  Ex. A, Zembek Dec. Attachment 3.  While only R+L's induced infringement claim survived, in light of the Court's discussion in the Fee Motion Order and the Order granting Qualcomm's Motion for Attorneys' Fees (Dkt. No. 413), all of these attorneys' fees related to the appeal have been excluded from Defendants' Petition, and associated time entries are shown as stricken in the attachment.  *Id.* ¶ 11.

From July 16, 2010 through June 7, 2012, Defendants' counsel engaged in the following activities in defense of the lawsuit that did not relate to the appeal: (1) coordinating the activities of the joint defense group, including joint defense group calls; (2) preparing for and participating in conferences with the Court, including several status conferences; (3) discovery (as the discovery stay was lifted on November 30, 2010 (Dkt. No. 203)); and (4) development of claim construction strategy and positions.  Ex. A, Zembek Dec. ¶ 5 and Attachment 3.  PeopleNet

incurred $135,878.45 in attorneys' fees from NRF during this period that were not related to the appeal. *Id*. Attachment 3. Consequently, the total amount of attorneys' fees that PeopleNet incurred from July 16, 2010 through June 7, 2012 are customary and typical attorneys' fees and costs that any defendant would incur in the course of defending a patent infringement lawsuit.

    E.    **Phase 5 (Claim Construction): Attorneys' Fees Incurred by PeopleNet From the Date R+L's First Appeal Concluded Through the Date the PTO Issued a Notice of Intent to Issue a Reexamination Certificate**

After the Federal Circuit issued its opinion, the proceeding in this Court commenced in earnest. From June 8, 2012 until February 26, 2014—the date the PTO issued a notice of intent to issue a reexamination certificate—PeopleNet incurred the overwhelming majority of its attorneys' fees.

PeopleNet and Microdea filed their Answer and Affirmative Defenses to R+L's Amended Counterclaims on October 4, 2012 and November 6, 2012, respectively. Dkt. Nos. 289 and 301. On April 12, 2013, the parties exchanged preliminary claim construction briefs. Dkt. Nos. 321 and 322. On June 7, 2013, the parties filed their joint appendix for preliminary claim construction and joint claim construction and prehearing statement. Dkt. Nos. 325 and 326.

On June 28, 2013, based on prior art Berry & Smith identified over three years prior, R+L filed a petition for re-examination before the PTO (which was granted on August 6, 2013), then subsequently moved this Court on July 11, 2013 to stay the case pending that re-examination. Dkt. No. 327. Defendants opposed R+L's motion to stay. Dkt. No. 328. The Court ultimately denied R+L's stay motion on December 31, 2013. Dkt. No. 347. On February 12, 2014, in response to a rejection issued by the PTO on December 12, 2013, R+L substantively amended its claims. On February 26, 2014 (in response to R+L's February 12, 2014 claim

amendments), the PTO issued a Notice of Intent to Issue a Reexamination Certificate.  Dkt. No. 358-1.

Meanwhile, the parties filed opening and responsive claim construction briefs on August 30, 2013 (Dkt. Nos. 332 and 333) and September 30, 2013 (Dkt. Nos. 337 and 338), respectively. A Markman hearing was held on November 12, 2013 (Dkt. No. 343), and at a subsequent status conference on November 18, 2013, the Court issued an order staying all third-party discovery pending ruling on the Markman hearing (Notation Order on docket dated November 18, 2013). The Court issued its claim construction order on December 31, 2013.  Dkt. No. 348.

Despite the Court's November 18, 2013 Order staying all third-party discovery, R+L unilaterally "reactivated" or served 29 third-party subpoenas (Dkt. No. 351) and sent letters to third parties that were previously subpoenaed and represented that "[t]he parties have resumed third-party discovery."  R+L's action required a telephone status conference on January 31, 2014 (Dkt. No. 354), and the Court issued another order to reiterate that the stay entered on November 18, 2013 remained in effect until further, explicit notice (Dkt. No. 355).

From June 8, 2012 through February 26, 2014, Defendants' counsel engaged in the following activities in defense of the lawsuit: (1) development of claim construction positions, including extensive briefing; (2) preparing for and participating in a Markman hearing; (3) preparing discovery requests; (4) coordinating the activities of the joint defense group, including joint defense group calls; (5) coordinating the submissions of the joint defense group, including preparing an opposition to R+L's motion to stay pending reexamination; and (6) preparing for and participating in conferences with the Court.  Ex. A, Zembek Dec. ¶ 5 and Attachment 3.

From June 8, 2012 through February 26, 2014, PeopleNet incurred $410,939.65 in attorneys' fees from NRF.  *Id*. Attachment 3.  Consequently, the total amount of attorneys' fees

that PeopleNet incurred from June 8, 2012 through February 26, 2014 are customary and typical attorneys' fees and costs that any defendant would incur in the course of defending a patent infringement lawsuit.

> **F.** **Phase 6 (Post-Reexamination Briefing and Stay): Attorneys' Fees Incurred by PeopleNet From the Date the Court Ordered Briefing on the Effect of the Reexamination Through the Date the Federal Circuit Affirmed the Dismissal of R+L's Infringement Claims Against Qualcomm**

On February 27, 2014, the Court *sua sponte* ordered the parties to brief the effect of the PTO's decision to allow the amended claims at the conclusion of the re-examination. Dkt. No. 359. On May 19, 2014, the Court issued an order finding that R+L's re-examination amendments narrowed the scope of the patent claims, thereby precluding recovery of damages for infringement prior to the date the PTO issued the re-examination certificate. Dkt. No. 372. Because this amendment extinguished R+L's infringement claims against Qualcomm, who spun off its Omnitracs business unit in November 2013, judgment was entered on August 12, 2014 dismissing R+L's claims against Qualcomm with prejudice (Dkt. No. 379), and R+L appealed (Dkt. No. 382). On that same day, the Court granted the remaining defendants' and R+L's joint motion to stay the proceedings pending final resolution of R+L's appeal against Qualcomm. Dkt. No. 380. On September 17, 2015, the Federal Circuit affirmed the dismissal of R+L's infringement claims against Qualcomm. Dkt. No. 390.

From February 27, 2014 through September 17, 2015, Defendants' counsel engaged in the following activities in defense of the lawsuit: (1) analysis of reexamination claim amendments; (2) legal research in connection with briefing based on reexamination claim amendments; (3) drafting of brief and supporting papers based on reexamination claim amendments; (4) coordinating the activities of the joint defense group, including joint defense group calls; (5) coordinating the submissions of the joint defense group, including letters to the

Court regarding the effect of the reexamination claim amendments on the lawsuit; (6) preparing for and participating in conferences with the Court; and (7) conferring with parties regarding required status reports to the Court.  Ex. A, Zembek Dec. ¶ 5 and Attachment 3.

From February 27, 2014 through September 17, 2015, PeopleNet incurred $88,998.15 in attorneys' fees from NRF.  *Id*. Attachment 3.  Consequently, the total amount of attorneys' fees that PeopleNet incurred from February 27, 2014 through September 17, 2015 are customary and typical attorneys' fees and costs that any defendant would incur in the course of defending a patent infringement lawsuit.

### G.  Phase 7 (Summary Judgment): Attorneys' Fees Incurred by PeopleNet From the Date the Federal Circuit Affirmed the Dismissal of R+L's Infringement Claims Against Qualcomm Through Grant of Motion for Summary Judgment of Invalidity

On November 18, 2015, the Court ordered the parties to meet and confer to submit a status report regarding lifting the stay, the current status of the case, and potential resolution through mediation.  Dkt. No. 392.  The parties filed that status report on December 31, 2015 (Dkt. No. 394), and the Court entered a mediation schedule on January 5, 2016, pursuant to which the parties submitted written settlement demands and responses (Dkt. No. 396).  When the parties failed to reach settlement, briefing on the defendants' motion for summary judgment of invalidity proceeded.  Dkt. No. 403.  On July 15, 2016, the remaining defendants jointly filed a motion for summary judgment of invalidity (Dkt. No. 407), R+L filed a response in opposition (Dkt No. 408), and the defendants jointly replied (Dkt. No. 409).  The Court granted defendants' summary judgment on August 29, 2016, holding R+L's patent invalid under 35 U.S.C. § 101 as directed towards an abstract idea.  Dkt. No. 410.

From September 18, 2015 through August 29, 2016, Defendants' counsel engaged in the following activities in defense of the lawsuit: (1) drafting and responding to settlement demands;

(2) preparing for and deposing R+L's expert witness; (3) coordinating the submissions of the joint defense group, including preparing and filing a motion for summary judgment of invalidity and supporting reply; and (4) conferring with parties regarding required status reports to the Court. Ex. A, Zembek Dec. ¶ 5 and Attachment 3.

From September 18, 2015 through August 29, 2016, PeopleNet incurred $137,963.50 in attorneys' fees from NRF. *Id*. Attachment 3. Consequently, the total amount of attorneys' fees that PeopleNet incurred from September 18, 2015 through August 29, 2016 are customary and typical attorneys' fees and costs that any defendant would incur in the course of defending a patent infringement lawsuit.

### H. Phase 8 (Fee Motion and Second Appeal): Attorneys' Fees Incurred by PeopleNet in Connection with Motion to Declare the Case Exceptional Until Filing of the Instant Lodestar Petition

On August 31, 2016, R+L appealed this Court's grant of defendants' motion for summary judgment. *See* Dkt. No. 1, *R+L Carriers, Inc. v. Microdea, Inc. et al.*, 16-2688 (Fed. Cir.). The remaining defendants jointly filed on September 19, 2016 a Motion for Attorneys' Fees and Costs (Dkt. No. 412), and a supporting Reply on November 18, 2016 (Dkt. No. 423). As stated above, the Court granted defendants' Motion for Attorneys' Fees and Costs on January 24, 2017, and Defendants subsequently prepared and filed the instant Petition.

From August 30, 2016 to the present, Defendants' counsel engaged in the following activities in defense of the lawsuit: (1) coordinating the submissions of the joint defense group, including preparing and filing a motion for attorneys' fees and costs and supporting reply; (2) preparing and filing a petition for attorneys' fees; (3) coordinating the activities of the joint defense group, including joint defense group correspondence regarding the appeal; and (4) compiling the appeal record. Ex. A, Zembek Dec. ¶ 5 and Attachment 3.

From August 30, 2016 to the present, PeopleNet incurred $97,391.95 in attorneys' fees from NRF. *Id*. Attachment 3. At least 175 hours were expended in connection with Defendants' Motion for Attorney's Fees and the within Lodestar Petition. *Id*. Consequently, the total amount of attorneys' fees that PeopleNet incurred from August 30, 2016 to the present are customary and typical attorneys' fees and costs that any defendant would incur in the course of defending a patent infringement lawsuit.

## III.     THE HOURLY RATES SOUGHT AND OVERALL FEES INCURRED ARE REASONABLE IN VIEW OF SURVEY DATA REGARDING RATES AND FEES IN PATENT INFRINGEMENT CASES

When determining a reasonable hourly rate, courts generally "use as a guideline the prevailing market rate . . . that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Van Horn*, 436 F. App'x at 498-99. However, this Court has previously found that it is reasonable for parties to retain out-of-town counsel in a patent infringement action since "[p]atent litigation is a highly-specialized field of practice." *Swapalease, Inc. v. Sublease Exchange.com, Inc.*, No. 1:07-CV-45, 2009 WL 1119591, at *5 (S.D. Ohio Apr. 27, 2009) (citation omitted). In such cases, the reasonable hourly rate is that of lawyers with comparable skill and experience in counsel's home district. *Id.* (finding rate of $381 for out-of-town counsel from the Miami, Florida region to be reasonable in patent litigation); *see also West v. AK Steel Corp. Ret. Accumulation Pension Plan*, 657 F. Supp. 2d 914, 935 (S.D. Ohio 2009) (finding rate of $497 per hour to be reasonable for senior partners in ERISA litigation); *Bendix Commercial Vehicle Sys.*, 2011 WL 871413, at *2 (approving rates within range of reasonable hourly rates for specialized patent attorneys with comparable qualifications in the Washington, D.C. area).

The Federal Circuit and other courts have relied on the economic survey conducted by the American Intellectual Property Law Association ("AIPLA") to support the reasonableness of

fees incurred in patent litigation. *See, e.g., Mathis*, 857 F.2d at 755 ("As the law makes clear, the district court properly considered the [AIPLA] surveys."); *Bendix Commercial Vehicle Sys.*, 2011 WL 871413, at *3; *Swapalease*, 2009 WL 1119591, at *5. The 75th percentile rate from the AIPLA survey data is a typical benchmark to establish reasonableness of billing rates. *See, e.g., Fharmacy Records v. Nassar*, 729 F. Supp. 2d 865, 888 (E.D. Mich. 2010), *aff'd*, 465 F. App'x 448 (6th Cir. 2012); *Ultra Coachbuilders, Inc. v. Gen. Sec. Ins. Co.*, 229 F. Supp. 2d 284, 287-88 (S.D.N.Y. 2002); *Water Techs. Corp. v. Calco, Ltd.*, 709 F. Supp. 821, 824 (N.D. Ill. 1989). If the billing rates are within the range of fees charged by other patent lawyers in the locale involved, these rates are considered reasonable. *See Blum*, 465 U.S. at 895 n.11 (holding reasonable fees are "to be calculated according to the prevailing market rates in the relevant community," with close attention paid to the fees charged by "lawyers of reasonably comparable skill, experience and reputation").

The AIPLA's 2011 Economic Survey contains 2010 data, the AIPLA's 2013 Economic Survey contains 2012 data, and the AIPLA's 2015 Economic Survey contains 2014 data. The 75th percentile hourly rates in 2010, 2012, and 2014 for partners and associates in Minneapolis, Texas, and New York are shown in the chart below.

| 75th Percentile Hourly Rate | 2010 | 2012 | 2014 |
|---|---|---|---|
| Partner rate by location (regardless of years of experience) | Minn.: $455 Texas: $600 | Minn.: --- Texas: $678 | Minn.: --- Texas: $598 |
| Partner rate (35+ years of IP law experience) | $695 | $689 | $653 |
| Associate rate by location (regardless of years of experience) | Minn.: $319 Texas: $400 | Minn.: --- Texas: $518 | Minn.: --- Texas: $449 NY: $634 |
| Associate rate (7-9 years of IP law experience) | $435 | --- | $600 |
| Associate rate (10-14 years of IP law experience) | $503 | --- | --- |

Ex. A, Zembek Dec. ¶ 14 and Attachments 4, 5, and 6.

15

The AIPLA data also includes estimated costs of patent litigation by location. The fees are grouped according to the amount of money at risk. Based upon R+L's allegations that Defendants infringed the '078 Patent by "offer[ing] products to customers in the transportation and trucking industry," including the "g3 Onboard Computing System" and "PACOS Geofencing & Automated Messaging solutions,"[4] Defendants will use the range reported by AIPLA in the 2015 Survey for monetary risk of $1-$10 million. For cases pending in Ohio (other Central), estimated litigation costs for patent infringement lawsuits through the end of discovery in the 75th percentile are $1,500,000. Ex. A, Zembek Dec. ¶ 14 and Attachment 6. For cases pending in Ohio (other Central), estimated litigation costs for patent infringement lawsuit inclusive with all costs in the 75th percentile are $2,500,000. *Id.*

The billing rates of Defendants' attorneys and overall costs compare favorably with the AIPLA survey data. The 2009-2016 rates for the lead partners on the case, Mr. Williams and Richard Zembek ("Mr. Zembek"), are reflected in the chart below.[5]

|  | Mr. Zembek | Mr. Williams |
|---|---|---|
| Location | Texas | Minneapolis |
| 2009 | $570 | $581 - $645 |
| 2010 | $540 - $570 | $581 - $645 |
| 2011 | $540 - $570 | --- |
| 2012 | $540 - $570 | --- |
| 2013 | $540 - $621 | --- |
| 2014 | $540 - $640 | --- |
| 2015[6] | $725 - $755 | --- |
| 2016 | $638 - $755 | --- |

---

[4] Dkt. No. 125, Amended Complaint ¶¶ 11, 38, 72, 88.

[5] Jonathan Franklin, Head of Appellate at NRF, assisted in this litigation for appellate matters, and is not included in the chart as the vast majority of his time entries are stricken as pertaining to work done during the First Appeal (Phase 4). Ex. A, Zembek Dec. Attachment 3.

[6] Starting in 2015, for PeopleNet, NRF attorneys were billed at their current rate and a discount was applied to the monthly bill. Ex. A, Zembek Dec. Attachment 3.

*Id.* ¶ 8 and Attachment 3.  From 2009-2013, Mr. Zembek's hourly rates are below the 75th percentile 2010 and 2012 billing rates for partners in Texas.  *Id.*.  In 2014, the AIPLA survey indicates a decrease across the board in average hourly billing rates.  *Id.* Attachment 6.  Mr. Zembek's hourly rate is only slightly above the 75th percentile 2014 billing rate for partners in Texas, but well below the 90th percentile billing rate of $860, and actually below the 75th percentile 2012 billing rate for partners in Texas.  *Id.* ¶ 8 and Attachment 3.  Starting in 2015, for Defendants, NRF attorneys were billed at a historically higher rate, but a discount was applied to the monthly bill.  *Id.*  Thus from 2015-2016, while Mr. Zembek's hourly rate is above the 75th percentile 2014 billing rate, it is below the 90th percentile billing rate.  *Id.* ¶ 8 and Attachment 3.

From 2009-2010, while Mr. Williams' hourly rate is above the 75th percentile 2010 billing rate for partners in Minneapolis, his hourly rate is well below the 75th percentile per hour rate for partners with commensurate levels of experience.  *Id.* ¶ 8 and Attachment 3.  As his professional biography reveals, Mr. Williams has been practicing in the intellectual property law and litigation arenas for nearly 40 years.  *Id.* ¶ 6 and Attachment 1.

The other applicable billing rates of the lawyers involved in the case, particularly associate attorneys, are reflected in the chart below.[7]

| | Laura Borst | Robert Greeson | Daniel Leventhal | Melanie Rother | Michelle Wang | Jim Warriner |
|---|---|---|---|---|---|---|
| Location | Minn | Texas | Texas | Texas | NY | Texas |
| 2009 | $387-$430 | $375 | $365 | $395 | --- | --- |
| 2010 | $369-$390 | $356-$375 | $347-$365 | $374-$395 | --- | --- |
| 2011 | $369-$437[8] | $356-$395 | --- | --- | --- | --- |
| 2012 | $369-$450 | $356-$395 | --- | --- | --- | --- |
| 2013 | $369-$482 | $356-$441 | $428 | --- | --- | $293 |
| 2014 | $369-$490 | $356-$525[9] | --- | --- | --- | $425-$455 |

---

[7] NRF non-partner attorneys who are no longer at NRF as of the filing of this Petition (Breckenridge, Bremer, Kadura, Lenkin, Morgan) are not included in the chart.
[8] In 2011, Ms. Borst became a partner at NRF.
[9] In 2014, Mr. Greeson became a partner at NRF.

| 2015[10] | --- | $575 | --- | --- | --- | --- |
| 2016 | --- | $531-$625 | --- | --- | $293-$345 | $472-$555 |

*Id.* ¶ 8 and Attachment 3.  These billing rates are similarly reasonable.  For the Texas and New York associates, their hourly rates are below the 75th percentile 2010, 2012, and 2014 associate rates for those regions.  *Id.*  For Ms. Borst, from 2009-2010, while her hourly rates are above the 75th percentile 2010 billing rates for associates in Minneapolis, her hourly rate is below the 75th percentile per hour rate for associates with commensurate levels of experience.  *Id.* ¶ 8 and Attachment 3.  As her professional biography reveals, Ms. Borst, at that time, had been practicing in the intellectual property law and litigation arenas for 9-10 years.  *Id.* ¶ 6 and Attachment 1.  Her subsequent rates from 2011-2014 are below the 75th percentile 2010 and 2012 rates for partners in Minneapolis.  *Id.* ¶ 8 and Attachment 3.  Likewise, Mr. Greeson's rates from 2014-2016 are below the 75th percentile 2012 billing rate for partners in Texas.  *Id.*

Moreover, the overall attorneys' fees sought of $1,430,817.20 are below the lowest estimated litigation cost of $1,500,000 that could be applicable to this case, and almost a million dollars below the estimated litigation cost of $2,500,000 that could be applicable to this case.  *Id.* Attachment 3.

## IV.   RELEVANT *HENSLEY* FACTORS ADD FURTHER SUPPORT TO THE REASONABLENESS OF THE LODESTAR NUMBER AND SUGGEST NO ADJUSTMENT TO THE FEES IS NECESSARY

### A.   Defendants' Counsel Served as Lead and Liaison Counsel in a Lengthy MDL

This Court has recognized the need for a defendant to coordinate with the Court-appointed liaison counsel for all of the MDL defendants and review all of the MDL pleadings and rulings, and that fees incurred for time spent doing so are recoverable.  *See* Order Granting Pitt Ohio's Petition for Attorney's Fees and Costs, Dkt. No. 273 at 8.  Other courts have also

---

[10] Starting in 2015, for PeopleNet, NRF's attorneys were billed at their indicated rate and a discount was applied to the monthly bill. Ex. A, Zembek Dec. Attachment 3.

recognized the value in co-defendants coordinating their efforts in order to reduce the amount of fees. *See Armament Sys. & Procedures, Inc. v. IQ Hong Kong Ltd.*, 546 F. Supp. 2d 646, 650 (E.D. Wis. 2008) (finding that the fees generated by the defense could have been much higher had defendants not coordinated their defense of the case and worked together).

Here, Defendants' counsel served as lead and liaison counsel for nearly a dozen defendants in an MDL proceeding that has lasted over seven years. Holding such responsibility required Defendants' counsel to spend increased time and labor, a responsibility that this Court recognized. Dkt. Nos. 40 and 61.

### B. The Excellent Results Obtained Support Defendants' Fee Petition

Where a party has obtained excellent results, the attorney should recover a fully compensatory fee. *Hensley*, 461 U.S. at 435. Here, Defendants obtained a complete victory when the Court invalidated all claims of R+L's patent. Dkt. No. 410.

### C. Defendants' Lead Attorneys Possess a High Level of Competence in Complex Commercial and Intellectual Property Litigation Matters

As reflected by the professional biographies of the two lead lawyers representing Defendants, Mr. Zembek and Mr. Williams have a high level of expertise in complex intellectual property litigation matters. Ex. A, Zembek Dec. ¶ 6 and Attachment 1. Both lawyers have litigated and tried intellectual property cases, as reflected by their professional biographies. *Id.*

Additionally, NRF is ranked by industry leaders as one of the leading intellectual property firms, providing comprehensive, multi-disciplinary intellectual property services across a global platform. *Id.* ¶ 7 and Attachment 2. NRF has more than 90 highly qualified attorneys, patent agents, and technical advisors, who together hold over 110 scientific or advanced degrees in various technical fields, such as electrical engineering, mechanical engineering, computer science, physics, as well as various specialties in the life science fields. *Id.* It offers a full range

19

of intellectual property services including patents, trademarks, copyrights, unfair competition, trade secrets, and litigation in all of these areas. *Id.* NRF's IP attorneys are present in key markets where NRF has offices, including Houston, Austin, Dallas, San Antonio, New York, Minneapolis, and Los Angeles. *Id.*

### D. Billing Charts and Related Statements Provide Sufficient Evidence to Support the Requested Fees

A determination of reasonableness must be evidenced by the billing rate charged and the number of hours expended. *See Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1068 (Fed. Cir. 1983). The duty to prove the reasonableness of the number of hours expended is satisfied where the party submits time records that are organized and presented in a manner that will enable the court to evaluate that time. *See Saint-Gobain Autover USA*, 707 F. Supp. 2d at 763 (citation omitted). Here, the documentation offered in support of the hours charged—billing chart and actual invoice summaries[11]—provides sufficient detail and probative value to enable this Court to determine that the hours were actually and reasonably expended in defense of this litigation. *See id.* (citing *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008)).

### E. Ancillary Expenses to the Litigation Are Recoverable as Attorneys' Fees

The Federal Circuit has interpreted attorneys' fees broadly to include all expenses that the prevailing party incurs in preparation for and performance of legal services related to the suits. *See Maxwell v. Angel-Etts of Cal., Inc.*, 53 F. App'x 561, 569 (Fed. Cir. 2002); *see also Cent. Soya Co. v. Geo A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983) (interpreting attorney fees under § 285 to "include those sums that the prevailing party incurs in the preparation for and

---

[11] *See* Attachment 3 to Ex. A, Zembek Dec. Redacted copies of the daily time records of NRF are being filed with the Court under seal as these records have been designated as Confidential Outside Counsel Eyes Only, pursuant to the January 29, 2010 Protective Order entered in this matter at Dkt. No. 103.

performance of legal services related to the suit"). Thus, attorneys' fees include recovery of all reasonable expenses incurred in prosecuting the action that would typically be billed to the client. These expenses may include (1) costs ordinarily not recoverable under 28 U.S.C. § 1920 and Rule 54(d); (2) fees associated with non-attorneys; and (3) lodging expenses of counsel and witnesses. *See, e.g., Mathis*, 857 F.2d at 759 (including expenses such as paralegal work, secretarial services, overtime, document preparation, and outside typing services as part of attorney fee award); *Saint-Gobain Autover USA*, 707 F. Supp. 2d at 765 (awarding costs for travel, lodging, copying, scanning, court reports, interpreter services, and computer research). Although PeopleNet has paid NRF's expenses, such as travel and the like, it has not included these expenses in this request for attorneys' fees.

      **F.**    **Time Spent on Fee Petition Is Compensable and Reasonable**

Time spent by counsel in establishing the right to a fee award is compensable. *See West v. AK Steel*, 657 F. Supp. 2d at 931 (awarding fees incurred in preparing fee motions in ERISA action). Such fees have been itemized herein and are also reasonable. *See* Section II.H, *supra*. Non-billable staff also assisted in this effort to minimize the attorneys' fees involved. Ex. A, Zembek Dec. ¶ 13.

**V.**    <u>**CONCLUSION**</u>

Defendants respectfully request that the Court award PeopleNet attorneys' fees in the amount of $1,430,817.20.

Respectfully submitted,

Date: March 16, 2017

    */s/ Richard S. Zembek*
    Richard S. Zembek
    richard.zembek@nortonrosefulbright.com
    NORTON ROSE FULBRIGHT US LLP
    Fulbright Tower

1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Tel:  (713) 651 5151 / Fax:  (713) 651 5246

**COUNSEL FOR DEFENDANTS MICRODEA, INC.
AND PEOPLENET COMMUNICATIONS
CORPORATION**

## CERTIFICATE OF SERVICE

I certify that on March 16, 2017, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

/s Richard S. Zembek
Richard S. Zembek